# EXHIBIT G

**Bakersfield College**
1801 Panorama Drive
Bakersfield, CA 93305

(661) 395-4211
president@bakersfieldcollege.edu
BakersfieldCollege.edu

April 14, 2023

By Email to Matthew Garrett and by USPS Registered Mail

Dr. Matthew Garrett
████████████
Bakersfield, CA ████

Re:    *Notice of Decision to Terminate*

Dear Dr. Garrett:

On April 13, 2023, the Board of Trustees of the Kern Community College District took action to terminate your employment with the District.

The Board of Trustees received my recommendation that it issue you a Statement of Decision to Terminate.  The Board also received a copy of your evaluations dated April 27, 2017 and December 7, 2020. The Board found that there was cause for your termination as a tenured academic employee of the District, as more particularly set out in the Statement of Charges and Recommendation for Statement of Decision to Terminate.

I include the following:

A.  A copy of the Recommendation for Statement of Decision to Terminate (with Statement of Charges without exhibits);
B.  Copies of Government Code sections 11506, 11507.5, 11507.6, and 11507.7;
C.  Copies of Education Code sections 87666 through 87683 and 87732; and
D.  Notice of Objection to the Statement of Decision to Terminate.

The District has already provided you with a copy of the exhibits to the Statement of Charges. If you would like another copy of those exhibits, we are happy to provide them at your request.

You are notified that you are terminated from employment with the Kern Community College District, effective 30 days from the date you are served with this letter. Unless a written request for a hearing signed by you or on your behalf is delivered or mailed to the Kern Community District within 30 days of the date the Statement of Decision was personally served on you or mailed to you, the Kern Community College District will deem that you have waived your right to a hearing.



You may request a hearing by delivering or mailing the enclosed form entitled Notice of Objection to Decision, to Abe Ali, Vice Chancellor, Human Resources at 2100 Chester Avenue, Bakersfield, California  93301.

You may, but need not to, be represented by counsel at any or all stages of these proceedings.

If you desire the names and addresses of witnesses or an opportunity to inspect and copy the items mentioned in Section 11507.6 in the possession, custody, or control of the District, or the discovery authorized by Education Code sections 87675 and 87679, you may contact Mr. Ali.

The hearing may be postponed for good cause. If you have good cause, you are obliged to notify the District within ten working days after you discover the good cause. Failure to notify the District within ten days will deprive you of a postponement.

**Your failure to request a hearing by filing a written objection within the period specified above will constitute a waiver of your right to a hearing.**

Very truly yours,

Zav Dadabhoy
Interim President
Bakersfield College

# BOARD OF TRUSTEES

## OF KERN COMMUNITY COLLEGE DISTRICT

In the Matter of:                              )
                                               )
                                               )
Matthew Garrett,                               )
     A Tenured Academic Employee.       )
_____ )

## <u>RECOMMENDATION FOR STATEMENT OF DECISION TO TERMINATE</u>

I, Zav Dadabhoy, Interim President of Bakersfield College, in the State of California, Kern County, pursuant to the provisions of Education Code section 87671 subdivision (c), do file with the Board of Trustees of the Kern Community College District, the Statement of Charges/Notice of Termination attached to this recommendation and incorporated by reference, against Matthew Garrett, a tenured academic employee of the District.

The charges upon which this statement of decision to dismiss are based are immoral conduct, unprofessional conduct, dishonesty, evident unfitness for service, persistent violation of, or refusal to obey, the school laws of the state or reasonable regulations prescribed for the government of the community colleges by the board of governors or by the governing board of the community college district employing him, and willful refusal to perform regular assignments without reasonable cause, as prescribed by reasonable rules and regulations of the employing district.  (Education Code, §§ 87732, 87735.) The instances of conduct contained in the Statement of Charges/Notice of Termination have caused disruption to the orderly administration of the District and the College, and have negatively affected the education offered students at the District and the College.

On the basis of the attached Statement of Charges/Notice of Termination, I, Zav Dadabhoy, recommend to the Board of Trustees of the Kern Community College District that it terminate Matthew Garrett from service, effective 30 days from the date the District gives Matthew Garrett notice of the Board action, and that the Board authorize me or my designee to properly and timely, through the United States mail, registered or personally, notify Matthew

1

KE020\111\10431477.v2

Garrett of the termination, all in accordance with Sections 87732 and 87666 *et seq.* of the California Education Code.

Dated: April 11, 2023

_____
Zav Dadabhoy
Interim President, Bakersfield College

## DECLARATION

I declare, under penalty of perjury, that I have read the attached Statement of Charges/Notice of Termination and I am familiar with its contents, and that the contents are true and correct, to the best of my knowledge and belief.

Executed April 11, 2023 at Bakersfield, California, County of Kern.

_____
Zav Dadabhoy
Interim President, Bakersfield College

## CHANCELLOR'S CONCURRENCE

I, Sonya Christian, Chancellor of the Kern Community College District hereby declare, under penalty of perjury, that I have read the attached Statement of Charges and am familiar with the contents thereof, and that the contents are true and correct, to the best of my knowledge and belief. I concur with the Interim President's recommendation to the Board of Trustees of the Kern Community College District.

Executed this April 11, 2023 at Bakersfield, California, County of Kern.

_____
Sonya Christian
Chancellor, Kern Community College District

KE020\111\10431477.v2

### THE BOARD OF TRUSTEES OF

### THE KERN COMMUNITY COLLEGE DISTRICT

| | |
|---|---|
| In the Matter of the Dismissal of Matthew Garrett<br><br>A Tenured Academic Employee | **STATEMENT OF CHARGES** |

Matthew Garrett is a tenured academic employee of Kern Community College District ("District"). The District bases Garrett's dismissal from employment on the following causes in violation of Education Code sections 87732 and 87735:

    a.  Immoral or unprofessional conduct (Ed. Code, § 87732, subd. (a); Ed. Code, § 87735);

    b.  Dishonesty (Ed. Code, § 87732, subd. (b));

    c.  Unsatisfactory performance (Ed. Code, § 87732, subd. (c));

    d.  Evident unfitness for service (Ed. Code, § 87732, subd. (d));

    e.  Persistent violation of, or refusal to obey, the school laws of the state or reasonable regulations prescribed for the government of the community colleges by the board of governors or by the governing board of the community college district employing him or her (Ed. Code, § 87732, subd. (f)); and

    f.  Willful refusal to perform regular assignments without reasonable cause, as prescribed by reasonable rules and regulations of the employing district. (Ed. Code, § 87735.)

### CAUSES/GROUNDS FOR DISCIPLINE

The facts below demonstrate that Professor Garrett violated each of the grounds of Education Code section 87732 described above and the District should dismiss him from employment with the District.

This proposal is not dependent upon a determination that Garrett violated each of the grounds above or that he committed all the acts or omissions listed below. The violation of any single charge by Garrett would support the recommendation of dismissal from employment.

## <u>CAUSES/FACTS SUPPORTING DISCIPLINE</u>

The facts demonstrating a violation of each of the causes for the dismissal of Matthew Garrett are as follows.

1. Matthew Garrett has been a tenured academic employee with the Kern Community College District at Bakersfield College since the beginning of the 2015-16 Academic year.

2. On November 21, 2022, Garrett received a Notice to Correct Deficiencies pursuant to Education Code section 87734. The Notice advised Garrett that the District must give him at least 90 days' notice prior to initiating formal disciplinary proceedings for unprofessional conduct and unsatisfactory performance. The Notice provided Garrett with sufficient information to understand the nature of his unprofessional conduct and unsatisfactory performance. Attached to these Charges, as Exhibit 1, is a true and correct copy of the November 21, 2022 Notice to Correct Deficiencies and its attached exhibits. The following specific examples illustrated his unprofessional conduct:

   a. On May 19, 2019, Garrett defended vandalism at Bakersfield College in an Op-Ed in the Bakersfield College. In the piece, he characterized the Hundred Handers as "an anonymous conservative protest group that opposes immigration and other modern liberal agendas." He was critical of the College's characterization of the stickers and suggested that the First Amendment protected their content. Garrett disregarded the impact of this attack on the student and the campus community. He took issue with Bakersfield College's characterization of "hate speech" and "vandalism." Garrett went further to suggest that certain terms such as "Cultural Marxism" weren't "hate speech" but instead speech that challenges a dominant agenda on campus, i.e. the social justice movement. (See, Exhibit "1," p. 20.)

   b. On November 19, 2019, Garrett accused his colleagues Oliver Rosales and Andrew Bond for violating KCCD board policy. He alleged that the college misused grant funds by funding a propaganda website.

      i. The District retained third-party investigator Ren Nosky to investigate the complaint, which generated a determination that Garrett acted unprofessionally.

