1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   ANYA M. BINSACCA, State Bar No. 189613
    Supervising Deputy Attorney General
3   JAY C. RUSSELL, State Bar No. 122626
    JANE E. REILLEY, State Bar No. 314766
4   Deputy Attorneys General
      455 Golden Gate Avenue, Suite 11000
5     San Francisco, CA  94102-7004
      Telephone:  (415) 510-3617
6     Fax:  (415) 703-5843
      E-mail:  Jay.Russell@doj.ca.gov
7   *Attorneys for Sonya Christian, in her official
    capacity as Chancellor of the California Community*
8   *Colleges*

9                  IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11                          FRESNO DIVISION

12

13  **DAYMON JOHNSON,**                    | 1:23-cv-00848-ADA-CDB

14                            Plaintiff,

15          v.                             **DEFENDANT SONYA CHRISTIAN'S
                                           MEMORANDUM OF POINTS AND**
16                                         **AUTHORITIES IN OPPOSITION TO**
    **STEVE WATKIN, et al.,**              **PLAINTIFF'S MOTION FOR**
17                                         **PRELIMINARY INJUNCTION**
                              Defendants.
18                                         Date:        September 7, 2023
                                           Time:        10:30 a.m.
19                                         Dept:        200
                                           Judge:       Magistrate Judge Christopher
20                                                       D. Baker
                                           Trial Date:  Not Scheduled
21                                         Action Filed: June 1, 2023

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................................. 1

Background ............................................................................................................................. 2

      A.    California Community Colleges. ............................................................. 2

      B.    Plaintiff's Allegations. ........................................................................... 4

Standard of Review ............................................................................................................... 5

Argument ............................................................................................................................... 6

    I.    Plaintiff Lacks Standing to Seek Extraordinary Relief. ......................................... 6

      A.    The Challenged Regulations Apply to California's Community College Districts, Rather than Johnson. ..................................................... 7

      B.    Plaintiff Does Not Face an "Imminent Risk" of Harm Under the Regulations. ............................................................................................ 8

    II.    Plaintiff Has Not Shown a Likelihood of Success on the Merits that the Regulations Are Unconstitutional. ........................................................................ 10

      A.    The Board Is Entitled to Express Its Ideals Regarding Diversity, Equity, Inclusion, and Accessibility, and the Challenged Regulations Serve This Purpose. ....................................................... 11

    III.    Plaintiff Cannot Show that the Balance of Harms and the Public Interest Support an Injunction. ........................................................................................... 15

Conclusion ........................................................................................................................... 17

Information Required Under Eastern District Local Rule of Court 231(D)(3) ........................... 18

1

## TABLE OF AUTHORITIES

2

**Page**

3   CASES

4   *Alpha Delta Chi-Delta Chapter v. Reed*
5      648 F.3d 790 (9th Cir. 2011) ................................................................ 11, 13, 14

6   *Babbitt v. United Farm Workers Nat'l Union*
   442 U.S. 289 (1979) ......................................................................................... 8

7
   *Bair v. Shippensburg Univ.*
8      280 F. Supp. 2d 357 (M.D. Pa. 2003) ........................................................ 11, 12

9   *Barke v. Banks*
   25 F.4th 714 (9th Cir. 2022) ........................................................................ 7, 8
10

11   *Bible Club v. Placentia-Yorba Linda Sch. Dist.*
   573 F. Supp. 2d 1291 (C.D. Cal. 2008) ............................................................ 17
12
   *Brown v. Board of Ed. of Topeka*
13      347 U.S. 483 (1954) ....................................................................................... 16

14   *Caribbean Marine Servs. Co., Inc. v. Baldrige*
   844 F.2d 668 (9th Cir. 1988) ........................................................................ 5, 9
15

16   *D.T. v. Sumner Cnty. Schs.*
   942 F.3d 324 (6th Cir. 2019) ............................................................................ 8
17
   *Dahl v. HEM Pharms. Corp.*
18      7 F.3d 1399 (9th Cir. 1993) .............................................................................. 5

19   *Dahlia v. Rodriguez*
   735 F.3d 1060 (9th Cir. 2013) ........................................................................ 12
20

21   *DISH Network Corp. v. FCC*
   653 F.3d 771 (9th Cir. 2011) ............................................................................ 6
22
   *Downs v. Los Angeles Unified Sch. Dist.*
23      228 F.3d 1003 (9th Cir. 2000) ........................................................................ 11

24   *Drakes Bay Oyster Co. v. Jewell*
   747 F.3d 1073 (9th Cir. 2014) ...................................................................... 6, 15
25

26   *Eng v. Cooley*
   552 F.3d 1062 (9th Cir. 2009) .................................................................... 12, 13
27
   *Fed. Trade Comm'n. v. Affordable Media*
28      179 F.3d 1228 (9th Cir. 1999) ........................................................................ 17

ii

1

## **TABLE OF AUTHORITIES**
### (continued)

2

**Page**

3

4

*First Interstate Bank of California v. State of California*
   197 Cal. App. 3d 627 (1987)....................................................................... 9, 10

5

*Garcia v. Google, Inc.*
   786 F.3d 733 (9th Cir. 2015) ........................................................................ 5

6

7

*Goldie's Bookstore, Inc. v. Superior Court*
   739 F.2d 466 (9th Cir. 1984)......................................................................... 15

8

*Hazelwood Sch. Dist. v. Kuhlmeier*
   484 U.S. 260 (1988)....................................................................................... 15

9

*Hurley v. Irish–Am. Gay, Lesbian & Bisexual Grp. of Boston*
   515 U.S. 557 (1995)....................................................................................... 13

10

11

*Italian Colors Rest. v. Becerra*
   878 F.3d 1165 (9th Cir. 2018)...................................................................... 6

12

13

*Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Couns. 31*
   — U.S. —, 138 S. Ct. 2448 (2018) ................................................................ 13

14

*Johnson v. San Diego Unified Sch. Dist.*
   217 Cal. App. 3d 692 (1990)......................................................................... 10

15

16

*Leonard v. Clark*
   12 F.3d 885 (9th Cir. 1993).......................................................................... 7

17

18

*Lopez v. Candaele*
   630 F.3d 775 (9th Cir. 2010)........................................................................ 6, 7

