INSTITUTE FOR FREE SPEECH
Alan Gura, SBN 178221
    agura@ifs.org
Courtney Corbello, admitted pro hac vice
    ccorbello@ifs.org
Del Kolde, admitted pro hac vice
    dkolde@ifs.org
1150 Connecticut Avenue, N.W., Suite 801
Washington, DC 20036
Phone: 202.967.0007
Fax:    202.301.3399

Attorneys for Plaintiff Daymon Johnson

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYMON JOHNSON, *Plaintiff*, v. STEVE WATKIN, et al., *Defendants*. | Case No. 1:23-cv-00848-ADA-CDB<br><br>Date:    September 7, 2023<br>Time:    10:30 a.m.<br>Dept:    200<br>Judge:    Hon. Christopher D. Baker<br>Trial Date:    Not Scheduled<br>Action filed:    June 1, 2023 |

REPLY TO KCCD DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION[1]

---

[1] KCCD Defendants are all Defendants other than Sonya Christian, who filed a separate opposition (Doc. 42).

TABLE OF CONTENTS

Table of Authorities ................................................................................................................... iii

Introduction .................................................................................................................................. 1

Argument ...................................................................................................................................... 2

    I.    Defendants' filing of a motion to dismiss is irrelevant ................................................ 2

    II.    Johnson has standing to sue KCCD Defendants ........................................................ 2

        A. Johnson has provided clear evidence of speech he refrains from uttering, and speech he is compelled to, but will not utter ..................... 2

        B. Defendants have threatened Johnson and demonstrated their intent to enforce the laws against him, placing him at risk of imminent harm ............. 3

    III.    Defendants are state officials who can be enjoined from enforcing state laws in violation of the Constitution ................................................................. 5

    IV.    Johnson need not choose between his First Amendment rights and his job ........................................................................................................................ 6

    V.    KCCD Board Policy 3050 is vague ........................................................................... 8

    VI.    Defendants' "hardships" inherent in losing a civil rights case do not overcome the public interest in enjoining their violations of the First Amendment ......................... 8

    VII.    Delay is not an issue, nor has Johnson delayed seeking relief ................................. 10

Conclusion .................................................................................................................................. 10

TABLE OF AUTHORITIES

Cases

*Babbitt v. UFW Nat'l Union*,
   442 U.S. 289 (1979) ............................................................................................................. 5

*Berry v. Yosemite Cmty. Coll. Dist.*,
   No. 1:18-cv-00172-LJO-SAB, 2018 U.S. Dist. LEXIS 64732 (E.D. Cal. Apr. 17, 2018) .............. 6

*Bessard v. Cal. Cmty. Coll.*,
   867 F. Supp. 1454 (E.D. Cal. 1994) ...................................................................................... 6

*Connick v. Myers*,
   461 U.S. 138 (1983) ............................................................................................................. 7

*Cuviello v. City of Vallejo*,
   944 F.3d 816 (9th Cir. 2019) .............................................................................................. 10

*Demers v. Austin*,
   746 F.3d 402 (9th Cir. 2014) ............................................................................................ 6, 7

*Doe v. Trump*,
   984 F.3d 848 (9th Cir. 2020) ............................................................................................... 9

*Evers v. Cnty. of Custer*,
   745 F.2d 1196 (9th Cir. 1984) ............................................................................................. 6

*Ex Parte Young*,
   209 U.S. 123 (1908) ............................................................................................................. 6

*First Franklin Fin. Corp. v. Franklin First Fin. Ltd.*,
   356 F. Supp. 2d 1048 (N.D. Cal. 2005) ............................................................................. 10

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ............................................................................................................. 7

*Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*,
   512 F.3d 1112 (9th Cir. 2008) ......................................................................................... 9, 10

*Gordon v. Holder*,
   721 F.3d 638 (D.C. Cir. 2013) ............................................................................................. 9

*Greisen v. Hanken*,
   925 F.3d 1097 (9th Cir. 2019) ............................................................................................. 3

