Jesse J. Maddox, Bar No. 219091
jmaddox@lcwlegal.com
David A. Urban, Bar No. 159633
durban@lcwlegal.com
Olga Y. Bryan, Bar No. 298969
obryan@lcwlegal.com
Morgan Johnson, Bar No. 345620
mjohnson@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704
Telephone: 559.256.7800
Facsimile: 559.449.4535

Attorneys for Defendants STEVE WATKIN, et al.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – BAKERSFIELD

| | |
|---|---|
| DAYMON JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>STEVE WATKIN, in his official capacity as Interim President, Bakersfield College; et al.,<br><br>Defendants. | Case No.: 1:23-cv-00848 ADA-CDB<br><br>Complaint Filed: June 1, 2023<br>FAC Filed: July 6, 2023<br><br>**DISTRICT DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: Off-calendar<br>Time: Off-calendar<br>Courtroom: Courtroom 1 |

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ....... 1

II. THIS COURT SHOULD GRANT THE MOTION TO DISMISS ....... 1

A. JOHNSON'S OPPOSITION DOES NOT REFUTE HE LACKS STANDING TO BRING COUNTS I-III DIRECTED AT THE EDUCATION CODE AND KCCD BOARD POLICY 3050 ....... 1

1. Johnson Does Not Plan to Violate Cal. Educ. Code §§ 87732, 87735, or KCCD Board Policy 3050 ....... 2

2. KCCD Has Not Warned or Threatened Johnson ....... 3

3. Johnson Cannot Rely on Garrett's Termination for a History of Past Enforcement ....... 5

B. THE OPPOSITION DOES NOT REFUTE THAT JOHNSON MUST SATISFY THE *MONELL* STANDARDS AND DOES NOT DO SO ....... 7

1. A Plaintiff Suing Individual Defendants in Their Official Capacity Under *Ex Parte Young* Must Satisfy *Monell* Standards ....... 7

2. The FAC Claims Fail Under *Monell* for Lack of Required Pleading ....... 8

3. Counts IV-V Fail Because the District Defendants Cannot be Liable Under Section 1983 for Following Mandatory State Law ....... 9

C. COUNTS IV-V CANNOT PROCEED IN THE ABSENCE OF THE BOARD OF GOVERNORS ....... 9

III. CONCLUSION ....... 10


Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Beram v. City of Sedona*, 587 F. Supp. 3d 948 (D. Ariz. 2022) ....5

*Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716 (7th Cir. 1998) ....9

*Ex Parte Young*. *Norsworthy v. Beard*, 87 F. Supp. 3d 1104 (N.D. Cal. 2015) ....8

*FTR Int'l, Inc. v. Bd. of Trustees of the Los Angeles Cmty. Coll. Dist*., 2015 WL 1577128 (Cal. Ct. App. Apr. 7, 2015) ....8

*Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992) ....8

*Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001) ....8

*Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112 (9th Cir. 2014) ....5

*Hoye v. City of Oakland*, 653 F.3d 835 (9th Cir. 2011) ....3

*Jackson v. Hayakawa*, 682 F.2d 1344 (9th Cir. 1982) ....9

*Kentucky v. Graham*, 473 U.S. 159 (1985) ....8

*Laird v. Tatum*, 408 U.S. 1 (1972) ....3

*Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010) ....3

*Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29 (2010) ....8

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ....1

*Norsworthy v. Beard*, 87 F. Supp. 3d 1104 (N.D. Cal. 2015) ....1

*Nw. Sch. of Safety v. Ferguson*, 699 F. App'x 707 (9th Cir. 2017) ....7

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

*Rincon Band of Mission Indians v. San Diego Cnty.*,
495 F.2d 1 (9th Cir. 1974) ....................4

*Sanchez v. City of Phx.*,
2013 U.S. Dist. LEXIS 10349, at *13 (D. Ariz. Jan. 25, 2013)....................5