         1. The investigators concluded that Garrett's accusations were "misleading or outright wrong" and Garrett "made the situation worse by repeating the allegations on a radio station after Dr. Rosales and Professor Bond properly complained." (See, Exhibit "1," p. 30.)

         2. The investigator concluded, "The allegations that Professors Rosales and Bond engaged in financial improprieties with respect to grant funding are unfounded." (See, Exhibit "1," p. 29.)

3. The investigator concluded, "The allegations that Professors Garrett and Miller unprofessionally accused Professors Rosales and Bond of financial improprieties with respect to grant funding are sustained." (See, Exhibit "1," p. 30.)

ii. Garrett was notified that his complaint was unsubstantiated and that his allegations were unprofessional. He was sent the administrative determination on October 8, 2020. (See, Exhibit "1," p. 26.)

iii. Despite this finding, Garrett continued to repeat this knowingly false and demonstrably false misrepresentation.

c. On September 8, 2021, Garrett violated campus COVID guidelines by unilaterally changing a planned online event to a face-to-face format, which violated campus COVID event procedures. This move circumvented standard event scheduling protocol and demonstrated a continuous pattern of unprofessional conduct and dishonesty. He p*ersisted in his demand to violate* campus practice and threatened his Dean with a public outcry for refusal to approve his requested change. This violation constitutes a persistent refusal to obey school policy. (See, Exhibit "1," p. 32.)

d. Despite acknowledging that the college had only approved a Zoom event, Garrett persisted in dishonestly claiming that the College had canceled the event and portrayed the College's actions as an attempt to censor his event, because of his political beliefs. This assertion is untrue. (See, Exhibit "1," p. 32.)

i. The College had approved the guest speaker for an online event. In addition, the Administration has approved other conservative speakers sponsored by Garrett's organization the Renegade Institute for Liberty (RIFL) as requested by Garrett. Sample events include a screening of the film "Uncle Tom: An Oral History of the American Black Conservative" and "Taboo: Race and Other Topics You Just Can't Talk About" a speech by Dr. Wilfred Reilly. Attached to these Charges, as Exhibit 2, is a true and correct copy of a list of RIFL's past events from October 11, 2018 through October 11, 2022.

ii. Garrett filed an EthicsPoint grievance against his Dean to include a knowingly false claim of discrimination. Garrett alleged that Dean McCrow discriminated against him by denying authorization for the in-person speaker event on campus. Garrett claimed Dean McCrow discriminated against him based on the political viewpoint Garrett wanted to present at the event. Garrett's allegations against his Dean were investigated and found to be unsubstantiated. Attached to these Charges, as Exhibit 3, is a true and correct copy of the August 24, 2022 Administrative Determination Regarding Garrett's Viewpoint Complaint.

3

iii.   His persistent dishonest claims against college administration are evidence of his unfitness for continued service as a public employee.

3.  Garrett repeatedly made demonstrably false and misleading claims to disrupt District and College work by submitting false public accusations and making frivolous complaints of misconduct without providing any factual basis.

   a.  These disruptions include:

      i.   On April 20, 2022, Garrett publicly falsely accused Bakersfield College of violating the Education Code despite not producing evidentiary support. (See, Exhibit "1," p. 37.)

      ii.  On May 4, 2022, Garrett publicly falsely accused the Equal Opportunity & Diversity Advisory Committee (EODAC) co-chairs of convening "secret meetings." (See, Exhibit "1," p. 41.)

      iii. On September 7, 2022, Garrett falsely alleged that the EODAC "has been consistently staffed by the administration with faculty who hold one particular point of view." (See, Exhibit "1," p. 43.)

      iv.  On October 12, 2022, Garrett falsely accused Andrea Thorson, the faculty co-chair of EODAC, of verbally attacking another faculty member. Garrett wrote, "I am horrified to see the faculty chair continue that attack [on Ximena da Silva] in email." He continued, "I believe the committee chair owes the distinguished representative from chemistry an apology." (See, Exhibit "1," p. 45.)

      v.   On October 16, 2022, Garrett attacked the BC curriculum committee. He sent an email to the Curriculum Committee intended to be his "Public Comment" regarding the Cesar E. Chavez Leadership Certificate and Landmarks in California courses. (See, Exhibit "1," p. 54.) Garrett made the following comments regarding these courses that many students and faculty at Bakersfield College desired:

         1.  "[I]t is a high school field trip."

         2.  "The course presents as openly partisan training for children."

      vi.  On October 12, 2022, Garrett publicly attacked the proposed curriculum and disrupted the college curriculum process by sharing the email of the curriculum co-chairs via social media. Comparing the proposed Cesar E. Chavez Leadership Certificate to efforts to force students "to become LGBT," Garrett wrote, "In that same vein, here is the proposed Cesar Chavez/UFW appreciation course for high school dual enrollment that (if approved) would assign high school kids to read UFW activist essays and meet with unidentified 'stakeholders.' Garrett then shared the email of the

4

curriculum co-chairs and encouraged public comments be sent by Monday at 2pm, which was not the policy of the committee. Attached to these Charges, as Exhibit 4, is a true and correct copy of Garrett's Facebook Comments with the Email Address.

b.  On October 17, 2022, Garrett leveled a series of false and unsupported accusations within an EthicsPoint report regarding incidents from an October 11, 2022, EODAC meeting. (See, Exhibit "1," p. 59.)  His accusations included the following examples of knowingly false and unprofessional comments:

  i.  "Individual African American employees (mostly women) continued to impugn Dr. da Silva's reputation with false claims that she said they could not think for themselves."

  ii.  "Ms. Thorson also stoked racial undercurrents by referring to her love for an African American employee (Angela Craft) who retired several years ago."

  iii.  "I do believe it underscores my concern that racial tensions did exist, and that African American employees snapped at Dr. da Silva in part for racial reasons, making the attack a form of racial harassment."

  iv.  "I sense some of the classified staff have some insecurity that that they are projecting on Dr. da Silva in this effort to smear and win favor to discipline her."

  v.  "I believe Ms. Andrea Thorson has been key in manipulating and creating the crisis." Garrett added, "I would suspect but cannot prove that Ms. Andrea Thorson helped the classified staff make their Board remarks because (a) Ms. Andrea Thorson specializes in rhetoric, (b) she despises myself and others who she sees as political advisories [*sic*], and (c) the Board remarks were more articulate than the during committee comments, particularly in the case of Ms. Elizondo."

Within this complaint, Garrett again engaged in dishonesty by directing an investigation at Andrea Thorson, without any substantive evidence. Additionally, he impugned classified employees by accusing them of insecurity and suggesting an inability to be "articulate" before a committee.

c.  On October 17, 2022, Garrett made a demonstrably false and misleading complain against a faculty colleague within EthicsPoint Complaint #457. Garrett alleged without evidence that a faculty member being concerned about racism on campus was guilty of "racial harassment" towards him. (See, Exhibit "1," p. 67.)

d.  On October 18, 2022, Garrett falsely accused the curriculum co-chairs of conspiring to silence public comments. He asserted, "the Trustees have reversed your decision to withhold public comments from the committee." This false

accusation continues Garrett's pattern of dishonesty.  Attached to these Charges as Exhibit 5, is a true and correct copy of the October 18, 2022, Email from Garrett Requesting Curriculum Committee Documents.

e.  On October 19, 2022, Garrett sent an email to the Bakersfield College faculty making several false allegations and implications. (See, Exhibit "1," p. 74.) He alleged that members of the Curriculum Committee

> . . . have worked to intimidate others to ensure they get the right votes. We also saw the administration secretly withholding public comments from the committee members until community members demanded the Trustees intervene; the administration is preparing to violate Brown Act on three different accounts when they meet tomorrow to force through contested curriculum that in all truth deserves a much more robust conversation but, according to the COR, the chancellor wants it STAT, and anyone who questions may also find their names smeared in the newspaper.