19

*Los Angeles County v. Humphries*
   562 U.S. 29 (2010)......................................................................................... 15

20

21

*Maryland v. King*
   567 U.S. 1301 (2013)..................................................................................... 16

22

23

*Mazurek v. Armstrong*
   520 U.S. 968 (1997)....................................................................................... 5

24

*Roberts v. U.S. Jaycees*
   468 U.S. 609 (1984)........................................................................... 13, 15, 16

25

26

*Rosenberger v. Rector & Visitors of the Univ. of Virginia*
   515 U.S. 819 (1995)....................................................................................... 11

27

28

Def. Christian's Opp'n Mot. for Preliminary Injunction (1:23-cv-00848-ADA-CDB)

## TABLE OF AUTHORITIES
### (continued)

Page

*Rust v. Sullivan*
 500 U.S. 173 (1991) ..................................................................................... 11

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*
 739 F.2d 1415 (9th Cir. 1984) ....................................................................... 5

*Stormans, Inc. v. Selecky*
 586 F.3d 1109 (9th Cir. 2009) ....................................................................... 6

*Thomas v. Anchorage Equal Rts. Comm'n*
 220 F.3d 1134 (9th Cir. 2000) ....................................................................... 9

*TransUnion LLC v. Ramirez*
 ⸺ U.S. ⸺, 141 S. Ct. 2190 (2021) .............................................................. 6

*Truth v. Kent Sch. Dist.*
 542 F.3d 634 (9th Cir. 2008) ....................................................................... 15

*Unified Data Servs., LLC v. Fed. Trade Comm'n*
 39 F.4th 1200 (9th Cir. 2022) ....................................................................... 6

*Weinberger v. Romero-Barcelo*
 456 U.S. 305 (1982) ..................................................................................... 5

*Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*
 979 F.3d 1209 (9th Cir. 2020) ..................................................................... 16

*Winter v. Natural Res. Def. Council, Inc.*
 555 U.S. 7 (2008) ......................................................................... 5, 6, 13, 15

*Younger v. Harris*
 401 U.S. 37 (1971) ....................................................................................... 7


**CONSTITUTIONAL PROVISIONS**

California Constitution ..................................................................................... 16

United States Constitution
 Article III ....................................................................................................... 6
 First Amendment ................................................................................... *passim*
 Fourteenth Amendment ...................................................................... 1, 16, 17

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

**REGULATIONS**

California Code of Regulations, Title 5
§ 51200 ................................................................................................................. *passim*
§ 51201 ........................................................................................................ 1, 4, 12, 17
§ 51201(a) .......................................................................................................................... 3
§ 51201(c) ................................................................................................................. 13, 14
§ 51201(d) ...................................................................................................................... 14
§ 53000 ............................................................................................................................. 3
§ 53425 ........................................................................................................ 1, 4, 12, 17
§ 53601 ........................................................................................................ 1, 4, 12, 17
§ 53602 ................................................................................................................. *passim*
§ 53603 ........................................................................................................................... 12
§ 53605 ................................................................................................................ 1, 4, 17

**STATUTES**

California Education Code
§ 53601 ............................................................................................................................. 9
§§ 66250, *et seq.* ............................................................................................................. 2
§ 66251 ............................................................................................................................. 2
§ 66261.5 .......................................................................................................................... 2
§ 66270 ....................................................................................................................... 1, 16
§ 70900 ............................................................................................................................. 2
§ 70901(a) ..................................................................................................................... 4, 8
§ 70901(b)(1)(B) ........................................................................................................... 10
§ 70901(d) ........................................................................................................................ 3
§ 70902 ............................................................................................................................. 9
§ 70902(a)(1) ................................................................................................................... 3
§ 70902(b)(4) ................................................................................................................ 4, 9
§§ 71090-71906 ............................................................................................................... 3
§ 71090(b) ........................................................................................................................ 3
§ 72000(a) ........................................................................................................................ 9
§ 87732 ............................................................................................................................. 4
§ 87735 ............................................................................................................................. 4

California Government Code
§ 3550 ............................................................................................................................... 7
§ 11135(a) ....................................................................................................................... 16

**OTHER AUTHORITIES**

Cal. Cmty. Colls., *About Us,* https://www.cccco.edu/About-Us/Key-Facts ................................. 2

## <u>TABLE OF AUTHORITIES</u>
### (continued)

**<u>Page</u>**

Cal. Cmty. Colls., *Procedures and Standing Orders of the Board of Governors* (Dec. 2022), https://www.cccco.edu/-/media/CCCCO-Website/docs/procedures-standing-orders/december-2022-procedures-standing-ordersv2-a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D6 ................................................................................................ 8

Cal. Cmty. Colls., *Students*, https://www.cccco.edu/Students .................................................... 2

Cal. Cmty. Colls., *Vision for Success* 10 (July 2021), ................................................................ 2

Resolution of the Board of Governors No. 2017-01 (January 17, 2017), *https://tinyurl.com/yc8bw6z9* ......................................................................................... 2

**INTRODUCTION**

The California Education Code provides that "[n]o person shall be subjected to discrimination on the basis of disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or any [other constitutionally protected] characteristic" in California's community colleges.  Cal. Educ. Code § 66270.  Consistent with this law, in 2020 the Board of Governors of the California Community Colleges adopted regulations expressing "their commitment to diversity and equity in fulfilling the [community college] system's educational mission," and that this commitment "should guide the administration of all programs in the California Community Colleges, consistent with all applicable state and federal laws and regulations."  Cal. Code Regs. tit. 5, § 51200.  In doing so, the Board's goal was "ensuring the equal educational opportunity of all students."  *Id.* § 51201.  To promote that goal, "the California Community Colleges embrace diversity among students, faculty, staff and the communities we serve as an integral part of our history, a recognition of the complexity of our present state, and a call to action for a better future."  *Id.*  Plaintiff Daymon Johnson, an employee of the Kern Community College District, challenges the constitutionality of sections 51200 and 51201, and others adopted in April of this year that promote diversity, equity, inclusion, and accessibility.  His claims are unavailing.