*Hernandez v. City of Phx.*,
   43 F.4th 966 (9th Cir. 2022) ................................................................................................ 8

*Holder v. Humanitarian L. Project*,
   561 U.S. 1 (2010) ................................................................................................................. 8

*Keyishian v. Bd. of Regents*,
   385 U.S. 589 (1967) ............................................................................................................. 9

*Kiva Health Brands LLC v. Kiva Brands Inc.*,
    402 F. Supp. 3d 877 (N.D. Cal. 2019) ............................................................................. 10

*League of Wilderness Defs/Blue Mountain Biodiversity Project. v. Connaughton*,
    752 F.3d 755 (9th Cir. 2014) ........................................................................................ 8, 9

*Lopez v. Candaele*,
    630 F.3d 775 (9th Cir. 2010) ............................................................................................ 3

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ............................................................................................ 9

*Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*,
    611 F. Supp. 415 (C.D. Cal. 1985) ................................................................................. 10

*Minnesota Voters All. v. Mansky*,
    138 S. Ct. 1876 (2018) ..................................................................................................... 8

*Mitchell v. Los Angeles Cmty. Coll. Dist.*,
    861 F.2d 198 (9th Cir. 1988) ............................................................................................ 6

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ..................................................................................................... 5, 6

*Mulligan v. Nichols*,
    835 F.3d 983 (9th Cir. 2016) ............................................................................................ 4

*Nationwide Biweekly Admin., Inc. v. Owen*,
    873 F.3d 716 (9th Cir. 2017) ............................................................................................ 2

*Pickering v. Bd. of Ed.*,
    391 U.S. 563 (1968) ......................................................................................................... 7

*Project Veritas v. Schmidt*,
    72 F.4th 1043 (9th Cir. 2023) ........................................................................................... 2

*United Data Servs., LLC v. FTC*,
    39 F.4th 1200 (9th Cir. 2022) ........................................................................................... 2

*Riley's Am. Heritage Farms v. Elsasser*,
    32 F.4th 707 (9th Cir. 2022) ............................................................................................. 9

*Saxe v. State Coll. Area Sch. Dist.*,
    240 F.3d 200 (3d Cir. 2001) ............................................................................................. 8

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) ................................................................................. 3, 4, 5

Statutes

Cal. Code Regs. tit. 5, § 51201 ................................................................................................ 3

Cal. Code Regs. tit. 5, § 51201(b) ....................................................................................... 1, 3

Cal. Code Regs. tit. 5, § 53425 ........................................................................................... 1, 4

Cal. Code Regs. tit. 5, § 53462 ................................................................................................ 4

Cal. Code Regs. tit. 5, § 53601 .................................................................................................. 1, 9

Cal. Code Regs. tit. 5, § 53601(b)................................................................................................. 6

Cal. Code Regs. tit. 5, § 53602 .................................................................................................. 1, 6

Cal. Code Regs. tit. 5, § 53605 ........................................................................................... 1, 4, 5, 6

Cal. Educ. Code § 87732 ............................................................................................................... 3

Cal. Educ. Code § 87732(a)........................................................................................................... 4

Cal. Educ. Code § 87732(b)........................................................................................................... 4

Cal. Educ. Code § 87732(c)....................................................................................................... 1, 4

Cal. Educ. Code § 87732(d)...................................................................................................... 1, 4

Cal. Educ. Code § 87732(f) ...................................................................................................... 1, 4

Cal. Educ. Code § 87735 ............................................................................................................... 3

Rules

KCCD Board Policy 3050 ........................................................................................... 2, 15, 16, 17

Other Authorities

BP 3050 Institutional Code of Ethics,
    Kern Community College District Board Policy, Ch. 3,
    https://perma.cc/2X99-WVJP .................................................................................................. 8

INTRODUCTION

The record is replete with evidence of Defendants' reprisals against faculty for expressing disfavored political views, including an incredible 19-page, single-spaced statement of charges, consisting almost entirely of pure political speech, upon which Defendants terminated Johnson's predecessor as Faculty Lead of the Renegade Institute for Liberty ("RIFL").[2] Exh. G. Among the charges: not censoring Johnson's speech. Defendants have already investigated Johnson for his political views, and effectively excluded him from serving on selection committees because he will not undergo DEIA "training." Explaining his desire to ideologically cleanse KCCD of dissenting faculty, Defendant Corkins compared RIFL members to defective cattle that he slaughters.