*Sandoval v. Cty. of Sonoma*,
912 F.3d 509 (9th Cir. 2018) ....................1, 9

*Shermoen v. United States*,
982 F.2d 1312 (9th Cir. 1992) ....................10

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) ....................5

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)....................1

*Swenson v. Potter*,
271 F.3d 1184 (9th Cir. 2001) ....................4

*Taylor v. Tennessee*,
2020 WL 89698 (W.D. Tenn. Jan. 7, 2020) ....................8

*Thomas v. Anchorage Equal Rights Comm'n*,
220 F.3d 1134 (9th Cir. 2000) ....................3

*United Data Servs., LLC v. FTC*,
39 F.4th 1200 (9th Cir. 2022) ....................2

*United Pub. Workers v. Mitchell*,
330 U.S. 75 (1947)....................4

*Villegas v. Gilroy Garlic Festival Ass'n*,
541 F.3d 950 (9th Cir. 2008) ....................9

*Wolfson v. Brammer*,
616 F.3d 1045 (9th Cir. 2010) ....................10

**State Cases**

*Slivkoff v. Bd. of Trs.*,
69 Cal. App. 3d 394 (1977) ....................9

**State Statutes**

California Education Code § 70901....................10

California Education Code § 70902....................10

California Education Code § 71024....................10

California Education Code § 87732....................3

California Education Code § 87735....................3

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Daymon Johnson's Opposition to the District Defendants'[1] Motion to Dismiss does not refute the numerous separate and distinct reasons the Motion should be granted without leave to amend. First, the Opposition fails to establish that Johnson has standing to assert his pre-enforcement challenges to the Education Code or Board Policy 3050. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) ("*SBA List*"); *infra* Section II.A.1-3. Second, the Opposition does not show that the First Amended Complaint ("FAC") alleges sufficient facts to establish liability against the District Defendants under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Instead, it dedicates substantial efforts to the technical argument that a local agency like Kern Community College District ("KCCD") can be liable without a plaintiff complying with the long-established *Monell* standards. The argument lacks merit, however. *See, e.g., Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1113 (N.D. Cal. 2015); *infra* Section II.B.1-2. In any event, the Opposition does not refute that complying with mandatory state regulations should not subject the District Defendants to 42 U.S.C. section 1983 liability. *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 517-18 (9th Cir. 2018); *infra* Section II.B.3.

The District Defendants are basically caught in the middle between Johnson's ideological conflict with the new Diversity, Equity, Inclusion, and Accessibility ("DEIA") regulations and the Attorney General's Office's defense of them. Indeed, the body responsible for the DEIA regulations, the Board of Governors of the California Community Colleges, is not even a party, further justifying dismissal. *See infra* Section II.C.

## II. THIS COURT SHOULD GRANT THE MOTION TO DISMISS

### A. JOHNSON'S OPPOSITION DOES NOT REFUTE HE LACKS STANDING TO BRING COUNTS I-III DIRECTED AT THE EDUCATION CODE AND KCCD BOARD POLICY 3050

As explained in Defendants' Motion to Dismiss ("Motion"), Johnson fails to show an

[1] The "District Defendants" are Steve Watkin, Richard McCrow, Thomas Burke, Romeo Agbalog, John S. Corkins, Kay S. Meek, Kyle Carter, Christina Scrivner, Nan Gomez-Heitzeberg, and Yovani Jimenez.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

"injury in fact" necessary to establish Article III standing, as he alleged neither an actual injury nor an imminent future injury in fact. (Motion at pp. 16-21.) *SBA List*, 573 U.S. at 157-58. Initially, Johnson's Opposition concedes he asserts no actual retaliation claim based on the investigation of the bullying complaint his colleague Andrew Bond filed against him, and this rules out his ability to demand injunctive relief based on retaliation. (Opp. at p. 12:22-25 (conceding there is no "past event for which he seeks redress").) Accordingly, Johnson must rely on an imminent future injury to establish standing. Johnson's Opposition fails to present any argument that would cure the fatal defect in Johnson's FAC: there are no allegations that future injuries are "certainly impending." *SBA List*, 573 U.S. at 158. Defendants' Motion established that none of the three factors relevant in determining whether a plaintiff has shown a "credible threat" of "imminent" enforcement weigh in Johnson's favor. (Motion at pp. 17:16-21:19.) *United Data Servs., LLC v. FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022). Nothing in Johnson's Opposition demonstrates otherwise. (Opp. at pp. 14:3-17:27.)