f.  From November 2019 to October 2022, Garrett repeatedly filed frivolous complaints to the District; wasting District resources and aggrieving his colleagues for what the investigations uniformly found to be baseless allegations. These amounted to 36 complaints filed via EthicsPoint or email resulting in 23 complaints requiring a third-party investigation. Investigation revealed each of the 36 were baseless complaints. (See, Exhibit "1," p. 76.)

g.  The District received several student complaints caused by Garrett's conduct during an EODAC meeting.[1] These comments demonstrate the very real harm Garrett is causing to Bakersfield College students:

  i.  HT: "As an African American student, I felt that our safety and education here on campus was not important to a few people inside of the room. I also felt that if I went to register for any of those professors' classes that I would fail in the classes because of the color of my skin." (See, Exhibit "1," p. 81.)

  ii.  AB: After hearing Professor Catherine Jones telling Professor Matt Garrett, "Why the fuck are they coming in here?" the student wrote: "It made me feel like we weren't supposed to be in that meeting. It was eye opening to see and hear something like that at this meeting, I just hope that our colored students don't have to experience something like this in other places." (See, Exhibit "1," p. 83.)

  iii.  JD: "Professor Matt Garrett… went as far as to insult Dr. Parks and her way of teaching…While he was saying this, I felt as mixture of confusion

---

[1] In order to protect student information, the District will refer to all students by initials only. The District will provide a student privacy key with the full names of students.

6

and concern. Confusion due to the fact that the results say students are not happy, students of color are not feeling safe. This task force can help them and he is fighting it? I can't believe it!" The student added, "In the end, I did not feel safe in that room. Even though nothing was said towards me directly, the feeling I was getting was enough. Something needs to be done. People like that cannot be left to make decisions for students." (See, Exhibit "1," p. 85.)

h.  From December 3, 2019, to October 19, 2022, Garrett made demonstrably false and misleading claims inciting distrust within the community that we serve by accusing Bakersfield College, District, and his colleagues of misconduct. (See, Exhibit "1," p. 86.) On Terry Maxwell's Radio Show, he:

  i.  Claimed Bakersfield College funds "fake news" websites;

  ii.  Claimed that sociology, ethnic studies, anthropology are producing bad information and poor narratives grounded in history;

  iii.  Claimed that diversity trainings are just ways to figure out how to legally discriminate;

  iv.  Compared the conditions at Bakersfield College to "how the Nazis got started;"

  v.  Claimed that Bakersfield College staff are trying to quiet him;

  vi.  Claimed Bakersfield College pays students to write propaganda pieces;

  vii.  Claimed that Bakersfield College has "racial preferences in hiring."

i.  Garrett repeatedly failed, as the Faculty Lead for the Renegade Institute for Liberty, to restrict baseless attacks on the District and his colleagues on RIFL's social media. (See, Exhibit "1," p. 94.) For example, Garrett allowed the following to be posted:

  i.  "In this case the state (BC) is organizing a student racial group and giving special perks to that one racial group."

  ii.  "The chronic mismanagement of Measure J expenditures is a consistent embarrassment."

  iii.  "Bakersfield College isn't the only school to pay student activists."

  iv.  "BC Curriculum Committee approved giving away participation certificates (trophies)."

10353444.19 KE020-111

j. Garrett repeatedly published baseless accusations against Bakersfield College and his colleagues on his social media account. (See, Exhibit "1," p. 98-101.) For example:

   i. On or about June 28, 2021, Garrett accused via social media: "The college threatened discipline if I didn't stop requesting records and criticizing social justice expenditures. They then escalated by threatening to terminate me. As a public institution, their financials should be open to public criticism. The administration's attempt to silence that discussion with threats of termination is illegal."

   ii. On or about February 14, 2022, Garrett made the following public accusations against the College on his social media account:

      1. "Bakersfield College paid for a UFW propaganda page to write a hit piece calling me something horrible."

      2. "I made public the otherwise unnoticed practice of BC funneling money to the UFW propaganda page."

      3. "The BC admin also attempted to block my teaching duties and even leaked my social security number."

k. On May 20, 2019, the District received a Cease and Desist letter, forcing Garrett to change the group's name. (See, Exhibit "1," p. 102.) As Faculty Lead for RIFL, Garrett failed to ensure that his chosen group name does not infringe on anyone's intellectual property.

4. The misconduct outlined in Paragraphs 2 and 3 demonstrated Garrett's unprofessionalism and unsatisfactory performance. The Notice informed Garrett that his abuse of the EthicsPoint Management System wasted college and District resources and diminished the value of the District's reporting system. Garrett's public, baseless accusations against Bakersfield College and District, his colleagues, and our students demeaned, demoralized, and disrespected the community he serves. Importantly, Garrett caused students to feel unwelcome and unsafe by belittling the community's valid concerns.

5. The misconduct outlined in Paragraphs 2 and 3 included baseless accusations that devalued Bakersfield College and District's standing among its peers. Garrett demonstrated a lack of professional judgment by making his accusations loudly and improperly, instead of determining the proper channels for complaints. Consequently, his public accusations invited outrage from his colleagues and the community at large. Garrett's pursuit of notoriety devolved the sincere efforts by the District and the community to create an environment where students can thrive to an environment of hostility and anger.

6. The misconduct outlined in Paragraphs 2 and 3 included repeated, ceaseless, and demonstrably false claims against employees serving with Garrett on committees. These

8

claims caused many employees to cease their committee work for fear of being singled out for similar treatment. Garrett's attacks on the Curriculum Committee, its members, and its important work, meant that many pieces of curriculum were in danger of not being approved. This includes the courses needed to support Bakersfield College's application for the Baccalaureate of Science, Police Science.

7. The Notice referred to in Paragraph 2 directed Garrett to cure his deficient job performance, and comply with the following directives:

   a. "You will comply with all lawful directives of your supervisors and all administrators. You will not substitute your own judgment for the judgment of your supervisor or other administrators."

   b. "You will comply with all Board Policies and Administrative Procedures."

   c. "You will use District resources to further the interests of the college and District only."

   d. "You will perform your duties with the civility and good faith effort expected from all public employees."

   e. "You will address grievances and complaints to appropriate college administrators."

   f. "You will cease using the District's email listserv to further your personal agenda."

(See, Exhibit "1," p. 8-9.)

As outlined within the following paragraphs, Garrett has failed to follow the directives contained with the Notice referred to in Paragraph 2.

8. In November 2022, Garrett deliberately mischaracterized a Bakersfield College student housing initiative as "not student dorms" and as "low income housing." Garrett printed and distributed a flyer that characterized the Student Housing Project as threatening the neighborhood with:
   a. loud parties;
   b. safety issues;
   c. crime;
   d. crowded daily parking issues;
   e. overflow of parking for events; and
   f. decrease in property values

This unprofessional conduct constituted a deliberate attempt to disrupt the work of the college to develop secure housing for our students. Attached to these Charges, as Exhibit 6, is a true and correct copy of Garrett's November 2022 flyer; Attached to these Charges, as Exhibit 7, is a true and correct copy of a Ring Doorbell Screenshot.

9

9. On December 5, 2022, Garrett falsely alleged that the District mischaracterized his conduct as unprofessional "without providing any explanation to such claims." As outlined in Paragraph 2, (a) to (e) and Paragraph 3 (a) to (m), the District provided Garrett with an exhaustive explanation of his unprofessional conduct, dishonesty, refusal to follow campus procedures, and the harmful effects of his misconduct. Garrett's response to his 90-Day Notice contained frivolous allegations that are without merit. Attached to these Charges, as Exhibit 8, is a true and correct copy of Garrett's December 5, 2022 Response to the 90-Day Notice.

10. On January 11, 2023, Garrett sent an email to Dean Richard McCrow with questions regarding his 90-Day Notice. Each of Garrett's 20 questions may either be answered by reading the Notice, the District's Board Policies and Administrative Procedures, and the directives in the 90-Day Notice, or were complaints and grievances set out as questions. Garrett's inquiry seeking clarification was not made in good faith and again demonstrates unprofessionalism. His persistent refusal to follow clear directions is evidence of his unprofessional behavior and does not represent the honesty and integrity needed for continued service as a faculty member.  Attached to these Charges, as Exhibit 9, is a true and correct copy of Garrett's January 11, 2023 Email to McCrow.