Plaintiff has not—and cannot—present evidence to show that the regulations in any way impose an immediate threat of harm to him or have directly impaired his ability to express himself freely.  Nor is there any showing that Defendant Sonya Christian, the California Community Colleges Chancellor, has the authority to undertake any action to restrain Plaintiff's First Amendment rights.  And Plaintiff's motion fails to present any argument or evidence that justifies the extraordinary remedy of finding state regulations duly promulgated to promote Fourteenth Amendment concepts of equity and inclusion for the benefit of the nearly two million students of California's community colleges to be unconstitutional.

For these reasons, Chancellor Christian respectfully requests that this Court deny Plaintiff's motion to enjoin enforcement of California Code of Regulations, title 5, sections 51200, 51201, 53425, 53601, 53602, and 53605.

1

# BACKGROUND

### A.    California Community Colleges.

The California Community Colleges is the largest postsecondary system of higher education in the United States, with more than 1.8 million students attending one of 116 college campuses annually.  Cal. Cmty. Colls., *Students*, https://www.cccco.edu/Students (last visited Aug. 18, 2023).  With low tuition and a longstanding policy of full and open access, California's community colleges were established under the principle that higher education should be available to everyone.  *See id.*, *About Us,* https://www.cccco.edu/About-Us/Key-Facts (last visited Aug. 18, 2023).  As "the backbone of higher education in the state and the leading provider of career and workforce training in the country," the community colleges are the most common entry point into collegiate degree programs in California; the primary system for delivering career technical education and workforce training; a major provider of adult education, apprenticeship, and English as a Second Language courses; and a source of lifelong learning opportunities for California's diverse communities.  *Id.*  The California Equity in Higher Education Act (Cal. Educ. Code §§ 66250 et seq.) establishes California's policy of affording all persons equal rights and opportunities in postsecondary educational institutions, including the California Community Colleges.  *Id.* §§ 66251, 66261.5.

The Board of Governors of the California Community Colleges (the Board) sets policy and provides guidance for the 73 districts that constitute the postsecondary education system of community colleges.  Cal. Educ. Code § 70900.  The Legislature has granted the Board authority to develop and implement standards for classes, student academic requirements, and employment of academic and administrative staff.  *Id.* §§ 70900; 70901(b).  The Board's strategic mission states that "[a]ll people have the opportunity to reach their full educational potential . . . .  The Colleges embrace diversity in all its forms . . . .  All people have the right to access quality higher education."  Resolution of the Board of Governors No. 2017-01 (January 17, 2017), *https://tinyurl.com/yc8bw6z9* (last visited Aug. 18, 2023).  To further those goals, the California Community Colleges are unequivocally committed "to diversity, equity, and inclusion that is serving as a model to other systems in California and nationally."  Cal. Cmty. Colls.,

1   *Vision for Success* 10 (July 2021), /https://www.cccco.edu/-/media/CCCCO-

2   Website/Reports/vision-for-success-update-2021-a11y.pdf (last visited Aug. 18, 2023).

3       Under its authority from the Legislature, and consistent with its role of providing

4   "leadership and direction" to the California Community Colleges, the Board has promulgated

5   regulations to implement "aspects of state and federal anti-discrimination laws intended to

6   prevent unlawful discrimination in employment."  Cal. Code Regs. tit. 5, § 53000.  The

7   regulations "provide[] direction to community college districts related to the incorporation of

8   evidence-based and equity-minded practices into existing recruitment, hiring, retention, and

9   promotion activities to promote equal employment opportunities."  *Id.*  As part of providing that

10  direction, and furthering its "goal of ensuring the equal educational opportunity of all students,

11  the California Community Colleges embrace diversity among students, faculty, staff and the

12  communities we serve as an integral part of our history, a recognition of the complexity of our

13  present state, and a call to action for a better future." *Id.* § 51201(a).  This goal is intended to

14  "guide the administration of all programs in the California Community Colleges, consistent with

15  all applicable state and federal laws and regulations."  *Id.* § 51200.

16      The Board appoints a chief executive officer—the Chancellor—who exercises the duties

17  and responsibilities delegated to her by the Board.  Cal. Educ. Code § 71090(b).  Defendant

18  Sonya Christian has served as Chancellor since June 2023.  As the Board's chief executive, the

19  Chancellor's duties are wholly derivative of, and therefore no more expansive than, the Board's

20  authority.  *Id.* § 70901(d) (Board may delegate a power to the Chancellor); § 71090(b)

21  (Chancellor shall execute the responsibilities designated to her by the Board).  The Chancellor's

22  Office is responsible for carrying out the policies of the Board, including the development of

23  fiscal plans, a legislative agenda, a budget for the community college system, and the execution

24  of grants to community college districts to carry out statewide programs in furtherance of the

25  Board's policies.  *See, generally, id.* §§ 71090-71906.  But neither the Chancellor nor the Board

26  has any role in hiring, disciplining, or terminating district staff, or in establishing "employment

27  practices" for community college professors.  *Id.* § 70902(a)(1) ("Every community college

28  district shall be under the control of a board of trustees," and this "governing board of each

3

1  community college district" shall "maintain, operate, and govern" community colleges under their

2  jurisdiction.); *see also id.* §70902(b)(4) (local districts shall "[e]stablish employment practices,

3  salaries, and benefits for all employees not inconsistent with the laws of this state.").

4         Neither the Board nor the Chancellor has the authority to administer local community

5  college campuses; that authority lies with the community college districts governed by locally

6  elected boards of trustees.  Specifically, the Board's primary purpose is to provide "leadership

7  and direction" while maintaining, "to the maximum degree permissible, local authority and

8  control in the administration" of local community colleges by their districts.  Cal. Educ. Code §

9  70901(a).  Consistent with that "local authority and control," community college districts are

10  responsible for "employ[ing] and assign[ing] all personnel not inconsistent with the minimum

11  standards adopted by the board of governors and establish[ing] employment practices, salaries

12  and benefits for all employees not inconsistent with the laws of this state."  *Id.* § 70902(b)(4).