And now, having explained that the Education Code enables them to terminate faculty for their political speech, and having already told faculty that "we must practice . . . antiracism" per Cal. Code Regs. tit. 5, § 51201(b), Exh. C, Defendants are charged with drafting and enforcing DEIA guidelines based on the Chancellor's "Competencies and Criteria." Cal. Code Regs. tit. 5, § 53601. If not stopped, they will evaluate Johnson's performance based on his fealty to the state's official DEIA ideology. *Id.* §§ 53425, 53602, and 53605. Defendants would surely consider violation of these rules or of the DEIA criteria as unsatisfactory performance, unfitness for service, or violation of or refusal to obey rules per Cal. Educ. Code §§ 87732(c), (d), (f). So Johnson self-censors, and fears that his decidedly noncompliant curriculum will, in any event, earn his dismissal.

Defendants respond by simply denying the facts, including their history of ideological discipline and Johnson's detailed explication of his noncompliant speech. They assert a host of specious claims, including that state law has primacy over the Constitution; that KCCD is a municipality (it is not), and that as municipal officers (which they are not) they cannot be sued for enforcing state laws; and that the filing of a motion to dismiss automatically defeats a preliminary injunction motion. And though they just terminated faculty for wrongthink, the state just adopted the DEIA regulations, Johnson has just started teaching under them, and KCCD has yet to promulgate its own DEIA regulations (an act Johnson seeks to enjoin), Defendants claim he should have moved sooner. Johnson is entitled to injunctive relief.

---

[2] Unless otherwise noted, "Defendants" refers to all defendants who filed the opposition at Doc. 43.

ARGUMENT

I. DEFENDANTS' FILING OF A MOTION TO DISMISS IS IRRELEVANT.

Defendants' assertion that the filing of a motion to dismiss bars consideration of a preliminary injunction motion, Doc. 43 at 9, is specious. As the titles suggest, defendants cannot stop plaintiffs from seeking *preliminary* injunctions by filing *dispositive* motions. Irreparable harm may be at stake, so courts typically decide preliminary injunction motions first. An order dismissing a case while a preliminary injunction appeal is pending merges into the final judgment. *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 730 (9th Cir. 2017).

II. JOHNSON HAS STANDING TO SUE KCCD DEFENDANTS.

"In a pre-enforcement challenge, plaintiffs can show injury in fact by establishing that (1) they intend to violate the law; and (2) have shown a reasonable likelihood that the government will enforce the statute against them." *Project Veritas v. Schmidt*, 72 F.4th 1043, 1053 (9th Cir. 2023).

    A. *Johnson has provided clear evidence of speech he refrains from uttering, and speech he is compelled to, but will not utter.*

Johnson has painstakingly detailed his "concrete plan to violate" the challenged regulations. *United Data Servs., LLC v. FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022). His 29-page declaration details the ways in which he would express himself but for his fear of Defendants' reprisals. Johnson's "planned classroom instruction" is not, as Defendants claim, his "only planned speech" from which he has refrained or is refraining. Doc. 43 at 13. For example, Johnson abstained rather than voted "no" on a committee, Doc. 10-2 at ¶ 4; he refrains from discussing "Cultural Marxism" on the internet, *id.* at ¶ 40; refrained from having RIFL endorse a speaker, *id.* at ¶ 41; refrains from recommending books, *id.* at ¶ 42; refrains from finalizing speaker agreements, *id.* at ¶ 43; would not act as a whistleblower, *id.* at ¶ 45; turned down invitations to appear on a radio show and otherwise speak with the media, *id.* at ¶¶ 54-55; and refrains from protesting against the participation of males in female sports competitions and against "drag queen story hours," *id.* at ¶ 59.