**1. <u>Johnson Does Not Plan to Violate Cal. Educ. Code §§ 87732, 87735, or KCCD Board Policy 3050</u>**

First, as established in the Motion, Johnson fails to allege a concrete plan to violate the laws in question. *United Data*, 39 F.4th at 1210. Johnson's Opposition argues that his "concrete plan" is to "speak or refrain from speaking in ways that Defendants would punish" (Opp. at p. 14:4-6), but he never lays out a plan, concrete or otherwise, to "speak" in a manner "Defendants would punish." (*Id*. at p. 14:4-15:7.) Quite the contrary, the FAC states that Johnson has refrained from conduct he believes would violate California Education Code sections 87732, 87735, or Board Policy 3050 out of concern that his conduct might violate these provisions. In other words, his "plan" is to avoid violating the laws in question. Therefore, falling well short of establishing a concrete plan to violate California Education Code sections 87732, 87735, or Board Policy 3050, Johnson has failed to allege even a hypothetical plan to violate the provisions.

The Opposition asserts Johnson has refrained from discussing certain terms, recommending books, and otherwise expressing himself in ways he subjectively believes would expose him to punishment. (Opp. at p 14:4-18.) But "self-censorship alone is insufficient to

show injury." *Lopez v. Candaele*, 630 F.3d 775, 792 (9th Cir. 2010) (citing *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm . . . .").

Indeed, the risk that Johnson's speech would expose him to any disciplinary action is speculative at best. *Hoye v. City of Oakland*, 653 F.3d 835, 859 (9th Cir. 2011) (a court should "decline[] to entertain [an] as-applied challenge[] that would require [it] to speculate as to prospective facts"). Johnson's fear appears to be grounded in Professor Garrett's termination, but, as explained below, Garrett's conduct was of a completely different nature than Johnson's and does not reasonably lead to the conclusion that Johnson would be disciplined for speaking as he wishes. *See infra*, section II.A.3. None of the speech Johnson identifies falls within the reach of the laws in question (Cal. Educ. Code §§ 87732, 87735, or KCCD Board Policy 3050). (Opp. at p. 14:4-15:7.) Even if it does, the topics Johnson wishes to discuss (and his views on those topics) are neither prohibited nor compelled by the language of California Education Code sections 87732, 87735, or KCCD Board Policy 3050.

**2. KCCD Has Not Warned or Threatened Johnson**

Nothing in the Opposition establishes any of KCCD's communications amount to a specific warning or threat to initiate any proceedings against Johnson. (Opp. at pp. 15:9-16:9.) *United Data*, 39 F.4th at 1210. The Opposition does not dispute that to be actionable, "the threat of enforcement must at least be 'credible,' not simply 'imaginary or speculative.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1140 (9th Cir. 2000). None of the alleged "threats" in Johnson's FAC or Opposition meet this standard. The Opposition argues that Defendant Corkins' December 12, 2022 embellished statement[2] to "'cull' Johnson and 'take [him] to the slaughterhouse,'" the issuance of a "disciplinary notice to Garrett," and KCCD's investigation of Johnson's "dissident political speech" amount to a warning or threat to initiate proceedings against him. (Opp. at p. 15:9-20.) Each of these are either outright imaginary or general threats that are not entitled to any weight in considering this factor.

Johnson's conclusions in this regard are based on his own unfounded inferences, not fact.

[2] Trustee Corkins did not reference Johnson, explicitly or impliedly.



Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Indeed, Johnson's FAC undermines any standing argument he may have, as it describes a number of situations where he engaged in the type of speech he now claims he is "chilled" from expressing. (*See* FAC ¶ 105 [criticizing two courses Garrett also criticized]; ¶¶ 149-151, 153 [using materials critical of DEI principles in his courses].) Johnson's allegations reveal he has received not so much as a verbal warning for engaging in this conduct. (*Id.*)

Further, the Opposition fails to explain how Defendant Corkins' December 12, 2022 statement (FAC, ¶¶ 66-67) or then-President Dadabhoy's December 8, 2022 email (FAC, ¶¶ 59-69; Ex. C to FAC (ECF No. 8-4)) threatened him or the Renegade Institute for Liberty ("RIFL"). (Opp. at p. 15:9-20.) Even if Johnson subjectively believed he was the subject of these comments, "an implied threat does not meet the standard necessary to show injury in fact." *Lopez*, 630 F.3d at 789. On their face, these comments do not mention Johnson – or any other faculty member – or identify any speech that would violate the regulations in question. These comments do not even amount to "general threat" to enforce the regulations, let alone a "direct threat of punishment." *United Pub. Workers v. Mitchell*, 330 U.S. 75, 88 (1947). Even if they did, such general threats are insufficient to establish an injury in fact. *Id.*[3]

Further, contrary to his claims in the Opposition, there is no allegation that Johnson was investigated for "posting dissident speech on Facebook." (Opp. at p. 15:18-20.) Rather, this investigation stemmed from a "harassment and bullying" complaint against him, which KCCD was obligated to investigate. (FAC, ¶ 73). *See Swenson v. Potter*, 271 F.3d 1184, 1192-1193 (9th Cir. 2001) (employers are obligated to investigate complaints received from employees about other employees). Nor does the Opposition dispute that KCCD's comment it "will investigate any further complaints of harassment and bullying" fails to amount to an actionable threat. *See, e.g., Rincon Band of Mission Indians v. San Diego Cnty.*, 495 F.2d 1, 4 (9th Cir. 1974) (allegations that members of sheriff's office informed plaintiffs gambling was illegal under

[3] The Opposition claims these acts suffice as "informal measures" for the purposes of establishing "a specific warning or threat to initiate proceedings," citing *Mulligan v. Nichols*, 835 F.3d 983, 989 n.5 (9th Cir. 2016). (Opp. at p. 15:20-23.) Ironically, in the face of Johnson's assertion that he does not bring a retaliation claim, *Mulligan* involved a First Amendment retaliation claim in which the Court held that the "informal measures" of accusations and media leaks were not sufficient to demonstrate a constitutional violation.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

county law and they would enforce all county laws was "clearly of a general nature"); *Beram v. City of Sedona*, 587 F. Supp. 3d 948, 955 (D. Ariz. 2022) (finding direct verbal warning to plaintiff of the potential for prosecution did not constitute a specific warning or threat).

**3. Johnson Cannot Rely on Garrett's Termination for a History of Past Enforcement**

Finally, Defendants' Motion established that Johnson's FAC fails to allege a credible threat based on past enforcement against Professor Garrett. (Motion at pp. 19:26-21:19.) *United Data*, 39 F.4th at 1210. Johnson's Opposition fails to present any argument sufficient for the Court to conclude that Garrett's termination is at all relevant to any theoretical enforcement against Johnson. For a threat to be credible based on allegations of past enforcement, a plaintiff must allege "[p]ast enforcement against the *same conduct*." *SBA List*, 573 U.S. at 164 (emphasis added). Thus, where a plaintiff points to the government's action against another, the question becomes whether there is sufficient similarity of positions between the plaintiff and the third party. *Sanchez v. City of Phx.*, 2013 U.S. Dist. LEXIS 10349, at *13 (D. Ariz. Jan. 25, 2013) (citing *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1125 (9th Cir. 2009)).