11. In the 90-Day Notice, Bakersfield College notified Garrett of his unprofessional and unsatisfactory performance because of the harm he inflicts on the District and its students. Instead of improving his performance, he repeated the same false allegations on ever-bigger platforms, and continues to incite hatred and anger against the College's employees and students. Examples include the following:

   a. On January 17, 2023, Garrett launched a litany of false allegations within an interview given to Fox News Digital. He claimed that Bakersfield College has adopted "racial quotas and preferences, affirmative action-type behavior, [and] . . . racially segregated classes.. and location tracking software." Garrett repeated his discredited allegation that Bakersfield College has "funding going to propaganda webpages you can track through grants." Attached to these Charges, as Exhibit 10, is a true and correct copy of the January 17, 2023 Fox News Article. All of these allegations are false and damaging to Bakersfield College and its students. These allegations demeaned, demoralized, and disrespected the College's employees and its students.

   Garrett's false allegations prompted the following comments attacking Bakersfield College and its students by name:

      i. demonhunter: "Student [JD]: expel her for violating her duty to adhere to the school's code of conduct by making a false and damning allegation for the purpose of ruining another's reputation."

      ii. KCChiefs: "Students LIE. They always have, but it's getting worse because it is allowed and supported. These filthy lying students need to be held accountable. They need to be sued for slander and they need to be

10

banned from the campus. But that won't happen. So, our education system will continue to sink further into the cesspool."

   iii.  geoffandalice: "I feel uncomfortable. I think I'll sue somebody, that will make me feel better. ☐ These students need to be 'put down.' A vet could do it."

   iv.  aprillgranger: "Based on the statements I just read, these students are pathetic. It seems like the only way to get ahead is to show how fragile you are[.]"

   v.  DJM123: "Meanwhile - the students remain unemployable and wholly lacking in marketable skills; just a guess"

   vi.  geoffandalciekent7832 in response to popham: "Funny, I want them to be running for their lives."

Attached to these Charges, as Exhibit 11, is a true and correct copy of the Fox News Article with the Comments Section.

b.  On January 17, 2023, Garrett amplified his dishonest allegations made in the Fox News Digital Interview. Through the RIFL Facebook page, he posted a link to the article with the tagline "Tenured Bakersfield College history professor Matthew Garrett said he and other faculty members of a free speech coalition were targeted with false allegations after they asked questions during a campus diversity meeting last October." Attached to these Charges, as Exhibit 12, is a true and correct copy of the January 17, 2023 RIFL social media post. Since the District issued Garrett the 90-Day Notice, Garrett, the RIFL Facebook page administrator, has continued to permit the RIFL Facebook page to post false and baseless attacks on the District and his colleagues.

c.  On January 22, 2023, Garrett accused a fellow faculty member of orchestrating a "race hoax." Garrett sent an email with the subject line "Paula Parks Race Hoax Debunked" to a community member with a link to the *Daily Wire* article. Attached to these Charges, as Exhibit 13, is a true and correct copy of the January 22, 2023 Email from Garrett Re Daily Wire Article.

d.  In a January 23, 2023 article published by *Inside Higher Ed*, Garrett accused Dr. Paula Parks of inciting students against him:

"Paula Parks has whipped them up into a sense of victimhood," he said. "I'm sure they felt the tense feeling in that room, because that room has been a place of debate and hostility for the last couple years. And she intentionally misdirected those students to believe it was about them and their race."

Attached to these Charges, as Exhibit 14, is a true and correct copy of the January 23, 2023 article published by Inside Higher Ed.

e.  On January 22, 2023, Garrett again accused BC faculty member Paula Parks of orchestrating a "race hoax." He shared the *Daily Wire* article on his social media with the tagline: "Paula Parks Race hoax allegations against me debunked by Daily Wire." Attached to these Charges, as Exhibit 15, is a true and correct copy of the January 22, 2023 social media post from Garrett.

These ongoing public attacks demonstrate Garrett's continued refusal to engage in civil, honest discourse or to direct complaints to the appropriate college administrator as directed by the 90-day notice.

12.  On January 23, 2023, Garrett intimidated an Academic Senate Executive Board member by asking to discuss the member's vote against him to serve as the faculty chair of EODAC. This violated the E-board's longstanding confidentiality protocols. Attached to these Charges, as Exhibit 16, is a true and correct copy of Garrett's January 23, 2023 email to Matthew Jones.

13.  On January 27, 2023, the District received a report from Debra Thorson, a part-time faculty member and member at EODAC. Thorson reported her fear that "Matt Garrett will verbally attack me again." She reported a fall 2022 EODAC meeting at which Garrett cursed at her to "get the fuck out." She requested that the college ensure her safety at future committee meetings. Attached to these Charges, as Exhibit 17, is a true and correct copy of the January 27, 2023 Email from Debra Thorson. This incident violated the directive of the 90-day notice to engage in the civility expected of public employees.

14.  On January 31, 2023, Garrett published another attack as an open letter to the Kern Community College District Board of Trustees, and Trustee Corkins in particular, which he labeled "What Poisoned the Pond?" Attached to these Charges, as Exhibit 18, is a true and correct copy of the January 31, 2023 article by Matthew Garrett. In this article, Garrett offered a series of uncivil and dishonest attacks:

a.  Garrett accused Trustee Corkins, without rationale, of having "a general willingness to ignore evidence-based arguments in favor of emotional appeals.

b.  Garrett accused Trustee Corkins, without rationale, of "empowering a very dangerous philosophy that attempts to replace objective reality with emotionally satisfying nonsense."

c.  Garrett accused Trustee Corkins and Trustee Nan Gomez-Heitzeberg, without rationale, for "[falling] for the race hoax and [contributing] a performance of [their] own."

d.  Garrett repeated false allegations without rationale or evidence:

12

Together they radically transformed Bakersfield College into a place of implicit bias and microaggression training; racial quotas and affirmative action preferences; racially segregated programming emphasizing ethno-nationalist rhetoric; priority registration for preferred groups; subsidies for highly partisan propaganda and accompanying activist training; mandated masks, compulsory vaccines, and location-tracking software; diluted academic rigor with an ever-growing emphasis on social programs managed by a bloated administration; and overt hostility toward any who dare question these policies. This hostility comes from both administrators and their eager proxies among the faculty.

Garrett's allegations above falsely accuse Bakersfield College of breaking federal and state laws, such as alleging that Bakersfield College has racial quotas, or that the College was tracking faculty. These accusations aimed to disrupt college operations and further demonstrate evidence of continued unprofessional conduct after reception of the 90-day notice.

e.   Alleged Trustee Corkins may not be familiar with administrative "extrajudicial punishments" because the Trustee is a "rural cattle guy."

f.   Garrett implied that the District administration engaged in the following, without rationale or evidence:

    i.   Retaliatory scheduling;

    ii.   Retaliatory office assignments;

    iii.   Retaliatory withholding of permissions;

    iv.   Retaliatory canceling of calendared events;

    v.   Strategic bureaucratic obstruction;

    vi.   Refusing to confer expected and vital funds;

    vii.   Denial of access to self-raised funds;

    viii.   Retaliatory exclusion from key decision-making bodies;

    ix.   Preferential stipends and reduction in teaching loads for nonproductive projects based on viewpoint;

    x.   Unlawful release of confidential personnel records;

    xi.   Forgery of untrue documents;

    xii.   Engaging in farcical investigations;

10353444.19 KE020-111

      xiii.   Ignoring legitimate complaints; and

      xiv.   Covertly subsidizing "allies" in the local media.

Should any of these be true concerns, Garrett's 90-Day Notice directed him to deliver his complaints and grievances to the appropriate channels, and his refusal to do so continues his pattern of willful refusal to follow college process.

g.   Garrett alleged, without evidence or rationale, that the Bakersfield College administration "fed" the Trustees with "orchestrated public comments, loudly whispered, vague allegations, fabricated testimony, counterfeit HR determinations, and outright lies."

These uncivil and dishonest accusations expressly violated the recommendations provided within the 90-Day notice.

15. On January 31, 2023, Garrett amplified the false statements made in his "What Poisoned the Pond?" letter. Through the RIFL Facebook page, he posted a link to the article with the accusatory tagline "Over the last few years, the administration has firmly aligned itself with a group of activists on campus. Together they radically transformed Bakersfield College into a place of implicit bias and microaggression training; racial quotas and affirmative action preferences; racially segregated programming emphasizing ethno-nationalist rhetoric; priority registration for preferred groups; subsidies for highly partisan propaganda and accompanying activist training; mandated mask…" Attached to these Charges, as Exhibit 19, is a true and correct copy of the January 31, 2023 RIFL Post. As the administrator of the RIFL Facebook page, Garrett demonstrates his incivility and continued dishonest and unprofessional conduct.