13         **B.     Plaintiff's Allegations.**

14         In his First Amended Complaint, Johnson argues that he "fears" discipline or termination as

15  a Bakersfield Community College professor if he refuses to comply with the Kern Community

16  College District's diversity, equity, inclusion, and accessibility policy.  (First Am. Compl. 25-26,

17  33, ECF No. 8.)  Johnson asserts that the District's application of California Educational Code

18  sections 87732 and 87735 to him (which set forth the grounds for termination or suspension)

19  violates his First Amendment rights.  (ECF No. 8 at 33.)  He further challenges the District's

20  application of District Board Policy 3050, alleging that its application causes him to "refrain from

21  speaking and has altered his speech for fear of further investigation, discipline, and termination."

22  (ECF No. 8 at 35.)[1]  Finally, in his fourth and fifth causes of action against all Defendants—

23  including Chancellor Christian—Johnson seeks to enjoin California Code of Regulations, title 5,

---

24         [1] Johnson alleges that the Kern Community College District Board Policy 3050 is
25  maintained "in compliance with" the Board's "Diversity, Equity, and Inclusion Competencies and
   Criteria" issued May 5, 2023, implying that the District Board Policy was issued in response to
   the Competencies and Criteria.  (ECF No. 8 at 12, ¶ 58.)  However, District Board Policy 3050
26  was first adopted in 2017.  (Decl. J. Russell Supp. Opp'n Mot. for Prelim. Inj. Exs. A, B.)  And
   the District Board adopted the current iteration of BP 3050 on January 20, 2022, over a year
27  before the challenged regulations and the Competencies and Criteria were issued.  (*Id.,* Exs. C-E.)
   Johnson acknowledges that the regulations were adopted April 16, 2023 (ECF No. 8 at 7, ¶ 38),
28  and that the Competencies and Criteria were issued May 5, 2023.  (*Id.* at 9, ¶ 42.)

1    sections 51200, 51201, 53425, 53601, 53602, and 53605, alleging that they "impose [an] official

2    political ideology" and are "unconstitutional on their face and as applied to Professor Johnson."

3    (ECF No. 8 at 36-39.)

4                                    **STANDARD OF REVIEW**

5        "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v.*

6    *Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Mazurek v. Armstrong*, 520 U.S.

7    968, 972 (1997) (a preliminary injunction "is an extraordinary and drastic remedy, one that

8    should not be granted unless the movant, by a clear showing, carries the burden of persuasion.").

9    "A preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device

10   for preserving the status quo."  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415,

11   1422 (9th Cir. 1984).  The purpose of a preliminary injunction is to protect the moving party from

12   a likely "irreparable loss of rights" until the court may render its final decision on the merits.  *Id.*

13   "At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be

14   exposed to irreparable harm," and "[s]peculative injury does not constitute irreparable injury

15   sufficient to warrant granting a preliminary injunction."  *Caribbean Marine Servs. Co., Inc. v.*

16   *Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citations omitted).  Accordingly, when—like here—

17   the moving party seeks "mandatory preliminary relief"—that is, relief that changes the status quo

18   as it existed before the conflict giving rise to the case—such relief "is subject to heightened

19   scrutiny and should not be issued unless the facts and law clearly favor the moving party."  *Dahl*

20   *v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).

21       "[T]he basis for injunctive relief in the federal courts has always been irreparable injury

22   and the inadequacy of legal remedies."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312

23   (1982).  A plaintiff seeking a preliminary injunction must demonstrate "that he is likely to

24   succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

25   relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

26   *Winter*, 555 U.S. at 20.  "The first factor under *Winter* is the most important," and a court need

27   not consider the remaining three elements where the plaintiff fails to show a likelihood of success

28   on the merits.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).  And when

                                              5

1  "the impact of an injunction reaches beyond the parties, carrying with it a potential for public

2  consequences, the public interest will be relevant to whether the district court grants the

3  preliminary injunction."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009).

4      Where the government is a party, the balance of equities factor merges with the public

5  interest factor.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  But a

6  plaintiff must still satisfy all four elements, and the *Winter* test does not "collapse into the merits"

7  of a First Amendment claim.  *See DISH Network Corp. v. FCC,* 653 F.3d 771, 776 (9th Cir.

8  2011).

9                        **ARGUMENT**

10  **I.    PLAINTIFF LACKS STANDING TO SEEK EXTRAORDINARY RELIEF.**

11      As a threshold matter, Johnson lacks standing to bring his claims against Chancellor

12  Christian because the regulations he seeks to have enjoined neither apply directly to him nor

13  create any imminent risk that Johnson will be harmed by Chancellor Christian or the California

14  Community Colleges.

15      To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact

16  that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by

17  the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion*

18  *LLC v. Ramirez*, ⸺ U.S. ⸺, 141 S. Ct. 2190, 2203 (2021).  Establishing the "injury in fact"

19  element of standing is a "rigid constitutional requirement" that a plaintiff must meet "to invoke a

20  federal court's jurisdiction," even where, as in the present case, the plaintiff brings a "pre-

21  enforcement" First Amendment challenge.  *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010).

22  In such pre-enforcement cases, to determine if a plaintiff faces a credible threat of enforcement—

23  and has thus suffered an "actual injury"—courts examine "1) the likelihood that the law will be

24  enforced against the plaintiff; 2) whether the plaintiff has shown, 'with some degree of concrete

25  detail,' that she intends to violate the challenged law; and 3) whether the law even applies to the

26  plaintiff."  *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1172 (9th Cir. 2018) (quoting *Lopez v.*

27  *Candaele*, 630 F.3d at 786).  In that regard, "there must be a genuine threat of imminent

28  prosecution" to establish standing.  *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th

                                6

1200, 1210 (9th Cir. 2022); *see also Younger v. Harris,* 401 U.S. 37, 42 (1971) ("[P]ersons

having no fears of state prosecution except those that are imaginary or speculative, are not to be

accepted as appropriate plaintiffs.").

Johnson cannot make the requisite "clear showing" of an injury in fact and thus lacks

standing to challenge the regulations on two separate, yet related, bases: 1) the regulations do not

apply directly to Johnson; and 2) Johnson has not—and cannot—show that he faces an imminent

risk of any harm at the hands of Chancellor Christian or the Board as a result of the regulations.