Johnson has also explained his refusal to express himself as the DEIA regime expects. For example, "I do not wish to constantly identify, challenge, upend, and replace existing policies because I do not view them as racist," *id*. at ¶ 38; "I will not introduce 'new employees to the institution and system's focus on DEI and anti-racism and the expectations for their contribution,'"

*id.* at ¶ 61; and "I do not wish to 'seek[] opportunities for growth to acknowledge and address the harm caused by internal biases and behavior,'" *id.* at ¶ 73. The record contains much more.

Defendants apparently want Johnson to provide the exact wording of the speech he refrains from uttering and will not express, but "[a] plaintiff . . . need not provide transcriptions of the conversations" to prove "content, form and context of speech." *Greisen v. Hanken*, 925 F.3d 1097, 1110 (9th Cir. 2019). Johnson's declaration is sufficiently detailed. He has met his burden.

> B. Defendants have threatened Johnson and demonstrated their intent to enforce the laws against him, placing him at risk of imminent harm.

"[A] government's preliminary efforts to enforce a speech restriction or its past enforcement of a restriction [is] strong evidence that pre-enforcement plaintiffs face a credible threat of adverse state action." *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010). Thus, a credible threat exists where "prosecuting authorities have communicated a specific warning or threat to initiate proceedings under the challenged speech restriction," or if there is "a history of past prosecution or enforcement under the challenged statute." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

Defendants have plainly communicated their intent to enforce the DEIA regulations and initiate proceedings under § 87732, § 87735 and BP 3050 if Johnson engages in speech that does not comport with "intentionally practic[ing] . . . antiracism." Cal. Code Regs. tit. 5, § 51201(b). Defendant Corkins thinks the RIFL members' views are "abusive," and has threatened to "cull" Johnson and "take [him] to the slaughterhouse" for expressing those views. Defendant Watkin's predecessor referred to those same views as "attacks" on minorities that violate § 51201, Exh. C, and said Garrett's views, which Johnson shares, are inconsistent with the school's DEIA ideologies and "make[ ] his colleagues and the District's students feel unsafe." Exh. G at 12, 22. Defendant McCrow issued a disciplinary notice to Garrett threatening further action for speech that is contrary to KCCD's preferred DEIA ideology. Exh. F. And Defendants have already investigated Johnson for posting dissident political speech on Facebook. Exh. E.

These threats suffice, as "informal measures, such as the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation, can violate the First Amendment also." *Mulligan v. Nichols*, 835 F.3d 983, 989 n.5 (9th Cir. 2016) (citations omitted). It is implausible that

Defendants would hold such dim views of Johnson's ideas, but would not label them "immoral or unprofessional," Cal. Educ. Code § 87732(a), "[e]viden[ce] [of] unfitness for service," *id*. § 87732(b), evidence of refusal to obey DEIA regulations, *id.* § 87732(f); lacking in "civility," BP 3050, or "aggressi[ive], threat[ening], harass[ing], ridicul[ing], or intimidat[ing]," *id*. And Johnson is not required to teach for the next three years, only to find out at the end of his current evaluation period that his "abusive" views and failure to incorporate DEIA into his teaching have cost him his job, as Defendants take his failure to satisfy Cal. Code Regs. tit. 5, §§ 53425, 53462, and 53605 as "unsatisfactory performance," Cal. Educ. Code § 87732(c); "[e]vident unfitness for service," *id*. § 87732(d), or "[p]ersistent violation of, or refusal to obey" state regulations, *id.* § 87732(f).