Johnson's Opposition confirms that his entire FAC rests on the faulty conclusion that what happened to Professor Garrett will happen to him, despite the plain fact that Johnson does not allege he intends to engage in any of the conduct which led to Garrett's termination. (Opp. at p.16:10-17:27.) The Opposition's characterizations of Garrett's indiscretions are exaggerated, and Garrett's Notice of Termination contradicts them. (ECF No. 8-8 [FAC, Ex. G].) *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (a court need not accept as true plaintiff's factual allegations that are contradicted by attached exhibits).

For example, the Opposition claims that Garrett was punished for opining "that the phrase 'Cultural Marxism' is not hate speech." (Opp. at p. 16:16-17.) The only time "Cultural Marxism" appears in Garrett's termination notice is within a recitation of the Notice to Correct Deficiencies, which stated that "Garrett defended vandalism at Bakersfield College in an Op-Ed." (ECF No. 8-8 [FAC, Ex. G at p. 7.].) Johnson does not allege any intention to "defend vandalism." The Opposition also falsely claims Garrett was punished for filing a viewpoint

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

discrimination complaint. (Opp. at p. 16:19-20.) In reality, Garrett's Notice of Termination states his complaint was based on a "knowingly false claim," which forced KCCD to spend time and money on its investigation. (ECF No. 8-8 [FAC, Ex. G at p. 8.].) Johnson does not allege any intention to file knowingly false complaints. The Opposition further claims Garrett was punished for opining that the Equal Opportunity & Diversity Advisory Committee ("EODAC") committee is staffed by faculty who "hold one particular point of view," and criticizing the committee chair's conduct at a meeting. (Opp. at p. 16:22-24.) It was according to the Notice to Correct Deficiencies, however, that Garrett's comments were found to be "demonstrably false," consistent with his history of making knowingly false accusations against KCCD personnel. (ECF No. 8-7 [FAC, Ex. F at pp. 3-4.].) Johnson does not allege he intends to make demonstrably false accusations, over and over again, against his colleagues.

Indeed, nothing in the Opposition or the FAC expresses Johnson's desire to engage in similar conduct to that which led to Garrett's termination, as shown by the FAC's exhibits. For example, among the causes for termination, Garrett emailed Trustee John Corkins claiming to possess documents showing Corkins' "past indiscretions." (ECF No. 8-8 [FAC, Ex. G at p. 19, ¶ 17].) Johnson alleges no intention or desire basically to blackmail anyone. According to the FAC Exhibit G, Garrett also told a part-time faculty member and member at EODAC to "get the fuck out," which prompted her to report her fear that "Matt Garrett will verbally attack me again" and requested that the college ensure her safety at future committee meetings. (ECF No. 8-8 [FAC, Ex. G at p. 17, ¶ 13.) Johnson expresses no desire to engage in similar conduct.

Further, while Johnson alleges he now refrains from doing certain things, Garrett was not terminated for any such similar conduct. For instance, the Opposition contends that Johnson authored 15 posts referencing "Cultural Marxism" on RIFL's Facebook page but now distances himself from that term by canceling guest speakers who were to discuss that term and not recommending books with that phrase in the title. (Opp. at p. 16:18-19, FAC ¶ 101-102.) Garrett was not terminated for any Facebook post referencing "Cultural Marxism," securing speakers wishing to speak about that term, or recommending books on that topic. (ECF No. 8-8 [FAC, Ex. G].) Johnson also alleges he has refrained from finalizing agreements with speakers who would

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

present viewpoints "Defendants have already condemned, including in the course of disciplining Garrett." (FAC ¶ 103.) But Garrett was not terminated for such conduct. (ECF No. 8-8 [FAC, Ex. G].) In fact, Garrett's Notice of Termination specifically noted "the Administration has approved other conservative speakers sponsored by Garrett's organization the Renegade Institute for Liberty (RIFL) as requested by Garrett. Sample events include a screening of the film 'Uncle Tom: An Oral History of the American Black Conservative' and 'Taboo: Race and Other Topics You Just Can't Talk About' a speech by Dr. Wilfred Reilly." (FAC, Ex. G at p. 8.) Johnson also alleges he requires students to read materials that are inconsistent with DEI principles, but again, Garrett was not terminated for such conduct. (*Compare* FAC ¶¶ 149-151, 153 *with* Ex. G.)