16. On January 31, 2023, Garrett engaged in an unprofessional interaction with Dr. Nicky Damania, the Bakersfield College Dean of Students. Dr. Damania attended the January 31, 2023 Board of Trustees meeting.  Before reaching his seat, Garrett stepped in front of of him and exhibited a "hostile demeanor and aggressive tone" when he asked, "Did she threaten your job too?" Dr. Damania found this interaction to be "intimidation as well as non-collegial." Attached to these Charges, as Exhibit 20, is a true and correct copy of the February 9, 2023 email from Dr. Damania.

17. On January 31, 2023, Garrett threatened Trustees John Corkins. In the email, Garrett claimed to possess documents showing Corkins's "past indiscretions." He claimed, "I know more about you than you think and more than I want." While Garrett claimed that he did not intend to release the alleged documents, the clear implication was to intimidate Trustee Corkins by mentioning Garrett's alleged possession of harmful documents. Garrett's attempt at extortion identified his target as Sonya Christian and it is continued unprofessional conduct.  Attached to these Charges, as Exhibit 21, is a true and correct copy of the January 31, 2023 Email from Garrett to Corkins.

18. In February 2023, Garrett implied retaliatory denial of funding for a choir tour organized by his wife, without rationale or evidence, through social media:

    a.  On February 19, 2023, Garrett posted, "Why do you suppose the administration approved $12,500 for travel for the student group who falsely accused me but not a penny for my wife's students?"

    b.  On February 6, 2023, Garrett posted, "Jennifer Garrett spoke to the KCCD Board of Trustees today. They seemed genuinely unaware and concerned that the administration was withholding choir tour funding."

    c.  On February 1, 2023, Garrett posted, "Why do you suppose the choir tour (organized by my wife Jennifer) received "no financial assistance from the college?"

Attached to these Charges, as Exhibit 22, is Garrett's Social Media Posts Re Choir Funding.

Should the inappropriate withholding of funding be true, Garrett's 90-Day Notice directed him to deliver his complaints and grievances to the appropriate channels. His decision to instead repeatedly level this accusation constitutes more evidence of his dishonesty, incivility, and willful refusal to perform regular assignments.

19. On February 19, 2023, Garrett attacked his faculty colleagues through the RIFL Facebook post: "Can you count how many times BC's Communication Dept professors imply accusations of racism, sexism, and classism to advance their agenda in the recent Feb 15 Academic Senate meeting?" Attached to these Charges, as Exhibit 23, is a true and correct copy of the February 19, 2023 Facebook post. This post illustrates Garrett's willful refusal to maintain the civility expected of a public employee.

20. On February 28, 2023, Garrett, as the RIFL Facebook page administrator, enabled the page to post a false and baseless attack on the district and Garrett's colleagues under the title: "Another media outlet reviews BC's dysfunctional diversity committee. Is questioning the woke agenda "unprofessional" or 'harmful' to students?" The post featured a picture of Garrett and a link to an article from *Just the News*. Attached to these Charges, as Exhibit 24, is a true and correct copy of the February 28, 2023 RIFL Facebook post.

21. On March 5, 2023, Garrett, as the RIFL Facebook page administrator, accused the KCCD district of financial mismanagement: "Statewide audit finds KCCD "misspend funds" in part by using instructional funds to pay for special projects." Attached to these Charges, as Exhibit 25, is a true and correct copy of the March 5, 2023 Facebook post. This post continues Garrett's documented pattern of communicating demonstrably false and misleading statements.

22. Garrett continues to seek personal satisfaction at the expense of the safety of the District's students and employees. He violated each and every one of the directives that the District gave him. Importantly, he attempted to force cooperation from a trustee using veiled threats and personal attacks.

a.  Faculty members targeted by Garrett's retaliation include:
   i.  Helen Acosta, Professor of Communication
   ii.  Octavio Barajas, Adjunct Professor of History
   iii.  Justin Bell, Adjunct Professor of English
   iv.  Andrew Bond, Professor of English
   v.  Nicole Carrasco, Adjunct Professor of Sociology
   vi.  Christine Cruz-Boone, Professor of Communication
   vii.  Bryan Hirayama, Professor of Communication
   viii.  Matt Jones, Professor of Academic Technology
   ix.  Michael Korcok, Professor of Communication
   x.  Paula Parks, Professor of English
   xi.  Oliver Rosales, Professor of History
   xii.  Nick Strobel, Professor of Astronomy & Academic Senate President
   xiii.  Andrea Thorson, Professor of Communication
   xiv.  Debra Thorson, Adjunct Professor of Communication
   xv.  Tommy Tucson, Professor of Criminal Justice

b.  Classified staff targeted include the following:
   i.  Victoria Coffee
   ii.  Maria Elizondo
   iii.  Angela Williams

c.  Administrators and district leadership targeted include the following:
   i.  Abe Ali, Vice Chancellor for Human Resources
   ii.  Tom Burke, Chancellor Emeritus
   iii.  Dr. Sonya Christian, Chancellor
   iv.  John Corkins, Trustee
   v.  Dr. Zav Dadabhoy, Interim President
   vi.  Dr. Nicky Damania, Dean of Students
   vii.  Chris Hine, General Counsel (Retired)
   viii.  Lora Larkin, Dean of Instruction
   ix.  Richard McCrow, Dean of Instruction
   x.  Billie Jo Rice, Vice President of Instruction

d.  Students targeted include:
   i.  Five Umoja students;
   ii.  Two SGA Presidents.

## CONCLUSION AND RECOMMENDATION

In sum, since 2019, Garrett has engaged in retaliatory behavior including, but not limited to: 1) intimidation, 2) defamation of character, 3) false accusations of misappropriation of District funds, 4) false accusations of criminal misconduct, 5) false accusations of violation of District Board Policy, 6) abusive language towards faculty and staff, and 7) oral and written threats to faculty and staff. This behavior has caused continued disruption by undermining College processes and College morale. In many instances, he has repeated claims that have been

16

investigated and disproved. He has continued to make knowingly false and deliberately misleading statements. This repeated behavior constitutes unprofessional conduct.

The acts and omissions outlined above demonstrate that Matthew Garrett has engaged in a pattern of immoral or unprofessional conduct, dishonesty, unsatisfactory performance, evident unfitness for service, persistent violation of the policies, procedures, rules and regulations of the District, and willful refusal to perform regular assignments without reasonable cause. Accordingly, the District should dismiss Matthew Garrett from employment on the grounds of:

    a.   Immoral or unprofessional conduct (Ed. Code, § 87732, subd. (a), Ed. Code, § 87735);

    b.   Dishonesty (Ed. Code, § 87732, subd. (b));

    c.   Unsatisfactory performance (Ed. Code, § 87732, subd. (c));

    d.   Evident unfitness for service (Ed. Code, § 87732, subd. (d));

    e.   Persistent violation of, or refusal to obey, the school laws of the state or reasonable regulations prescribed for the government of the community colleges by the board of governors or by the governing board of the community college district employing him or her (Ed. Code, § 87732, subd. (f)); and

    f.   Willful refusal to perform regular assignments without reasonable cause, as prescribed by reasonable rules and regulations of the employing district. (Ed. Code, § 87735.)

The District has cause to terminate Garrett for the reasons outlined above.  Through his constant barrage of hostile comments—which intimidate and humiliate his colleagues and the District's students—Garrett demonstrated an inability to adhere to professional standards of the workplace.

Garrett repeatedly made allegations against the District of which he knows to be false.  In the alternative, Garrett also made allegations against the District that he knows he cannot prove. Through these actions, Garrett demonstrated an inability to be honest.

Garrett makes his colleagues and the District's students feel unsafe.  He intentionally directs ire at specific persons, including students, which has resulted in disturbing public comments.  Thus, Garrett's effect on the Bakersfield College community are unsatisfactory.

Garrett's inability or refusal to appreciate the gravity of his actions and the danger in which he places the District's students and employees evidences his unfitness for service.

Despite being given a comprehensive Notice of Unsatisfactory Performance, Garrett refused to follow reasonable and lawful directives from the College.  In doing so, he demonstrated persistent refusal to obey school regulations and assignments.