**A.    The Challenged Regulations Apply to California's Community College
Districts, Rather than Johnson.**

The regulations at issue do not apply to Johnson directly.  Rather, they direct community

college districts to consider diversity, equity, inclusion, and access in the employment processes,

as implemented through district policy and collective bargaining.  A plaintiff's "claims of future

harm lack credibility when the challenged speech restriction by its terms is not applicable to the

plaintiff[]."  *Lopez v. Candaele,* 630 F.3d at 788; *see also Leonard v. Clark,* 12 F.3d 885, 888-89

(9th Cir. 1993); *Barke v. Banks,* 25 F.4th 714, 719-20 (9th Cir. 2022).

The Ninth Circuit's decision in *Barke* is instructive.  There, the plaintiffs—who were

"elected members of local California government bodies, including city councils, school boards,

and community college and special purpose districts"—challenged California Government Code

section 3550.  *Barke v. Banks,* 25 F.4th at 716-17.  Section 3550 provides that "[a] public

employer shall not deter or discourage public employees . . . from becoming or remaining

members of an employee organization."  The plaintiffs alleged that the law violated their First

Amendment rights and chilled their speech based on a fear that the California Public Employment

Relations Board would "erroneously attribute" their personal statements concerning union

membership to their governmental employers, "thereby causing their employers to be sanctioned

and damaging [the plaintiffs'] reputations as a result."  *Id.* at 717-18.  Affirming the district

court's order dismissing the case, the Ninth Circuit held that because section 3550 did not apply

to the plaintiff or "the speech Plaintiffs allege they want to engage in," they "failed to

7

1   demonstrate that they ha[d] suffered an injury in fact sufficient to establish their standing to

2   pursue their pre-enforcement challenge." *Id.* at 720-21.

3       Here, as in *Barke*, the regulations in question do not apply directly to Johnson.  As

4   discussed above, the California Community Colleges Board provides "leadership and direction"

5   to community college districts, while allowing those districts to maintain "to the maximum

6   degree permissible, [their] local authority and control in the administration" of institutions within

7   their district.  Cal. Educ. Code § 70901(a).  Consistent with this principle, the regulations at issue

8   operate upon community college districts, not upon individual district employees who remain

9   under the supervision of their employer-districts.[2]

10      Because the regulations do not apply directly to Johnson, any claim by Johnson that he will

11   suffer future harm as a result of the regulations fails.

12      **B.    Plaintiff Does Not Face an "Imminent Risk" of Harm Under the
           Regulations.**

13

14      Johnson cannot show that he is likely to suffer irreparable harm absent a preliminary

15   injunction because he faces no "imminent" risk of any action by Chancellor Christian for

16   expressing his alleged viewpoints concerning diversity, equity, inclusion, and accessibility, even

17   viewpoints that are potentially in conflict with the California Community Colleges' goals.  To

18   challenge the prospective enforcement of a law or regulation, Plaintiff must establish "a realistic

19   danger of sustaining a direct injury as a result of the statute's operation or enforcement."  *Babbitt*

20   *v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, (1979).  "Irreparable" injury is an

21   "indispensable" requirement for a preliminary injunction.  *D.T. v. Sumner Cnty. Schs.*, 942 F.3d

22   324, 326 (6th Cir. 2019).  "A plaintiff must do more than merely allege imminent harm sufficient

23   ─────────────────
       [2] Johnson challenges the Board's "Vision for Success," which further articulates the
   Board's aspirations for district policies.  (ECF No. 8 at 29-30, ¶ 136, 144.)  However, only
24   regulations adopted through the formal regulatory process are binding on districts.  (*See* Cal.
   Cmty. Colls., *Procedures and Standing Orders of the Board of Governors* (Dec. 2022) ch. 2, §
25   200, https://www.cccco.edu/-/media/CCCCO-Website/docs/procedures-standing-
   orders/december-2022-procedures-standing-ordersv2-
26   a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D6 ("Neither the
   Board nor the Chancellor may administer or enforce any regulation, as defined by section 202,
27   paragraph (d), unless that regulation is adopted in accordance with the provisions of this
   Chapter")).  Similar to the regulations, Board communications like the "Vision for Success" (first
28   drafted in 2017) do not apply directly to Johnson.

8

1   to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to

2   preliminary injunctive relief." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d at 674

3   (citation omitted) (emphasis in original).  When determining whether the "irreparable injury"

4   requirement is met, the Ninth Circuit considers, among other things, "whether the prosecuting

5   authorities have communicated a specific warning or threat to initiate proceedings." *Thomas v.*

6   *Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

7       Chancellor Christian is not a prosecuting authority.  The State's community college districts

8   are legally distinct entities from both the State and Board.  Community college districts are

9   independent local government entities controlled by a locally elected board of trustees, each with

10  the power to sue and be sued.  Cal. Educ. Code § 72000(a) ("The district and its governing board

11  may sue and be sued, and shall act in accordance with Section 70902.").  Education Code section

12  70902 enumerates the authorities and duties of local districts and their governing board of

13  trustees, and specifically requires that "the governing board of *each community college district*

14  *shall . . . employ* and assign all personnel not inconsistent with the minimum standards adopted by

15  the board of governors and establish employment practices, salaries and benefits for all

16  employees not inconsistent with the laws of this state." *Id.* § 70902(b)(4) (emphasis added).  And

17  it is each district that is responsible for "adopt[ing] policies for the evaluation of employee

18  performance, including tenure reviews, that requires demonstrated, or progress toward,

19  proficiency in the locally-developed [diversity, equity, inclusion, and accessibility] competencies

20  or those published by the Chancellor pursuant to section 53601." Cal. Code Regs. tit. 5, § 53602.

21      The distinct roles and different duties of the Board and local districts were examined in

22  *First Interstate Bank of California v. State of California,* 197 Cal. App. 3d 627 (1987).  There,

23  First Interstate Bank attempted to hold the State and the Board of Governors responsible when a

24  community college district failed to make lease payments in connection with a lease-purchase

25  agreement.  First Interstate contended that the construction and maintenance of school buildings

26  is a sovereign and nondelegable duty of the Board, and that the district was acting merely in an

27  agency capacity on the project.