      Defendants have also demonstrated a "history of past prosecution or enforcement under the challenged statute[s]" by disciplining and terminating Garrett. *Thomas*, 220 F.3d at 1139. Defendants assert, without explanation, that "Garrett's conduct at issue was different," Doc. 43 at 14, but Garrett was punished for the very speech Johnson is chilled from expressing. For example, Garrett was punished for opining that the phrase "Cultural Marxism" is not hate speech and is protected by the First Amendment. Exh. F at 1. Johnson agrees and has posted that same view on social media in the past; he would continue doing so but for what happened to Garrett. Doc. 10-2 at ¶ 40. Garrett was punished for opining that the EODAC committee is staffed by faculty who "hold one particular point of view," Exh. F at 2, ¶ 4c, and criticizing the committee chair's conduct at a meeting, *id.* at 2-3, ¶ 5. Johnson has "stopped attending EODAC meetings to completely avoid having to give [his] conservative views on race, diversity, equity, and inclusion that EODAC addresses." Doc. 10-2 at ¶ 58. Garrett was punished for criticizing two proposed history courses via public comment and posts on the RIFL Facebook page. Exh. F at 3, ¶ 6. Johnson also wrote a critical public comment, and *he* authored the Facebook posts that Defendants attributed to Garrett. Doc. 10-2 at ¶ 46. Garrett was punished for giving interviews to the Terry Maxwell Show and Fox News Digital in which he criticized Bakersfield College's diversity practices. Exh. F at 5, ¶ 12; Exh. G at 13, ¶ 11a. Johnson turned down invitations to appear on Terry Maxwell, Fox News and the Daily Caller to discuss similar topics, on which he shares Garrett's views. Doc. 10-2 at ¶¶ 4-55. Garrett was punished for expressing critical opinions of the school and faculty - and allowing other

third parties to do so – on RIFL's Facebook page. Exh. F ¶ 14; Exh. G ¶¶ 3(a)(vi), 11(b), 15, 19, 20. Johnson had actually been the one to author or sanction many of the posts that Garrett was disciplined for; he no longer posts on the RIFL Facebook page and has deleted third-party posts from the page as well. Doc. 10-2 at ¶¶ 48, 51. Defendants' history with Garrett is not "different." Doc. 43 at 14. It is the very type of "history of past prosecution or enforcement under the challenged statute" that confirms a credible enforcement threat. *Thomas*, 220 F.3d at 1139.

Defendants seek to distance themselves from this unpleasant history by claiming Johnson avers "no current specific warning or threat to initiate proceedings against him for violation of these standards, based on his speech as a professor at the District." Doc. 43 at 14; *see also* Doc. 43-1 ¶ 1. But while specific prosecutorial threats can demonstrate the likelihood of enforcement, they are not strictly required to create pre-enforcement standing. The government could otherwise defeat all pre-enforcement cases simply by remaining silent. Article III requires only that "the threat of enforcement must at least be 'credible,' not simply 'imaginary or speculative.'" *Thomas*, 220 F.3d at 1140 (quoting *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979)). And while Johnson appreciates Defendants' claim that they are not investigating him now, he notes that they do not disavow future action against him should he utter even a fraction of the words he refrains from saying, words that triggered Garrett's termination. Nor do Defendants promise not to discipline Johnson under the Education Code should he refuse to speak as required by the DEIA regulations, *e.g.*, should he fail to incorporate DEIA in his teaching per Section 53605.

III. DEFENDANTS ARE STATE OFFICIALS WHO CAN BE ENJOINED FROM ENFORCING STATE LAWS IN VIOLATION OF THE CONSTITUTION.

Defendants posit a theory under which they are municipal officials who can only be sued for enforcing municipal policies under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). They err.