In comparing Garrett's Notice of Termination and Johnson's FAC, the only commonality that can be reasonably inferred is their similar political views, but this is not sufficient to conclude that "past enforcement" was based on the same conduct by Garrett. In short, Johnson fails to allege that he intends to engage in any of the same conduct as Garrett, and the Opposition does not establish otherwise. Absent a history of enforcement *against conduct like that alleged in the FAC*, Johnson fails to show a genuine threat of prosecution conferring standing under the law of this Circuit. *Nw. Sch. of Safety v. Ferguson*, 699 F. App'x 707, 709 (9th Cir. 2017).

### B. THE OPPOSITION DOES NOT REFUTE THAT JOHNSON MUST SATISFY THE *MONELL* STANDARDS AND DOES NOT DO SO

#### 1. A Plaintiff Suing Individual Defendants in Their Official Capacity Under *Ex Parte Young* Must Satisfy *Monell* Standards

The Opposition contends that a community college district is an arm of the state and that when its officials are sued under *Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (holding Eleventh Amendment does not bar official capacity suits for prospective relief), the plaintiff need not satisfy the *Monell* standards set out for government agency liability. In support, the Opposition relies on *Monell*'s footnote 54, which states: "Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes." *Monell*, 436 U.S. at 691 n.54. But the footnote means only that the *Monell* Court did not intend that its holding (rendering municipalities liable under Section 1983) would override Eleventh

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Amendment immunity for State entities so as to make them liable. Once the Eleventh Amendment immunity is gone or bypassed, as it is for officials sued under *Ex Parte Young*, then *Monell* requirements must necessarily apply for the agency in question to be liable. Otherwise those state agencies would have the type of respondent superior liability under Section 1983 that *Monell* found Congress did not intend. *See Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 30–31 (2010) (plaintiffs suing officers of agency in their official capacities for prospective injunctive relief must satisfy *Monell* standards, regardless of the form of the relief sought). Indeed, Courts have applied the *Monell* requirements in the context of *Ex Parte Young*. *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1113 (N.D. Cal. 2015) ("Defendants' argument that in this official-capacity action against state officials for injunctive relief, CDCR "policy or custom" must have played a part in the violations is well taken."); *Taylor v. Tennessee*, 2020 WL 89698, at *2-3 (W.D. Tenn. Jan. 7, 2020); *FTR Int'l, Inc. v. Bd. of Trustees of the Los Angeles Cmty. Coll. Dist*., 2015 WL 1577128, at *7 (Cal. Ct. App. Apr. 7, 2015) (unpublished) (dictum); *see also Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (holding without mentioning *Ex Parte Young* that Idaho Department of Corrections administrators sued for injunctive relief were "liable in their official capacities only if policy or custom played a part in the violation of federal law."); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("Thus, implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State.").[4]

### 2. <u>The FAC Claims Fail Under *Monell* for Lack of Required Pleading</u>

The Opposition does not dispute that *Monell* requires a plaintiff to show "that the individual who committed [or ratified] the constitutional tort was an official with 'final policy-making authority'" *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992), or that an

[4] Courts in this Circuit have required community college districts to satisfy *Monell* standards. In *Wilson v. Maricopa Cmty. Coll. Dist.*, 699 F. App'x 771 (9th Cir. 2017), the Ninth Circuit affirmed the district court's grant of summary judgment on the plaintiff's Section 1981 claim because there was no triable issue "as to whether her constitutional rights were violated as a result of an official policy, practice, or custom of the Maricopa Community College District." *Id.* at 772. In *Newman v. San Joaquin Delta Community College District*, 814 F. Supp. 2d 967, 978 (E.D. Cal. 2011), the court denied summary judgment to the defendant college on a *Monell* claim for failure to train officers, in part because there was no stated policy. *Id.* at 978.