The District expects that its employees, as public servants, will follow rules, policies, and procedures and act in a manner that is in the best interests of the District and the students they

10353444.19 KE020-111

serve.  By virtue of his egregious conduct supporting the grounds for his dismissal and charges described above, Garrett has clearly failed to meet the District's expectations.

Garrett refused the District's attempt to provide him with an opportunity to cease harmful unprofessional conduct, immoral conduct, and has continued disrupting College and District work. Garrett has been disrespectful and dishonest in communication with colleagues who express opposing viewpoints regarding District Policy, Finance, and Curriculum. Due to Garrett's lack of judgment and disregard of his duties to the District and its students, the District must dismiss him from his employment as a tenured faculty member.

Under the provisions of the California Education Code sections 87732, 87735, and 87666 *et seq.*, Matthew Garrett shall be given notice that he is terminated and immediately suspended from his duties, and has the right to file a written objection to the decision of the Board of Trustees, of the reasons therefore, within 30 days after service of said notice upon him pursuant to Education Code section 87673.

I hereby declare, under penalty of perjury, that I have read the attached Statement of Charges and am familiar with the contents thereof, and that said contents are true and correct to the best of my knowledge and belief.

Respectfully submitted,


Dated: 4/11/2023

Zav Dadabhoy, Ph.D.
Interim President
Bakersfield College


Exhibits:

Exhibit 1 – November 21, 2022 Notice to Correct Deficiencies and its attached exhibits

Exhibit 2 – List of RIFL's past events from October 11, 2018 through October 11, 2022.

Exhibit 3 – August 24, 2022 Administrative Determination Regarding Garrett's Viewpoint
          Complaint

Exhibit 4 – Garrett's Facebook Comments with the Email Address

Exhibit 5 – October 18, 2022 Email from Garrett Requesting Curriculum Committee Documents.

Exhibit 6 – November 2022 Flyer from Garrett

Exhibit 7 – Ring Doorbell Screenshot

Exhibit 8 – December 5, 2022 Response from Garrett to the 90-Day Notice

Exhibit 9 – January 11, 2023 Email from Garrett to McCrow

Exhibit 10 – January 17, 2023 Fox News Article

Exhibit 11 – Fox News Article with the Comments Section

Exhibit 12 – January 17, 2023 RIFL Social Media Post

Exhibit 13 – January 22, 2023 Email from Garrett Re Daily Wire Article

Exhibit 14 – January 23, 2023 Article Published by Inside Higher Ed

Exhibit 15 – January 22, 2023 Social Media Post from Garrett

Exhibit 16 – January 23, 2023 email from Garrett to Matthew Jones

Exhibit 17 – January 27, 2023 Email from Debra Thorson

Exhibit 18 – January 31, 2023 Article by Matthew Garrett

Exhibit 19 – January 31, 2023 RIFL Post

Exhibit 20 – February 9, 2023 Email from Dr. Damania

Exhibit 21 – January 31, 2023 Email from Garrett to Corkins

Exhibit 22 – Garrett's Social Media Posts Re Choir Funding

Exhibit 23 – February 19, 2023 RIFL Facebook Post

Exhibit 24 – February 28, 2023 RIFL Facebook Post

Exhibit 25 – March 5, 2023 Facebook Post

10353444.19 KE020-111

**State of California**

**GOVERNMENT CODE**

**Section  11506**

---

11506.  (a)  Within 15 days after service of the accusation or District Statement of Reduction in Force the respondent may file with the agency a notice of defense, or, as applicable, notice of participation, in which the respondent may:

(1)  Request a hearing.

(2)  Object to the accusation or District Statement of Reduction in Force upon the ground that it does not state acts or omissions upon which the agency may proceed.

(3)  Object to the form of the accusation or District Statement of Reduction in Force on the ground that it is so indefinite or uncertain that the respondent cannot identify the transaction or prepare a defense.

(4)  Admit the accusation or District Statement of Reduction in Force in whole or in part.

(5)  Present new matter by way of defense.

(6)  Object to the accusation or District Statement of Reduction in Force upon the ground that, under the circumstances, compliance with the requirements of a regulation would result in a material violation of another regulation enacted by another department affecting substantive rights.

(b)  Within the time specified the respondent may file one or more notices of defense, or, as applicable, notices of participation, upon any or all of these grounds but all of these notices shall be filed within that period unless the agency in its discretion authorizes the filing of a later notice.

(c)  The respondent shall be entitled to a hearing on the merits if the respondent files a notice of defense or notice of participation, and the notice shall be deemed a specific denial of all parts of the accusation or District Statement of Reduction in Force not expressly admitted. Failure to file a notice of defense or notice of participation shall constitute a waiver of respondent's right to a hearing, but the agency in its discretion may nevertheless grant a hearing. Unless objection is taken as provided in paragraph (3) of subdivision (a), all objections to the form of the accusation or District Statement of Reduction in Force shall be deemed waived.

(d)  The notice of defense or notice of participation shall be in writing signed by or on behalf of the respondent and shall state the respondent's mailing address. It need not be verified or follow any particular form.

(e)  As used in this section, "file," "files," "filed," or "filing" means "delivered or mailed" to the agency as provided in Section 11505.

(Amended by Stats. 2013, Ch. 90, Sec. 5.  (SB 546)  Effective January 1, 2014.)

**State of California**

**GOVERNMENT CODE**

**Section  11507.5**

---

11507.5.   The provisions of Section 11507.6 provide the exclusive right to and method of discovery as to any proceeding governed by this chapter.

(Added by Stats. 1968, Ch. 808.)

**State of California**

**GOVERNMENT CODE**

**Section  11507.6**

---

11507.6.   After initiation of a proceeding in which a respondent or other party is entitled to a hearing on the merits, a party, upon written request made to another party, prior to the hearing and within 30 days after service by the agency of the initial pleading or within 15 days after the service of an additional pleading, is entitled to (1) obtain the names and addresses of witnesses to the extent known to the other party, including, but not limited to, those intended to be called to testify at the hearing, and (2) inspect and make a copy of any of the following in the possession or custody or under the control of the other party:

(a)  A statement of a person, other than the respondent, named in the initial administrative pleading, or in any additional pleading, when it is claimed that the act or omission of the respondent as to this person is the basis for the administrative proceeding;

(b)  A statement pertaining to the subject matter of the proceeding made by any party to another party or person;

(c)  Statements of witnesses then proposed to be called by the party and of other persons having personal knowledge of the acts, omissions, or events which are the basis for the proceeding, not included in subdivision (a) or (b) above;

(d)  All writings, including, but not limited to, reports of mental, physical, and blood examinations and things which the party then proposes to offer in evidence;

(e)  Any other writing or thing which is relevant and which would be admissible in evidence;

(f)  Investigative reports made by or on behalf of the agency or other party pertaining to the subject matter of the proceeding, to the extent that these reports (1) contain the names and addresses of witnesses or of persons having personal knowledge of the acts, omissions, or events which are the basis for the proceeding, or (2) reflect matters perceived by the investigator in the course of their investigation, or (3) contain or include by attachment any statement or writing described in subdivisions (a) to (e), inclusive, or summary thereof.

For the purpose of this section, "statements" include written statements by the person signed or otherwise authenticated by the person, stenographic, mechanical, electrical, or other recordings, or transcripts thereof, of oral statements by the person, and written reports or summaries of these oral statements.

Nothing in this section shall authorize the inspection or copying of any writing or thing which is privileged from disclosure by law or otherwise made confidential or protected as the attorney's work product.

Discovery of all categories of evidence specified in this section may be conducted electronically by means prescribed by an administrative law judge.

(Amended by Stats. 2021, Ch. 401, Sec. 14.  (AB 1578)  Effective January 1, 2022.)

**State of California**

**GOVERNMENT CODE**

**Section  11507.7**

_____

11507.7.  (a)  Any party claiming the party's request for discovery pursuant to Section 11507.6 has not been complied with may serve and file with the administrative law judge a motion to compel discovery, naming as respondent the party refusing or failing to comply with Section 11507.6. The motion shall state facts showing the respondent party failed or refused to comply with Section 11507.6, a description of the matters sought to be discovered, the reason or reasons why the matter is discoverable under that section, that a reasonable and good faith attempt to contact the respondent for an informal resolution of the issue has been made, and the ground or grounds of respondent's refusal so far as known to the moving party.