28

9

The California Court of Appeal held that the district was a separate entity, and neither the State nor the Board could be held liable for any acts undertaken by a community college district, the community college, or the college's employees. *First Interstate Bank,* 197 Cal. App. 3d at 633. The court further noted that neither the state Constitution nor any statute provides that a district can undertake any action at the State or Board's behest. "[T]he fact that a state agency is created by statute to discharge a duty constitutionally imposed on the state does not transmute the agency into 'the state,' nor render the state liable for its acts under a general theory of respondeat superior." *Id.* Recognizing that "liability is fixed on the public entity whose employee causes the injury," the court found the State and the Board were not liable. *Id*., at 634; *see also Johnson v. San Diego Unified Sch. Dist.*, 217 Cal. App. 3d 692, 699 (1990) [confirming the "separate distinct character of the school district as distinguished from the state educational entities"].)

Neither the Board nor Chancellor Christian employs, evaluates, promotes, or disciplines district staff or college professors, including Johnson. Instead, the Board merely sets minimum hiring standards for personnel hired by each district. Cal. Educ. Code § 70901(b)(1)(B). All decisions regarding employee hiring, employment practices, performance evaluation, and potential termination are the responsibility of the district. *Id.* Thus, the Board and Chancellor Christian cannot and will not take any action against Johnson concerning his speech. He faces no "imminent threat" of action by either the Board or Chancellor Christian, nor does he face any "actual injury" resulting from the regulations. Because Johnson's allegations lack this essential element allowing him to seek injunctive relief, his motion should be denied.

## II.   PLAINTIFF HAS NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS THAT THE REGULATIONS ARE UNCONSTITUTIONAL.

Johnson's request that the Court preliminarily enjoin the regulations further fails because he has not shown a likelihood of success in establishing that the regulations are unconstitutional. The challenged regulations do not violate Johnson's First Amendment rights for at least two reasons: (1) the regulations do not restrict Johnson's speech, but rather express the Board's own principles regarding diversity, equity, inclusion, and accessibility; and (2) the regulations are constitutionally permissible non-discrimination policies that "do[] not target speech or

10

discriminate on the basis of its content, but instead serve to remove access barriers imposed against groups that have historically been excluded." *Alpha Delta Chi-Delta Chapter v. Reed,* 648 F.3d 790, 801 (9th Cir. 2011).

### A.   The Board Is Entitled to Express Its Ideals Regarding Diversity, Equity, Inclusion, and Accessibility, and the Challenged Regulations Serve This Purpose.

By their plain language, the regulations do not restrict the free speech of any employee in their individual capacity, or infringe upon any faculty member's academic freedom, including Johnson's.  Rather, the regulations set forth the Board's policy objective that district evaluation policies and practices reflect its ideals and principles regarding diversity, equity, inclusion, and accessibility.  Accordingly, the regulations Johnson challenges do not implicate the First Amendment.

The California Community Colleges Board is entitled to express its ideals and principles concerning diversity, equity, inclusion, and accessibility, particularly when that expression does not regulate another person's speech.  *Rosenberger v. Rector & Visitors of the Univ. of Virginia,* 515 U.S. 819, 828, 833 (1995) (although "the government may not regulate speech based on its substantive content . . . when the State is the speaker, it may make content-based choices"); *see also Downs v. Los Angeles Unified Sch. Dist.,* 228 F.3d 1003, 1013 (9th Cir. 2000).  In *Downs,* the school district issued "policies and practices" that supported "Educating for Diversity," and provided posters and materials supporting Gay and Lesbian Awareness Month to be posted on school bulletin boards.  *Downs,* 228 F.3d at 1005-06.  The district court rejected the plaintiff teacher's claim that the district violated his First Amendment rights when it refused to allow him to post contrary messages on the bulletin boards.  *Id.* at 1008.  In affirming that ruling, the Ninth Circuit held that governmental entities "may decide not only to talk about gay and lesbian awareness and tolerance in general, but also to advocate such tolerance if it so decides, and restrict the contrary speech of one of its representatives."  *Id*. at 1014, citing *Rust v. Sullivan,* 500 U.S. 173, 194 (1991).

*Bair v. Shippensburg Univ.,* 280 F. Supp. 2d 357 (M.D. Pa. 2003), illustrates the California Community Colleges' right to express guiding principles concerning diversity and equity.  In

*Bair*, university students sought to preliminarily enjoin enforcement of the following policies, on the ground that they violated the students' First Amendment rights: (1) a portion of the Preamble to the University Catalog which stated that "[t]he university will strive to protect [the freedoms necessary for the pursuit of truth and knowledge] if they are not inflammatory or harmful towards others," and (2) a portion of the University's Racism and Cultural Diversity Statement which provided, "[i]t is the unequivocal position of Shippensburg University to prohibit racism/ethnic intimidation and harassment; and to affirm cultural diversity, social justice and equality." *Id.* at 362-363.  The *Bair* court denied the students' motion for preliminary injunction as to both of these policies on the ground that neither policy implicated First Amendment concerns, as "the cited language seeks to advise the student body of the University's ideals and is therefore aspirational rather than restrictive." *Id.* at 370-371.

As in *Bair*, the challenged regulations do not implicate Johnson's First Amendment rights. Taken together, the regulations affirm the Board's "official position" to "embrace diversity among students, faculty, staff and the communities we serve" (Cal. Code Regs. tit. 5, §§ 51200 and 51201), and direct the State's community college districts to create their own employment policies consistent with this goal.  *Id.* §§ 53425, 53601, 53602, and 53603.  Critically, none of the challenged regulations include any enforcement mechanisms by which any employee of a community college district (including Johnson) can be punished by the Board or the Chancellor for engaging in speech contrary to the ideals set forth in the regulations, further bolstering the conclusion that the regulations are an expression of the Board's own principles, rather than mechanisms by which the Board or the Chancellor can or will restrict Johnson's individual speech.

To maintain his action, Johnson is required to show that his expression of allegedly protected speech will be a substantial or motivating factor in an adverse employment action.  *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) ("[T]he plaintiff bears the burden of showing the state took adverse employment action . . . [and that the] speech was a substantial or motivating factor in the adverse action.") (internal quotation marks omitted).  Because the regulations do not proscribe speech, Johnson's action against Chancellor Christian necessarily fails.  *Dahlia v.*

1   *Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc) ("[F]ailure to meet any one of [the

2   *Eng* factors] is fatal to the plaintiff's case.").