As Defendants should know, California community college districts are *not municipalities*. They are not "persons" under Section 1983. "[T]he Ninth Circuit has held that community college districts in California are state entities that possess Eleventh Amendment immunity from 1983 claims[.]" *Berry v. Yosemite Cmty. Coll. Dist.*, No. 1:18-cv-00172-LJO-SAB, 2018 U.S. Dist. LEXIS 64732, at *7 (E.D. Cal. Apr. 17, 2018) (citing *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988)). Not one of Defendants' cited *Monell* cases involved community

college districts. KCCD is a *state* entity. Defendants are *state* officials who *can* be enjoined from enforcing *state* laws when sued in their official capacities. *Ex Parte Young*, 209 U.S. 123 (1908).[3]

Section 53601(b) directs Defendants to formulate local DEIA standards. The Court can enjoin them from doing so. Section 53602 directs Defendants to adopt policies for evaluating Johnson's performance based on his commitment to DEIA, evaluate him based on DEIA, and take a host of steps to implement DEIA ideology. The Court can enjoin them from doing so. Section 53605 directs Johnson to incorporate DEIA into his teaching. The Court can enjoin Defendants from firing Johnson under the Education Code if he refuses to do so. And even absent the DEIA regulations, the Court can enjoin Defendants from applying the Education Code to Johnson in a manner that interprets disapproved political thought as grounds for termination, as they have done.

It is not a defense under *Ex Parte Young* for state officials to claim they have no choice but to enforce state law. The Constitution is supreme. U.S. Const. art. VI. This Court's orders enforcing it—even against state law—are not optional. "Allowing state actors to escape liability by claiming that they have a 'compelling state interest' in implementing a state law that violates federal law would make the Supremacy Clause hollow indeed." *Bessard v. Cal. Cmty. Coll.*, 867 F. Supp. 1454, 1464 (E.D. Cal. 1994) (footnote omitted).[4] Relatedly, Defendants suggest that the true defendants ought to be the Board of Governors who enacted the DEIA regulations.[5] But the Governors do not enforce DEIA regulations against Johnson or issue guidance for that enforcement. Defendants do.

IV. JOHNSON NEED NOT CHOOSE BETWEEN HIS FIRST AMENDMENT RIGHTS AND HIS JOB.

Defendants fail to address Johnson's compelled speech claims. Doc. 10-1 at 12-13, 17-18.

With respect to Johnson's viewpoint discrimination claim, the message of *Demers v. Austin*, 746 F.3d 402 (9th Cir. 2014) is decidedly *not* that academic institutions are free to "make content-based decisions" about professors' speech, and that courts cannot "interven[e] in that decision

---

[3] Even if Defendants were municipal officers enforcing state law, they would still be subject to Section 1983 as they exercise discretion in employment decisions, and in crafting local DEIA policies. *Evers v. Cnty. of Custer*, 745 F.2d 1196, 1203 (9th Cir. 1984).

[4] Now recalling *Ex Parte Young*, Defendants argue in their new motion to dismiss that they cannot be enjoined from enforcing state laws unless they are also sued for enforcing an uncodified custom, practice or policy. Doc. 46 at 23 n.7. But *Monell*, 436 U.S. at 690, authorizes 1983 challenges to ordinances. *See also* First Am. Comp., Doc. 8, ¶ 58.

[5] They do not, at least, suggest that Professor Johnson seek an injunction commanding the Legislature to amend the Education Code that Defendants are charged with enforcing.

making." Doc. 43 at 18. Public employees speaking *pursuant to their official duties* do not speak as private citizens for First Amendment purposes, and may be disciplined for their speech, *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)—with one relevant exception: "speech related to scholarship or teaching," *id.* at 425. "[T]eaching and academic writing that are performed 'pursuant to the official duties' of a teacher and professor" are protected by the First Amendment, under the *Pickering* test for off-duty speech. *Demers*, 746 F.3d at 412. Under this test, "the employee must show that his or her speech addressed 'matters of public concern.'" *Id.* (quoting *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968)). If so, courts ask whether "the employee's interest 'in commenting upon matters of public concern'" outweighs the state's interest "as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* (quoting *Pickering*, 391 U.S. at 568).