official policy, custom or practice that was the "moving force" behind the constitutional violation. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008). The Opposition, in discussing *Monell*, does not point to any final decision maker or to any policy, custom, or practice alleged in the FAC. (Opp. at pp. 18:1-19:24.) This is not just a formality. Johnson has failed to plead the District Defendants made any decision at all as to the DEIA regulations, and failed to plead any policy, custom, or practice as to the regulations either. There can be no Section 1983 liability under these circumstances. The Opposition points to no cognizable harm arising from Board Policy 3050 or the Education Code either, so dismissal of the FAC is warranted.

**3. Counts IV-V Fail Because the District Defendants Cannot be Liable Under Section 1983 for Following Mandatory State Law**

Johnson claims that even if *Monell* standards applied, the District Defendants would still be subject to injunctive relief under Section 1983 because they retain discretion as to the local DEIA policies. (Opp. at p. 19:21-24.) Johnson draws the District Defendants' discretion too narrowly. Unlike other government entities, California community college districts possess "only such autonomy as the Legislature has seen fit to bestow." *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982) (quoting *Slivkoff v. Bd. of Trs.*, 69 Cal. App. 3d 394, 401 (1977)). KCCD "shall adopt" policies for faculty evaluations that include "proficiency in the locally-developed DEIA competencies." (ECF No. 8-3 [FAC Ex. B, p. 5].) KCCD lacks the discretion to refuse to adopt or enforce these policies, regardless of the final form of the DEIA competencies, and thus cannot be held liable for them under Section 1983. *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 517 (9th Cir. 2018); *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998) ("When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury."). KCCD is not the "moving force" behind Johnson's alleged deprivation of rights, and the Opposition does not effectively refute this.

**C. COUNTS IV-V CANNOT PROCEED IN THE ABSENCE OF THE BOARD OF GOVERNORS**

Johnson claims the state community college system's Board of Governors is irrelevant

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

because the Board "may have enacted the DEIA regulations, [but] they do not enforce them against Johnson." (Opp. at p. 20:3-4.) Johnson's reliance on *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010), is misplaced. In *Wolfson,* the Court addressed the question of redressability in the context of Wolfson's standing to challenge the Code of Judicial Conduct adopted by the Arizona Supreme Court. The defendants in that case claimed they could not provide Wolfson relief because they had "no legal authority to change the Code." *Id.* at 1056. The Court held that for the redressability requirement of standing, a plaintiff must show that it is likely, although not certain, his injury can be redressed by a favorable decision. *Id.* at 1057.

Johnson's reliance on *Wolfson* is misplaced because the case addresses standing (the redressability element in particular), and not whether an entity must necessarily be joined in an action. The District Defendants' position is that, by virtue of this Court granting the requested preliminary injunction blocking them from applying the new DEIA regulations, the "essential nature and effect" of the relief sought would be against the Board of Governors, so that they must be brought into the action. *Shermoen v. United States*, 982 F.2d 1312, 1320 (9th Cir. 1992). Indeed, the District Defendants would suffer harm from an injunction in their absence, because the District Defendants have an independent legal obligation to adhere to the Board of Governor's regulations. Cal. Ed. Code §§ 70901, 70902, 71024.

## III. <u>CONCLUSION</u>

The District Defendants respectfully request that this Court dismiss Plaintiff's First Amended Complaint without leave to amend.

Dated: September 22, 2023

Respectfully submitted,

LIEBERT CASSIDY WHITMORE

By: */s/ David A. Urban*
Jesse J. Maddox
David A. Urban
Olga Y. Bryan
Morgan Johnson
Attorneys for Defendants STEVE WATKIN, et al.