(b)  The motion shall be served upon respondent party and filed within 15 days after the respondent party first evidenced failure or refusal to comply with Section 11507.6 or within 30 days after request was made and the party has failed to reply to the request, or within another time provided by stipulation, whichever period is longer.

(c)  The hearing on the motion to compel discovery shall be held within 15 days after the motion is made, or a later time that the administrative law judge may on the judge's own motion for good cause determine. The respondent party shall have the right to serve and file a written answer or other response to the motion before or at the time of the hearing.

(d)  Where the matter sought to be discovered is under the custody or control of the respondent party and the respondent party asserts that the matter is not a discoverable matter under the provisions of Section 11507.6, or is privileged against disclosure under those provisions, the administrative law judge may order lodged with it matters provided in subdivision (b) of Section 915 of the Evidence Code and examine the matters in accordance with its provisions.

(e)  The administrative law judge shall decide the case on the matters examined in camera, the papers filed by the parties, and such oral argument and additional evidence as the administrative law judge may allow.

(f)  Unless otherwise stipulated by the parties, the administrative law judge shall no later than 15 days after the hearing make its order denying or granting the motion. The order shall be in writing setting forth the matters the moving party is entitled to discover under Section 11507.6. A copy of the order shall forthwith be served by mail by the administrative law judge upon the parties. Where the order grants the motion in whole or in part, the order shall not become effective until 10 days after the date

the order is served. Where the order denies relief to the moving party, the order shall be effective on the date it is served.

(Amended by Stats. 1995, Ch. 938, Sec. 32.  Effective January 1, 1996.  Operative July 1, 1997, by Sec. 98 of Ch. 938.)



*California*
LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

**Code:** [Select Code ▾]   **Section:** [1 or 2 or 1001]   [Search]   ⓘ

Up^    Add To My Favorites

EDUCATION CODE - EDC
   TITLE 3. POSTSECONDARY EDUCATION [66000 - 101149.5]  *( Title 3 enacted by Stats. 1976, Ch. 1010. )*
      DIVISION 7. COMMUNITY COLLEGES [70900 - 88933]  *( Division 7 enacted by Stats. 1976, Ch. 1010. )*
         PART 51. EMPLOYEES [87000 - 88280]  *( Part 51 enacted by Stats. 1976, Ch. 1010. )*
            CHAPTER 3. Employment [87400 - 87885]  *( Chapter 3 enacted by Stats. 1976, Ch. 1010. )*

**ARTICLE 4. Evaluations and Discipline [87660 - 87683]**   *( Heading of Article 4 amended by Stats. 1990, Ch. 1302, Sec. 110. )*

**87660.**  The provisions of this article govern the evaluation of, the dismissal of, and the imposition of penalties on, community college faculty. Other provisions of this code which govern the evaluation of, dismissal of, and the imposition of penalties on, community college faculty shall be applied to persons employed by a community college district in a manner consistent with the provisions of this article.

*(Amended by Stats. 1990, Ch. 1302, Sec. 111. Effective September 25, 1990.)*

**87661.**  For the purposes of this article:

(a) "Academic year" means that period between the first day of a fall semester or quarter and the last day of the following spring semester or quarter, excluding any intersession term that has been excluded pursuant to an applicable collective bargaining agreement.

(b) "Contract employee" or "probationary employee" means an employee of a district who is employed on the basis of a contract in accordance with Section 87605, subdivision (b) of Section 87608, or subdivision (b) of Section 87608.5.

(c) "District" means a community college district.

(d) "Regular employee" or "tenured employee" means an employee of a district who is employed in accordance with subdivision (c) of Section 87608, subdivision (c) of Section 87608.5, or Section 87609.

*(Amended by Stats. 2002, Ch. 85, Sec. 3. Effective January 1, 2003.)*

**87662.**  Except as provided in Section 72411 and subdivision (i) of Section 87663, the provisions of this article do not apply to administrators employed pursuant to Section 72411.

*(Amended by Stats. 1990, Ch. 1302, Sec. 113. Effective September 25, 1990.)*

**87663.**  (a) Contract employees shall be evaluated at least once in each academic year. Regular employees shall be evaluated at least once in every three academic years. Temporary employees shall be evaluated within the first year of employment. Thereafter, evaluation shall be at least once every six regular semesters, or once every nine regular quarters, as applicable.

(b) Whenever an evaluation is required of a faculty member by a community college district, the evaluation shall be conducted in accordance with the standards and procedures established by the rules and regulations of the governing board of the employing district.

(c) Evaluations shall include, but not be limited to, a peer review process.

(d) The peer review process shall be on a departmental or divisional basis, and shall address the forthcoming demographics of California, and the principles of affirmative action. The process shall require that the peers reviewing are both representative of the diversity of California and sensitive to affirmative action concerns, all without compromising quality and excellence in teaching.

(e) The Legislature recognizes that faculty evaluation procedures may be negotiated as part of the collective bargaining process.

(f) In those districts where faculty evaluation procedures are collectively bargained, the faculty's exclusive representative shall consult with the academic senate prior to engaging in collective bargaining regarding those procedures.

(g) It is the intent of the Legislature that faculty evaluation include, to the extent practicable, student evaluation.

(h) A probationary faculty member shall be accorded the right to be evaluated under clear, fair, and equitable evaluation procedures locally defined through the collective bargaining process where the faculty has chosen to elect an exclusive representative. Those procedures shall ensure good-faith treatment of the probationary faculty member without according him or her de facto tenure rights.

(i) Governing boards shall establish and disseminate written evaluation procedures for administrators. It is the intent of the Legislature that evaluation of administrators include, to the extent possible, faculty evaluation.

*(Amended (as amended by Stats. 1988, Ch. 973) by Stats. 1990, Ch. 1302, Sec. 114. Effective September 25, 1990.)*

**87664.**  The governing board of each district, in consultation with the faculty, shall adopt rules and regulations establishing the specific procedures for the evaluation of its contract and regular employees on an individual basis and setting forth reasonable but specific standards which it expects its faculty to meet in the performance of their duties. Such procedures and standards shall be uniform for all contract employees of the district with similar general duties and responsibilities and shall be uniform for all regular employees of the district with similar general duties and responsibilities.

*(Amended by Stats. 1990, Ch. 1302, Sec. 115. Effective September 25, 1990.)*

**87665.**  The governing board may terminate the employment of a temporary employee at its discretion at the end of a day or week, whichever is appropriate. The decision to terminate the employment is not subject to judicial review except as to the time of termination.

*(Enacted by Stats. 1976, Ch. 1010.)*

**87666.**  During the school year, all contract and regular employees are subject to dismissal and the imposition of penalties on the grounds and pursuant to procedures set forth in this article.

*(Enacted by Stats. 1976, Ch. 1010.)*

**87667.**  A contract or regular employee may be dismissed or penalized for one or more of the grounds set forth in Section 87732.

*(Enacted by Stats. 1976, Ch. 1010.)*

**87668.**  A governing board may impose one of the following penalties:

(a) Suspension for up to one year.

(b) Suspension for up to one year and a reduction or loss of compensation during the period of suspension.

*(Enacted by Stats. 1976, Ch. 1010.)*

**87669.**  The governing board shall determine whether a contract or regular employee is to be dismissed or penalized. If the employee is to be penalized, the governing board shall determine the nature of those penalties. If the employee is to be dismissed or penalized, the governing board shall determine whether the decision shall be imposed immediately or postponed in accordance with Section 87672.

*(Enacted by Stats. 1976, Ch. 1010.)*

**87670.**  The procedure set forth in this article does not apply to an immediate suspension effected under Section 87736.

*(Amended by Stats. 1990, Ch. 1302, Sec. 116. Effective September 25, 1990.)*

**87671.**  A contract or regular employee may be dismissed or penalized if one or more of the grounds set forth in Section 87732 are present and the following are satisfied:

(a) The employee has been evaluated in accordance with standards and procedures established in accordance with the provisions of this article.

(b) The district governing board has received the statement of evaluation which considers the grounds for which dismissal or penalties may be imposed.

(c) The district governing board has received recommendations of the superintendent of the district and, if the employee is working for a community college, the recommendations of the president of that community college.

(d) The district governing board has considered the statements of evaluation and the recommendations in a lawful meeting of the board.