3         Johnson's reliance upon *Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Couns. 31*,

4   — U.S. —, 138 S. Ct. 2448 (2018) is misplaced.  In *Janus*, a state employee declined to join his

5   unit's union because he "oppose[d] many of the public policy positions that it advocate[d]," but

6   was nevertheless required under his unit's collective-bargaining agreement to pay monthly

7   nonmember dues to the union.  *Id.* at 2461.  The Supreme Court held that such compulsory

8   payment of nonmember dues "violates the free speech rights of nonmembers by compelling them

9   to subsidize private speech on matters of substantial public concern."  *Id.* at 2460.  Here, in

10  contrast, the regulations at issue do not require Johnson to "subsidize" any entity's private speech

11  (or, indeed, to do anything at all, because the regulations do not apply to Johnson directly), nor do

12  they otherwise provide for any adverse action to be taken against Johnson by the Board or

13  Chancellor Christian.

14        Because Johnson cannot establish that his First Amendment rights are or will be infringed

15  by the Board's regulations, he is not "likely to succeed on the merits" of his claim that the

16  regulations are unconstitutional, as required under *Winter*, 555 U.S. at 20.  Accordingly, Johnson

17  is not entitled to an order enjoining the challenged regulations.

18        **B.    The Regulations Are Constitutionally Permissible Non-Discrimination Policies.**

19        Johnson further fails to establish a likelihood of success on the merits because the

20  challenged regulations aim to "eliminate . . . barriers to equity" in community colleges (Cal. Code

21  Regs. tit. 5, § 51201(c)), rather than to suppress any individual's speech.  "As the Supreme Court

22  has made clear, antidiscrimination laws intended to ensure equal access to the benefits of society

23  serve goals 'unrelated to the suppression of expression' and are neutral as to both content and

24  viewpoint."  *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d at 801 (quoting *Roberts v. U.S.*

25  *Jaycees*, 468 U.S. 609, 623–24 (1984)); *see also Hurley v. Irish–Am. Gay, Lesbian & Bisexual*

26  *Grp. of Boston*, 515 U.S. 557, 572 (1995) (public accommodations law forbidding discrimination

27  based on sexual orientation and other grounds did not, "on its face, target speech or discriminate

28  on the basis of its content, the focal point of its prohibition being rather on the act of

13

1  discriminating against individuals in the provision of publicly available goods, privileges, and

2  services on the proscribed grounds.").

3      In *Alpha Delta Chi,* the Ninth Circuit upheld the constitutionality of San Diego State

4  University's nondiscrimination policy, which stated that "[u]nderlying San Diego State's

5  educational goals are basic values that include . . . freedom from discrimination" and affirmed its

6  "positive commitment toward diversity." *Alpha Delta Chi,* 648 F.3d at 799.  The policy

7  encouraged student organizations "to make a conscious effort to undertake recruitment efforts to

8  ensure diversity [and] take steps to reach populations currently underrepresented." *Id.*  The

9  policy further "challenged" the organizations "to express yourself in a manner that promotes and

10 maintains the ideals of respect, equality, diversity, and freedom from harassment." *Id.*  This

11 nondiscrimination policy was challenged by Christian student groups that were denied official

12 recognition in San Diego State's student organization program because of their exclusionary

13 practices. *Id.* 795-96.  Relying on Supreme Court authority, the Ninth Circuit rejected these

14 claims, holding that the nondiscrimination policy did not "target speech or discriminate on the

15 basis of its content, but instead serve[d] to remove access barriers imposed against groups that

16 have historically been excluded." *Id.* at 801.

17      Similar to the nondiscrimination policy in *Alpha Delta Chi,* the regulations Johnson

18 challenges do not "target speech or discriminate on the basis of its content," but instead seek to

19 "remove access barriers imposed against groups that have historically been excluded." *Alpha

20 Delta Chi,* 648 F.3d at 801.  The regulations "acknowledge that institutional racism,

21 discrimination, and biases exist," and that the Board's "commitment to diversity requires that we

22 strive to eliminate those barriers to equity and that we act deliberately to create a safe, inclusive,

23 and anti-racist environment" that "offers equal opportunity for all."  Cal. Code Regs. tit. 5, §

24 51201(c) and (d).

25      Because the Supreme Court and Ninth Circuit have held that such policies do not violate

26 the First Amendment, Johnson's motion to enjoin the challenged regulations should be denied.

27

28

### III.   PLAINTIFF CANNOT SHOW THAT THE BALANCE OF HARMS AND THE PUBLIC INTEREST SUPPORT AN INJUNCTION.

Johnson's claims of injury from the Board's promulgation of its aspirational regulations are based on an alleged denial of his First Amendment rights.  (ECF No. 8 at 6:1-7:24.)  Because his constitutional challenge to the regulations fails, Johnson cannot demonstrate that he will be injured, let alone irreparably so, in the absence of an injunction against the regulations.  *See Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984).  But even if Johnson could state a constitutional claim challenging the regulations—which he cannot—his motion should still be denied, as the crucial public interest served by the challenged regulations (namely, ensuring equal access to the California Community Colleges for nearly two million students) outweighs the nominal infringement of speech Johnson alleges he may experience as a result of the regulations.

When the government is the opposing party, the last two factors of the preliminary injunction analysis—the balance of equities and public interest—merge.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  To analyze these factors, a court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," paying "particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Winter*, 555 U.S. at 24 (citation omitted).

 "A State enjoys broad authority to create rights of public access on behalf of its citizens," and has the constitutional authority to enact legislation prohibiting invidious discrimination.  *Roberts v. United States Jaycees*, 468 U.S. 609, 624–26 (1984).  Specifically regarding education, the Supreme Court has held educational policies instilling "'shared values of a civilized social order,' which includes instilling the value of non-discrimination," are constitutionally sound and do not run afoul of the First Amendment.  *Truth v. Kent Sch. Dist.,* 542 F.3d 634, 649 (9th Cir. 2008) (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272 (1988)), overruled on other grounds by *Los Angeles County v. Humphries*, 562 U.S. 29 (2010).