Defendants fail to address the fact that much of Johnson's speech would be made in his private capacity. For example, they earlier conceded that when Johnson posts on RIFL's Facebook page, he does not do so "in his role as a [KCCD] employee." Exh. E at 8. They do not contest the fact that to the extent the speech at issue "is that which [Johnson] would make pursuant to his official duties as a professor, it either plainly relates to teaching and scholarship . . . or actually *is* teaching and scholarship." Doc. 10-1 at 14. And they do not attempt to rebut the plain fact that Johnson's speech addresses matters of public concern, and admit that his criticism of DEIA relates to "one of the most critical public interest issues of our time." Doc. 43 at 19. *Pickering* thus governs, and Johnson easily establishes the first "public concern" prong.

Defendants then miss the fact that the "burden in justifying a particular [discipline]" under the *Pickering* test is "the State's." *Demers,* 746 F.3d at 413 (quoting *Connick v. Myers*, 461 U.S. 138, 150 (1983)). But they make no effort to justify their restrictions. They only assert that Johnson's fundamental speech rights are "weaker" than those of others generally, and that his "academic freedom rights must yield" because it is "impossible" to conduct this analysis on a motion for preliminary injunction, Doc. 43 at 8, and "the Ninth Circuit has advised courts against intervening in that decision making," *id.* at 18. This is not a serious *Pickering* step two analysis. It glosses over the Supreme Court's repeated admonitions about the First Amendment primacy of academic freedom. And even if Defendants made an effort to justify punishment of Johnson's

speech, "restrictions based on content must satisfy strict scrutiny, and those based on viewpoints are prohibited." *Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018) (citation omitted).

V. KCCD BOARD POLICY 3050 IS VAGUE.

Like most statutes, ordinances, and official government policies, BP 3050 is readily accessible. *See BP 3050 Institutional Code of Ethics*, Kern Community College District Board Policy, Ch. 3, https://perma.cc/2X99-WVJP. Plaintiff would have attached a copy to this reply, but Defendant Christian has already filed the document as her Exhibit E, Doc. 42-1 at 23.

BP 3050's language is nothing like the language approved in *Hernandez v. City of Phx.*, 43 F.4th 966, 973 (9th Cir. 2022), which cautioned personnel that their activity "on social media sites may be considered a reflection upon their position" and "must not interfere with work duties[.]" BP 3050, in contrast, prohibits "*verbal forms* of aggression, threat, harassment, ridicule or intimidation." Given BP 3050's overt "interfer[ence] with the right of free speech," the "more stringent vagueness test" applies. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 19 (2010). And BP 3050 fails this test because it requires "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Tingley v. Ferguson*, 47 F.4th 1055, 1089 (9th Cir. 2022) (quoting *Holder*, 561 U.S. at 20). "When laws against harassment attempt to regulate oral or written expression on such topics, . . . [courts] cannot turn a blind eye to the First Amendment implications." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 206 (3d Cir. 2001).

Defendants have already demonstrated that they may deem speech contrary to their ideological preferences, like Garrett's, "harassing" or "threatening" under BP 3050. And their response fails to identify any objective standards establishing what minimal guidelines govern their enforcement of this policy. Johnson is likely to succeed on his vagueness claim.

VI. DEFENDANTS' "HARDSHIPS" INHERENT IN LOSING A CIVIL RIGHTS CASE DO NOT OVERCOME THE PUBLIC INTEREST IN ENJOINING THEIR VIOLATIONS OF THE FIRST AMENDMENT.

When the government is a party, the balance of the equities is merged with the public interest, which "primarily addresses impact on *non-parties* rather than parties." *League of Wilderness Defs/Blue Mountain Biodiversity Project. v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (emphasis added) (internal quotation marks omitted). "[I]t is *always* in the public interest to prevent the violation of a party's constitutional rights," *Riley's Am. Heritage Farms v. Elsasser*, 32

F.4th 707, 731 (9th Cir. 2022) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)) (emphasis added), as "it may be assumed that the Constitution is the ultimate expression of the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (internal quotation marks omitted). And the academic freedom secured by an injunction "is of transcendent value to all of us and not merely to the teachers concerned." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967).