*(Enacted by Stats. 1976, Ch. 1010.)*

**87672.**  If a governing board decides it intends to dismiss or penalize a contract or regular employee, it shall deliver a written statement, duly signed and verified, to the employee setting forth the complete and precise decision of the governing board and the reasons therefor.

The written statement shall be delivered by serving it personally on the employee or by mailing it by United States registered mail to the employee at his or her address last known to the district.

A governing board may postpone the operative date of a decision to dismiss or impose penalties for a period not to exceed one year, subject to the employee's satisfying his or her legal responsibilities as determined by statute and rules and regulations of the district. At the end of this period of probation, the decision shall be made operative or permanently set aside by the governing board.

*(Amended by Stats. 1995, Ch. 758, Sec. 159. Effective January 1, 1996.)*

**87673.**  If the employee objects to the decision of the governing board, or the reasons therefor, on any ground, the employee shall notify, in writing, the governing board, the superintendent of the district which employs him or her, and the president of the college at which the employee serves of his or her objection within 30 days of the date of the service of the notice.

*(Amended by Stats. 1995, Ch. 758, Sec. 160. Effective January 1, 1996.)*

**87674.**  Within 30 days of the receipt by the district governing board of the employee's demand for a hearing, the employee and the governing board shall agree upon an arbitrator to hear the matter. When there is agreement as to the arbitrator, the employee and the governing board shall enter into the records of the governing board written confirmation of the agreement signed by the employee and an authorized representative of the governing board. Upon entry of such confirmation, the arbitrator shall assume complete and sole jurisdiction over the matter.

*(Enacted by Stats. 1976, Ch. 1010.)*

**87675.**  The arbitrator shall conduct proceedings in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code, except that the right of discovery of the parties shall not be limited to those matters set forth in Section 11507.6 of the Government Code but shall include the rights and duties of any party in a civil action brought in a superior court under Title 4 (commencing with Section 2016.010) of Part 4 of the Code of Civil Procedure. In all cases, discovery shall be completed prior to one week before the date set for hearing. The arbitrator shall determine whether there is cause to dismiss or penalize the employee. If the arbitrator finds cause, the arbitrator shall determine whether the employee shall be dismissed, the precise penalty to be imposed, and whether the decision should be imposed immediately or postponed pursuant to Section 87672.

No witness shall be permitted to testify at the hearing except upon oath or affirmation. No testimony shall be given or evidence introduced relating to matters that occurred more than four years prior to the date of the filing of the notice. Evidence of records regularly kept by the governing board concerning the employee may be introduced, but no decision relating to the dismissal or suspension of any employee shall be made based on charges or evidence of any nature relating to matters occurring more than four years prior to the filing of the notice.

*(Amended by Stats. 2004, Ch. 182, Sec. 26. Effective January 1, 2005. Operative July 1, 2005, by Sec. 64 of Ch. 182.)*

**87676.**  In the case in which the arbitrator determines that the operation of his or her decision should be postponed, any question of terminating the postponement shall be determined by the arbitrator.

*(Amended by Stats. 1995, Ch. 758, Sec. 162. Effective January 1, 1996.)*

**87677.**  The district alone shall pay the arbitrator's fees and expenses, and the costs of the proceedings as determined by the arbitrator. The "cost of the proceedings" does not include any expenses paid by the employee for his or her counsel, witnesses, or the preparation or presentation of evidence on his or her behalf.

*(Amended by Stats. 1995, Ch. 758, Sec. 163. Effective January 1, 1996.)*

**87678.**   If within 30 days of the receipt of the notification by the district governing board, no written confirmation of agreement of the employee and the governing board as to an arbitrator has been submitted to the secretary of the governing board for entry into its records, the governing board shall certify the matter to the Office of Administrative Hearings and request the appointment of an administrative law judge.

*(Amended by Stats. 1985, Ch. 324, Sec. 7.)*


**87679.**   The administrative law judge shall conduct proceedings in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code, except that the right of discovery of the parties shall not be limited to those matters set forth in Section 11507.6 of the Government Code but shall include the rights and duties of any party in a civil action brought in a superior court under Title 4 (commencing with Section 2016.010) of Part 4 of the Code of Civil Procedure. In all cases, discovery shall be completed prior to one week before the date set for hearing. The written notice delivered to the employee pursuant to Section 87672 shall be deemed an accusation. The written objection of the employee delivered pursuant to Section 87673 shall be deemed the notice of defense.

*(Amended by Stats. 2004, Ch. 182, Sec. 27. Effective January 1, 2005. Operative July 1, 2005, by Sec. 64 of Ch. 182.)*


**87680.**   The administrative law judge shall determine whether there is cause to dismiss or penalize the employee. If he or she finds cause, he or she shall determine whether the employee shall be dismissed and determine the precise penalty to be imposed, and shall determine whether his or her decision should be imposed immediately or postponed pursuant to Section 87672.

No witness shall be permitted to testify at the hearing except upon oath or affirmation. No testimony shall be given or evidence introduced relating to matters which occurred more than four years prior to the date of the filing of the notice. Evidence of records regularly kept by the governing board concerning the employee may be introduced, but no decision relating to the dismissal or suspension of any employee shall be made based on charges or evidence of any nature relating to matters occurring more than four years prior to the filing of the notice.

*(Amended by Stats. 1985, Ch. 324, Sec. 9.)*


**87681.**   In the case in which the administrative law judge determines that the operation of his or her decision should be postponed, any question of terminating the postponement shall be brought to the administrative law judge.

*(Amended by Stats. 1985, Ch. 324, Sec. 10.)*


**87682.**   The decision of the arbitrator or administrative law judge, as the case may be, may, on petition of either the governing board or the employee, be reviewed by a court of competent jurisdiction in the same manner as a decision made by an administrative law judge under Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code. The court, on review, shall exercise its independent judgment on the evidence. The proceeding shall be set for hearing at the earliest possible date and shall take precedence over all other cases, except older matters of the same character and matters to which special precedence is given by law.

*(Amended by Stats. 1985, Ch. 324, Sec. 11.)*


**87683.**   The charges levied by the Office of Administrative Hearings shall be paid by the district.

*(Enacted by Stats. 1976, Ch. 1010.)*



**EDUCATION CODE - EDC**

**TITLE 3. POSTSECONDARY EDUCATION [66000 - 101149.5]** *( Title 3 enacted by Stats. 1976, Ch. 1010. )*

**DIVISION 7. COMMUNITY COLLEGES [70900 - 88933]** *( Division 7 enacted by Stats. 1976, Ch. 1010. )*

**PART 51. EMPLOYEES [87000 - 88280]** *( Part 51 enacted by Stats. 1976, Ch. 1010. )*
**CHAPTER 3. Employment [87400 - 87885]** *( Chapter 3 enacted by Stats. 1976, Ch. 1010. )*

**ARTICLE 6. Termination of Services and Reduction in Force [87730 - 87740]** *( Heading of Article 6 amended by Stats. 1990, Ch. 1302, Sec. 123. )*

No regular employee or academic employee shall be dismissed except for one or more of the following causes:

**87732.** (a) Immoral or unprofessional conduct.

(b) Dishonesty.

(c) Unsatisfactory performance.

(d) Evident unfitness for service.

(e) Physical or mental condition that makes him or her unfit to instruct or associate with students.

(f) Persistent violation of, or refusal to obey, the school laws of the state or reasonable regulations prescribed for the government of the community colleges by the board of governors or by the governing board of the community college district employing him or her.

(g) Conviction of a felony or of any crime involving moral turpitude.

(h) Conduct specified in Section 1028 of the Government Code.

*(Amended by Stats. 1998, Ch. 63, Sec. 2. Effective January 1, 1999.)*

**NOTICE OF OBJECTION TO THE STATEMENT OF DECISION TO TERMINATE**

To:    The Board of Trustees
        Kern Community College District
        2100 Chester Avenue
        Bakersfield, California  93301

      I, Matthew Garrett, acknowledge service of the Notice of Decision to Terminate on me as a respondent. I acknowledge an additional copy of the Statement of Charges and Recommendation for Statement of Decision to Terminate with exhibits can be provided to me at my request.

      In response thereto, I represent that this reply to the Kern Community College District shall be my objection to the decision pursuant to Education Code section 87673 and Government Code section 11506. My present and correct mailing address is:

        _____

        _____

        _____

        _____

Date: _____, 2023    Signed: _____
                                         Matthew Garrett