California has a strong interest in ensuring students have equal educational opportunities and ensuring that concepts of diversity, equity, inclusion, and accessibility are promoted in all

1  community colleges.  *See Brown v. Board of Ed. of Topeka,* 347 U.S. 483, 493 (1954)

2  (educational "opportunity, where the state has undertaken to provide it, is a right which must be

3  made available to all on equal terms.").  California law declares that no person shall be subjected

4  to discrimination based on various enumerated factors, including sexual orientation and religion,

5  in "any program or activity conducted by any postsecondary educational institution" receiving

6  any financial assistance from the State.  Cal. Educ. Code §66270; *see also* Cal. Gov. Code

7  §11135(a).  The State has a strong interest in the continued viability of regulations that promote

8  its laws and policies endorsing diversity, equity, inclusion, and accessibility, and would suffer

9  irreparable harm if the Court were to enjoin them.  *Maryland v. King*, 567 U.S. 1301, 1303 (2013)

10  ("[A]nytime a State is enjoined by a court from effectuating statutes enacted by representatives of

11  its people, it suffers a form of irreparable injury.") (internal quotation marks omitted).  That is

12  particularly true because the regulations are constitutional as written.  *See Roberts,* 468 U.S. at

13  624-26.[3]

14      On the other hand, Plaintiff alleges a deprivation of constitutional rights, but any actual

15  burden on those rights that might exist (and Defendant submits there is none) is incidental and

16  exceedingly minimal.  The Fourteenth Amendment and the California Constitution guarantee all

17  citizens equal rights and equal protection under the law.  All the regulations in question do is

18  articulate the aspirational goal of enhancing diversity, equity, inclusion, and accessibility in

19  community colleges.  Any purported impact on speech—particularly speech that comes in the

20  form of statements that are counter to these goals—is far outweighed by the State's interest in

21  ensuring that community colleges promote diversity, equity, inclusion, and accessibility.  And as

22  discussed above, the regulations do not impose any penalty on Johnson if he chooses to express a

23  viewpoint counter to them.

24      Finally, the denial of Plaintiff's preliminary injunction motion best serves the public

25  interest.  "[W]hen a district court balances the hardships of the public interest against a private

26

27      [3] As discussed above (*supra* at I.A.), Johnson cannot make an "as applied" challenge to
the regulations since they do not apply to him.  *See Wells Fargo Bank, N.A. v. Mahogany
Meadows Ave. Tr.*, 979 F.3d 1209, 1217 (9th Cir. 2020) ("An as-applied challenge, by contrast,

28  focuses on the statute's application to the plaintiff.")

16

1    interest, the public interest should receive greater weight." *Fed. Trade Comm'n. v. Affordable*

2    *Media*, 179 F.3d 1228, 1236 (9th Cir. 1999) (citation omitted).  Here, the regulations serve the

3    important public interest of promoting rights that are embodied in the United States and

4    California Constitutions and the Americans with Disabilities Act.  *See Bible Club v. Placentia-*

5    *Yorba Linda Sch. Dist.*, 573 F. Supp. 2d 1291, 1300 (C.D. Cal. 2008) (stating that "[t]he public

6    interest is clearly implicated" in a case involving the exercise of constitutional rights).  There are

7    no grounds to enjoin regulations promoting the First and Fourteenth Amendment rights of almost

8    two million California community college students, particularly when that injunction would

9    unnecessarily require the State to tacitly accept that equity and accessibility do not apply to

10   California's community colleges.

11          An injunction is unwarranted, particularly when balanced against the alleged potential—but

12   unrealized and speculative—harm that Johnson alleges may arise if the regulations promoting the

13   aspirational goals of diversity, equity, inclusion, and accessibility are allowed to stand.  Johnson's

14   motion should be denied.

### CONCLUSION

16          For the foregoing reasons, Chancellor Christian respectfully requests that the Court deny

17   Plaintiff's Motion for Preliminary Injunction seeking to enjoin enforcement of California Code of

18   Regulations, title 5, sections 51200, 51201, 53425, 53601, 53602, and 53605.

19

20   Dated:  August 18, 2023                    Respectfully submitted,

21                                              ROB BONTA
                                                Attorney General of California
22                                              ANYA M. BINSACCA
                                                Supervising Deputy Attorney General
23

24                                              */s/ Jay C. Russell*
25                                              JAY C. RUSSELL
                                                JANE E. REILLEY
26                                              Deputy Attorneys General
                                                *Attorneys for Sonya Christian, in her official*
27                                              *capacity as Chancellor of the California*
                                                *Community Colleges*
28

1    **INFORMATION REQUIRED UNDER**

2    **EASTERN DISTRICT LOCAL RULE OF COURT 231(D)(3)**

3         Defendant Sonya Christian, named in her official capacity as Chancellor of the California

     Community Colleges, does not intend to present oral testimony at the hearing.  Defendant

4

     Christian estimates that each side should have approximately 15 minutes to present their

5

6    arguments.

7

8    Dated:  August 18, 2023                          Respectfully submitted,

9                                                     ROB BONTA
                                                      Attorney General of California
10                                                    ANYA M. BINSACCA
                                                      Supervising Deputy Attorney General
11

12                                                    */s/ Jay C. Russell*

13                                                    JAY C. RUSSELL
                                                      JANE E. REILLEY
14                                                    Deputy Attorneys General
                                                      *Attorneys for Sonya Christian, in her official*
15                                                    *capacity as Chancellor of the California*
                                                      *Community Colleges*
16   SA2023303989/43843359.docx

17

18

19

20

21

22

23

24

25

26

27

28

Def. Christian's Opp'n Mot. for Preliminary Injunction (1:23-cv-00848-ADA-CDB)

## CERTIFICATE OF SERVICE

Case Name:   ***Johnson, Daymon v. Watkin, Steve, et al.***

Case No.   **1:23-cv-00848-ADA-CDB**

I hereby certify that on <u>August 18, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

> **DEFENDANT SONYA CHRISTIAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**
>
> **DECLARATION OF JAY C. RUSSELL IN SUPPORT OF DEFENDANT SONYA CHRISTIAN'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION [with Exhibits A-E]**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished electronically by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct.

Executed on <u>August 18, 2023</u>, at San Francisco, California.

| | |
|---|---|
| _____ | _____ |
| Vanessa Jordan | *Vanessa Jordan* |
| Declarant | Signature |