But Defendants claim that these strong, if not definitive public interests are outweighed by their private interest in avoiding embarrassment and attorney fees liability for losing a preliminary injunction. Doc. 43 at 19. Were this so, no constitutional violation would ever be enjoined. Similarly, Defendants claim that they will suffer a hardship if they are enjoined, because they will be unable to "comply with state-mandated laws" and "implement anti-racism." Doc. 43 at 19-20. This claim, too, is self-serving. By definition, *every* injunction alters someone's behavior. The fact that someone is enjoined cannot, without more, supply a reason to avoid being enjoined.

Defendants also repeat Defendant Christian's false charge that an injunction would upset the so-called "status quo," but that is not so. Johnson does not seek mandatory relief compelling defendants to perform some specific task, he seeks to enjoin them from formulating DEIA policies under Section 53601 (something they have yet to do as of this writing), evaluating him on the basis of his (lack of) commitment to DEIA (in three years), or investigating, disciplining, or terminating him for his political speech—something Defendants claim isn't currently on the table, perhaps because Johnson is refraining from speaking his mind. In no sense is *pre-enforcement* relief a mandatory command to do something.

In any event, Defendants overstate the importance of the mandatory/prohibitive distinction. "The purpose of a preliminary injunction is always to prevent irreparable injury . . . It often happens that this purpose is furthered by the status quo, but not always." *Doe v. Trump*, 957 F.3d 1050, 1068 (9th Cir. 2020) (quoting *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008)). "Maintaining the status quo is not a talisman." *Golden Gate*, 512 F.3d at 1116. "If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury." *Id*. (quotation omitted).

## VII. DELAY IS NOT AN ISSUE, NOR HAS JOHNSON DELAYED SEEKING RELIEF.

Defendants' claim that Johnson is not harmed because he delayed seeking relief lacks merit. "[C]ourts are loath to withhold relief solely on [delay] ground[s]." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (internal quotation marks omitted). "[T]ardiness is not particularly probative in the context of ongoing, worsening injuries," and "our cases do not require a strong showing of irreparable harm for constitutional injuries," *id.* (internal quotation marks omitted).

Of course, there has been no delay. Johnson filed suit less than two months after Defendants announced Garrett's termination (April 14). He amended his complaint to cover the new DEIA regulations less than two months after the competencies and criteria were distributed to the Bakersfield College community (May 18) and noticed this motion for argument before the start of the first school year in which he would be evaluated under the DEIA regime. Indeed, Defendants have yet to announce their local DEIA regulations, an act Johnson seeks to enjoin.

Defendants misstate the facts of *First Franklin Fin. Corp. v. Franklin First Fin. Ltd.*, which involved a delay not of three months, but of *nine years*. 356 F. Supp. 2d 1048, 1054 (N.D. Cal. 2005) (by 2005, defendant used mark continuously since 1993 and online for over five years). The four-month delay in *Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*, 611 F. Supp. 415, 427 (C.D. Cal. 1985) was relevant because of the defendant's need to prepare for an imminent television season. In *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877 (N.D. Cal. 2019), plaintiff waited *over three years* to serve the lawsuit and another four months to seek a preliminary injunction. *Id.* at 898. And none of these cases involved ongoing injury to constitutional rights.

## CONCLUSION

This Court should grant Professor Johnson's motion for preliminary injunction.

Dated: August 30, 2023    Respectfully submitted.

By:  /s/ Alan Gura
Alan Gura, SBN 178221
    agura@ifs.org
Courtney Corbello, admitted pro hac vice
Del Kolde, admitted pro hac vice
1150 Connecticut Avenue, N.W., Suite 801
Washington, DC 20036
Phone: 202.967.0007 / Fax:  202.301.3399

CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2023, I electronically filed the foregoing with the Clerk using the Court's CM/ECF system, and that all participants in this case are registered CM/ECF users who have thereby been electronically served.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 30, 2023.

/s/ Alan Gura
Alan Gura