1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  ANYA M. BINSACCA, State Bar No. 189613
   Supervising Deputy Attorney General
3  JAY C. RUSSELL, State Bar No. 122626
   JANE E. REILLEY, State Bar No. 314766
4  Deputy Attorneys General
    455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
    Telephone:  (415) 510-3617
6    Fax:  (415) 703-5480
    E-mail:  Jay.Russell@doj.ca.gov
7  *Attorneys for Sonya Christian, in her official*
   *capacity as Chancellor of the California Community*
8  *Colleges*

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11                      FRESNO DIVISION

12

13 | **DAYMON JOHNSON,** | 1:23-cv-00848-ADA-CDB |

14 |                Plaintiff, |

15 |        v. | **DEFENDANT SONYA CHRISTIAN'S** |

16 |          | **MEMORANDUM OF POINTS AND** |
            | **AUTHORITIES IN SUPPORT OF** |

17 | **STEVE WATKIN, et al.,** | **MOTION TO DISMISS PLAINTIFF'S** |
                             | **FIRST AMENDED COMPLAINT** |

18 |                Defendants. |
            Date:        November 13. 2023

19          Time:        1:30 p.m.
            Dept:        1

20          Judge:       The Honorable Ana I. de Alba
            Trial Date:  Not Scheduled

21          Action Filed: June 1, 2023

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................. 1

Background .................................................................................................................... 2

      A.    California Community Colleges ................................................................ 2

      B.    The Challenged Regulations ................................................................... 4

      C.    The Implementation Guidelines .............................................................. 5

      D.    Plaintiff's Allegations ............................................................................. 6

Standard Of Review ..................................................................................................... 7

Argument ...................................................................................................................... 8

  I.      Johnson Lacks Standing to Bring His Claims Against Chancellor Christian. ........ 8

      A.    The Challenged Regulations Apply to California's Community College Districts, Rather than Johnson. .................................................... 9

      B.    Plaintiff Does Not Face an "Imminent Risk" of Harm Under the Regulations. .......................................................................................... 10

  II.     Plaintiff Fails to State a Claim for Relief Against Chancellor Christian. .............. 13

      A.    The Board Is Entitled to Express Its Ideals Regarding Diversity, Equity, Inclusion, and Accessibility, and the Challenged Regulations Serve This Purpose. ............................................................ 13

      B.    The First Amended Complaint Fails to Allege That Defendant Christian  Has or Will Discriminate Against Johnson Based on His Viewpoint. ............................................................................................. 15

      C.    Johnson Fails to Allege a Plausible Claim That Chancellor Christian Has or Will Compel Johnson to Engage in Any Particular Speech. ................................................................................................... 16

Conclusion .................................................................................................................. 17

i

Mem. P. & A. Supp. Def. Christian's Mot. to Dismiss Pl.'s First Am. Compl. (1:23-cv-00848-ADA-CDB)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................................. 7

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*
459 U.S. 519 (1983) ................................................................................................. 8

*Babbitt v. United Farm Workers Nat'l Union*
442 U.S. 289 (1979) ............................................................................................... 11

*Bair v. Shippensburg Univ.*
280 F. Supp. 2d 357 (M.D. Pa. 2003) ................................................................... 14

*Barke v. Banks*
25 F.4th 714 (9th Cir. 2022) ............................................................................ 9, 10

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ................................................................................................. 7

*Chapman v. Pier 1 Imports (U.S.) Inc.*
631 F.3d 939 (9th Cir. 2011) .................................................................................. 7

*Clark v. Cmty. for Creative Non-Violence*
468 U.S. 288 (1984) ............................................................................................... 13

*Cousins v. Lockyer*
568 F.3d 1063 (9th Cir. 2009) .......................................................................... 7, 16

*Dahlia v. Rodriguez*
735 F.3d 1060 (9th Cir. 2013) .............................................................................. 15

*DaimlerChrystler Corp. v. Cuno*
547 U.S. 332 (2008) ................................................................................................. 7

*Downs v. Los Angeles Unified Sch. Dist.*
228 F.3d 1003 (9th Cir. 2000) .............................................................................. 14

*Eng v. Cooley*
552 F.3d 1062 (9th Cir. 2009) .............................................................................. 15

*First Interstate Bank of California v. State of California*
197 Cal. App. 3d 627 (1987) .......................................................................... 11, 12

ii

1

## **TABLE OF AUTHORITIES**
### (continued)

2

**Page**

3

*In re Zappos.com, Inc.*
    888 F.3d 1020 (9th Cir. 2018) ........................................................................... 11

4

*Italian Colors Rest. v. Becerra*
    878 F.3d 1165 (9th Cir. 2018) ............................................................................. 8

5

6

*Johnson v. Riverside Healthcare System, LP*
    534 F.3d 1116 (9th Cir. 2008) ............................................................................. 7

7

8

*Johnson v. San Diego Unified Sch. Dist.*
    217 Cal. App. 3d 692 (1990) ............................................................................. 12

9

*Leonard v. Clark*
    12 F.3d 885 (9th Cir. 1993) ................................................................................. 9

10

11

*Lopez v. Candaele*
    630 F.3d 775 (9th Cir. 2010) ............................................................................ 8, 9

12

13

*Maya v. Centex Corp.*
    658 F.3d 1060 (9th Cir. 2011) ............................................................................. 7

14

*Moss v. U.S. Secret Service*
    572 F.3d 962 (9th Cir. 2018) ....................................................................8, 15, 16

15

16

*Rosenberger v. Rector & Visitors of the Univ. of Virginia*
    515 U.S. 819 (1995) .......................................................................................... 13

17

18

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*
    547 U.S. 47 (2006) ...................................................................................... 16, 17

19

*Texas v. Johnson*
    491 U.S. 397 (1989) .......................................................................................... 13

20

21

*Thomas v. Anchorage Equal Rts. Comm'n*
    220 F.3d 1134 (9th Cir. 2000) ..................................................................... 10, 11

22

23

*TransUnion LLC v. Ramirez*
    —— U.S. ——, 141 S. Ct. 2190 (2021) ............................................................... 8

24

25

*Unified Data Servs., LLC v. Fed. Trade Comm'n*
    39 F.4th 1200 (9th Cir. 2022) ............................................................................. 8

26

*Younger v. Harris*
    401 U.S. 37 (1971) ............................................................................................. 9

27

28

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

United States Code, Title 42 § 1983 .................................................................... 13

California Education Code
    §§ 66250 et seq. .......................................................................................... 2
    § 66251 ....................................................................................................... 2
    § 66261.5 .................................................................................................... 2
    § 66270 ....................................................................................................... 4
    § 70900 ....................................................................................................... 2
    § 70901(a) .............................................................................................. 4, 10
    § 70901(b)(1)(B) ....................................................................................... 12
    § 70902 ..................................................................................................... 11
    § 70902(a)(1) .............................................................................................. 3
    § 70902(b)(4) ......................................................................................... 4, 11
    §§ 71090-71906 ......................................................................................... 3
    § 71090(b) .................................................................................................. 3
    § 72000(a) ................................................................................................. 11
    § 87732 ....................................................................................................... 6
    § 87735 ....................................................................................................... 6

California Government Code § 3550 ...................................................................... 9

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    First Amendment ................................................................................. *passim*

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 12(b)(1) ....................................................................................... 2, 7, 8
    Rule 12(b)(6) ........................................................................................ *passim*

**OTHER AUTHORITIES**

Cal. Cmty. Colls., *Procedures and Standing Orders of the Board of Governors*
    (Dec. 2022) ch. 2, § 200, https://www.cccco.edu/-/media/CCCCO-
    Website/docs/procedures-standing-orders/december-2022-procedures-
    standing-ordersv2-
    a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D
    6 ......................................................................................................... 5, 10

iv

Mem. P. & A. Supp. Def. Christian's Mot. to Dismiss Pl.'s First Am. Compl. (1:23-cv-00848-ADA-CDB)

**TABLE OF AUTHORITIES**
(continued)

**Page**

Cal. Cmty. Colls., *Strengthening Our Vision*, https://www.cccco.edu/-
/media/CCCCO-Website/Files/Communications/101920-ccc-vision-onepager-
accessible-final.pdf (last visited Oct. 3, 2023) ........................................................... 3

Cal. Cmty. Colls., *Students*, https://www.cccco.edu/Students (last visited Oct. 3,
2023) ...................................................................................................................... 2

California Code of Regulations, Title 5
§ 51200.................................................................................................... *passim*
§ 51201.................................................................................................... *passim*
§ 52510(l) ..................................................................................................... 5, 12
§ 53000............................................................................................................... 3
§ 53425............................................................................................... 5, 7, 15
§ 53601.................................................................................................... *passim*
§ 53602..................................................................................... 5, 7, 11, 15
§ 53603............................................................................................................. 15
§ 53605.......................................................................................................... 5, 7

Resolution of the Board of Governors No. 2017-01 (January 17, 2017),
*https://tinyurl.com/yc8bw6z9* (last visited Oct. 3, 2023) .................................. 2

**INTRODUCTION**

The California Community Colleges Board of Governors has adopted regulations that require community college districts to include in their evaluation policies consideration of faculty proficiency in principles of diversity, equity, inclusion, and accessibility.  The regulations are not disciplinary in nature, and accordingly include no employee-discipline elements.  The regulations advance Board policy favoring the diffusion of knowledge, and the application of diversity, equity, inclusion, and accessibility principles on California community college campuses—fully consistent with law, and the authority of the Board to set and advance its policy perspectives.  The regulations support the professional development of faculty who teach in the largest and most diverse system of higher education in the nation, help create truly inclusive campus environments, and reduce the administrative burden of incidents of campus social conflict.  The regulations do not require any form of ideological adherence, nor do they restrict or compel any person's speech.

Plaintiff Daymon Johnson, an employee of the Kern Community College District, challenges the constitutionality of the Board's diversity, equity, inclusion, and accessibility regulations, claiming that the regulations subject him to viewpoint discrimination and compelled speech.  However, Johnson has failed to meet his burden of establishing his standing to assert these claims, and his First Amended Complaint does not allege a plausible claim for relief under any theory.

Johnson has not—and cannot—plead the factual allegations necessary to show that the regulations in any way impose an immediate threat of harm to him or have directly impaired his ability to express himself freely.  Nor is there any showing that the regulations authorize Defendant Sonya Christian, the California Community Colleges Chancellor, to undertake any discriminatory action against Johnson based on his viewpoints regarding diversity, equity, inclusion, and accessibility.  And the First Amended Complaint lacks the factual allegations required to state a cognizable claim that the regulations compel Johnson to accommodate any particular message in his own speech.

1

1  For these reasons, Chancellor Christian respectfully requests that this Court dismiss

2  Johnson's First Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and

3  12(b)(6).

4  **BACKGROUND**

5  **A.    California Community Colleges**

6  The California Community Colleges is the largest postsecondary system of higher

7  education in the United States, with more than 1.9 million students attending one of 116 college

8  campuses annually.  Cal. Cmty. Colls., *Students*, https://www.ccccu.edu/Students (last visited

9  Oct. 3, 2023).  With low tuition and a longstanding policy of full and open access, California's

10  community colleges were established under the principle that higher education should be

11  available to everyone.  *See id.*, *About Us,* https://www.ccccu.edu/About-Us/Key-Facts (last

12  visited Oct. 3, 2023).  As "the backbone of higher education in the state and the leading provider

13  of career and workforce training in the country," the community colleges are the most common

14  entry point into collegiate degree programs in California; the primary system for delivering career

15  technical education and workforce training; a major provider of adult education, apprenticeship,

16  and English as a Second Language courses; and a source of lifelong learning opportunities for

17  California's diverse communities.  *Id.*  The California Equity in Higher Education Act (Cal. Educ.

18  Code §§ 66250 et seq.) establishes California's policy of affording all persons equal rights and

19  opportunities in postsecondary educational institutions, including the California Community

20  Colleges.  *Id.* §§ 66251, 66261.5.

21  The Board of Governors of the California Community Colleges (the Board) sets policy and

22  provides guidance for the 73 districts that constitute the postsecondary education system of

23  community colleges.  Cal. Educ. Code § 70900.  The Legislature has granted the Board authority

24  to develop and implement standards for classes, student academic requirements, and employment

25  of academic and administrative staff.  *Id.* §§ 70900; 70901(b).  The Board's strategic mission

26  states that "[a]ll people have the opportunity to reach their full educational potential . . . .  The

27  Colleges embrace diversity in all its forms . . . .  All people have the right to access quality higher

28  education."  Resolution of the Board of Governors No. 2017-01 (January 17,

2

1    2017), *https://tinyurl.com/yc8bw6z9* (last visited Oct. 3, 2023).  In that regard, the California

2    Community Colleges seeks to be a "force for breaking down systemic inequities that block too

3    many students from attaining the career and life they want."  Cal. Cmty. Colls., *Strengthening*

4    *Our Vision*, https://www.cccco.edu/-/media/CCCCO-Website/Files/Communications/101920-ccc-

5    vision-onepager-accessible-final.pdf (last visited Oct. 3, 2023).

6         Under its authority from the Legislature, and consistent with its role of providing

7    "leadership and direction" to the California Community Colleges, the Board has promulgated

8    regulations to implement "aspects of state and federal anti-discrimination laws intended to

9    prevent unlawful discrimination in employment."  Cal. Code Regs. tit. 5, § 53000.  The

10   regulations "provide[] direction to community college districts related to the incorporation of

11   evidence-based and equity-minded practices into existing recruitment, hiring, retention, and

12   promotion activities to promote equal employment opportunities."  *Id.*  As part of providing that

13   direction, and furthering its "goal of ensuring the equal educational opportunity of all students,

14   the California Community Colleges embrace diversity among students, faculty, staff and the

15   communities we serve as an integral part of our history, a recognition of the complexity of our

16   present state, and a call to action for a better future."  *Id.* § 51201(a).  This goal is intended to

17   "guide the administration of all programs in the California Community Colleges, consistent with

18   all applicable state and federal laws and regulations."  *Id.* § 51200.

19        The Board appoints a chief executive officer—the Chancellor—who exercises the duties

20   and responsibilities delegated to her by the Board.  Cal. Educ. Code § 71090(b).  Defendant

21   Sonya Christian has served as Chancellor since June 2023.  The Chancellor's Office is

22   responsible for carrying out the policies of the Board, including the development of fiscal plans, a

23   legislative agenda, a budget for the community college system, and the execution of grants to

24   community college districts to carry out statewide programs in furtherance of the Board's

25   policies.  *See, generally, id.* §§ 71090-71906.  But neither the Chancellor nor the Board has any

26   role in hiring, disciplining, or terminating district staff, or in establishing "employment practices"

27   for community college professors.  *Id.* § 70902(a)(1) ("Every community college district shall be

28   under the control of a board of trustees," and this "governing board of each community college

3

1  district" shall "maintain, operate, and govern" community colleges under their jurisdiction.); *see*

2  *also id.* §70902(b)(4) (local districts shall "[e]stablish employment practices, salaries, and

3  benefits for all employees not inconsistent with the laws of this state.").

4      Neither the Board nor the Chancellor has the authority to administer local community

5  college campuses; that authority lies with the community college districts governed by locally

6  elected boards of trustees.  Specifically, the Board's primary purpose is to provide "leadership

7  and direction" while maintaining, "to the maximum degree permissible, local authority and

8  control in the administration" of local community colleges by their districts.  Cal. Educ. Code §

9  70901(a).  Consistent with that "local authority and control," community college districts are

10  responsible for "employ[ing] and assign[ing] all personnel not inconsistent with the minimum

11  standards adopted by the board of governors and establish[ing] employment practices, salaries

12  and benefits for all employees not inconsistent with the laws of this state." *Id.* § 70902(b)(4).

13      **B.**    **The Challenged Regulations**

14      The California Education Code provides that "[n]o person shall be subjected to

15  discrimination on the basis of disability, gender, gender identity, gender expression, nationality,

16  race or ethnicity, religion, sexual orientation, or any [other constitutionally protected]

17  characteristic" in California's community colleges.  Cal. Educ. Code § 66270.  Consistent with

18  this law, in 2020 the Board of Governors of the California Community Colleges adopted

19  regulations expressing "their commitment to diversity and equity in fulfilling the [community

20  college] system's educational mission," and that this commitment "should guide the

21  administration of all programs in the California Community Colleges, consistent with all

22  applicable state and federal laws and regulations."  Cal. Code Regs. tit. 5, § 51200.  In doing so,

23  the Board's goal was "ensuring the equal educational opportunity of all students." *Id.* § 51201.

24  The California Community Colleges declared that they "embrace diversity among students,

25  faculty, staff and the communities we serve as an integral part of our history, a recognition of the

26  complexity of our present state, and a call to action for a better future." *Id.*

27      In April of 2023, the Board adopted additional regulations that direct the State's community

28  college districts to create their own evaluation policies and practices that reflect these ideals and

4

1   principles regarding diversity, equity, inclusion, and accessibility.  Cal. Code Regs. tit. 5, §§

2   53425, 53601, 53602, and 53605.  Notably, the term "evaluation"—as defined in the Code of

3   Regulations and used in the challenged regulations—is not a disciplinary action, but rather is "a

4   tool to provide and receive constructive feedback to promote professional growth and

5   development." *Id.,* § 52510(l).  Similarly, "tenure reviews" are non-disciplinary "evaluations [of]

6   demonstrated, or progress toward, proficiency in the locally-developed DEIA competencies." *Id.*,

7   § 53602(a) ("District governing boards shall adopt policies for the evaluation of employee

8   performance, including tenure reviews . . .").  As of the time this motion is filed, Kern

9   Community College District (which employs Johnson) has not yet issued its own evaluation

10  policy pursuant to these regulations.

11       By their plain language, none of the challenged regulations apply directly to individual

12  community college employees, including Johnson.  *See* Cal. Code Regs. tit. 5, §§ 51200, 51201,

13  53425, 53601, 53602, and 53605.  Nothing in the regulations restricts any individual's speech or

14  compels any person to engage in any particular speech.  *Id.*  And the regulations do not include

15  any enforcement mechanism by which any individual can be disciplined by Chancellor Christian

16  or the Board for expressing any particular viewpoint—even a viewpoint that is contrary to the

17  ideals set forth in the regulations.  *Id.*

18       **C.    The Implementation Guidelines**

19       Separate and apart from the challenged regulations, the Chancellor's Office published

20  advisory documents to provide guidance to the districts as they create their own diversity, equity,

21  inclusion, and accessibility policies, including a memorandum entitled "Diversity, Equity and

22  Inclusion Competencies and Criteria Recommendations" (*see* First Am. Compl. Ex. A, ECF No.

23  8-2) and a memorandum entitled "Guidance on Implementation of DEIA Evaluation and Tenure

24  Review Regulations" (*id*. Ex. B, ECF No. 8-3).

25       These implementation guidelines are not regulations adopted through the formal regulatory

26  process and thus are not binding on the districts.[1]  And the challenged regulations do not mandate

27       [1] *See* Cal. Cmty. Colls., *Procedures and Standing Orders of the Board of Governors* (Dec.
    2022) ch. 2, § 200, https://www.cccco.edu/-/media/CCCCO-Website/docs/procedures-standing-

28

1   that the districts incorporate any (much less all) of the specific language contained in the

2   implementation guidelines into their own local policies.  Instead, the regulations state only that

3   the "DEIA competencies and criteria identified by the Chancellor shall be used *as a reference* for

4   locally developed minimum standards in community college district performance evaluations of

5   employees and faculty tenure reviews."  Cal. Code Regs. tit. 5, § 53601 (emphasis added).

6        The plain language of the implementation guidelines reinforces that their purpose is to

7   provide recommendations and assistance—rather than mandates—to the districts as they create

8   their diversity, equity, inclusion, and accessibility policies.  (*Id*. Ex. A ("[T]his sample set of

9   criteria is not exhaustive nor truly 'final'. . . .  [T]his sample is a starting point, and is meant to

10  serve as a reference for districts/colleges as they engage in their own local process to develop and

11  adopt a personalized set of DEIA competencies and criteria…"); *id*. Ex. B ("The purpose of this

12  memorandum is to provide information regarding the evaluation and tenure review of district

13  employees and the resources that are available to support districts and colleges with local

14  implementation of these regulations.").  Because the implementation guidelines are merely

15  advisory and do not bind either the community college districts or individual community college

16  employees (including Johnson), they cannot infringe Johnson's First Amendment rights, and thus

17  cannot serve as a factual basis for Johnson's claims against Chancellor Christian.

18        **D.   Plaintiff's Allegations**

19        In his First Amended Complaint, Johnson argues that he "fears" discipline or termination as

20  a Bakersfield Community College professor if he refuses to comply with the Kern Community

21  College District's diversity, equity, inclusion, and accessibility policy (a policy that does not yet

22  exist).  (First Am. Compl. 25-26, 33, ECF No. 8.)  Johnson asserts that the District's application

23  of California Educational Code sections 87732 and 87735 to him (which set forth the grounds for

24  termination or suspension) violates his First Amendment rights.  (ECF No. 8 at 33.)  He further

25  challenges the District's application of District Board Policy 3050, alleging that its application

26  orders/december-2022-procedures-standing-ordersv2-
    a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D6 ("Neither the
27  Board nor the Chancellor may administer or enforce any regulation, as defined by section 202,
    paragraph (d), unless that regulation is adopted in accordance with the provisions of this
28  Chapter").

1  causes him to "refrain from speaking and has altered his speech for fear of further investigation,

2  discipline, and termination." (ECF No. 8 at 35.) Finally, in his fourth and fifth causes of action

3  against all Defendants—including Chancellor Christian—Johnson raises viewpoint discrimination

4  and compelled speech challenges against California Code of Regulations, title 5, sections 51200,

5  51201, 53425, 53601, 53602, and 53605, alleging that they "impose [an] official political

6  ideology" and are "unconstitutional on their face and as applied to Professor Johnson." (ECF No.

7  8 at 36-39.)

8  **STANDARD OF REVIEW**

9      To survive a motion to dismiss, "a plaintiff must demonstrate standing for each claim he

10  seeks to press [and] 'for each form of relief' that is sought." *DaimlerChrystler Corp. v. Cuno*,

11  547 U.S. 332, 352 (2008) (quoting *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528

12  U.S. 167, 185 (2000). "[L]ack of Article III standing requires dismissal for lack of subject matter

13  jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d

14  1060, 1067-68 (9th Cir. 2011). A plaintiff must "sufficiently allege the essential elements of

15  Article III standing" (*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011))

16  and may not "rely on a bare legal conclusion to assert injury-in-fact" to satisfy this requirement

17  (*Maya*, 658 F.3d at 1068).

18      Even if a plaintiff meets his burden of establishing standing, his complaint nonetheless must

19  be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it fails to state a claim upon which

20  relief can be granted. "A Rule 12(b)(6) dismissal may be based on either a 'lack of cognizable

21  legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory." *Johnson*

22  *v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). To

23  avoid a Rule (12)(b)(6) dismissal, the complaint must plead "enough facts to state a claim that is

24  plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007). "'[C]onclusory

25  allegations of law and unwarranted inferences are insufficient' to avoid a Rule 12(b)(6)

26  dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1068-69 (9th Cir. 2009) (citations omitted); *see*

27  *also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("[T]he tenet that a court must accept a

28  complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's

7

1   elements, supported by mere conclusory statements."). Further, it is not proper for a court "to

2   assume that the [plaintiff] can prove facts that [he] has not alleged." *Associated Gen. Contractors*

3   *of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983). Thus, "for a

4   complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable

5   inferences from that content, must be plausibly suggestive of a claim entitled the plaintiff to

6   relief." *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2018).

7                                **ARGUMENT**

8   **I.    JOHNSON LACKS STANDING TO BRING HIS CLAIMS AGAINST CHANCELLOR**
        **CHRISTIAN.**
9

10        As a threshold matter, Johnson lacks standing to assert his First Amendment claims against

11   Chancellor Christian because the regulations he challenges neither apply directly to him nor

12   create any imminent risk that Chancellor Christian or the California Community Colleges will

13   harm Johnson. Accordingly, the First Amended Complaint is subject to dismissal under Federal

14   Rule of Civil Procedure 12(b)(1).

15        To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact

16   that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by

17   the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*

18   *LLC v. Ramirez*, ––– U.S. –––, 141 S. Ct. 2190, 2203 (2021). Establishing the "injury in fact"

19   element of standing is a "rigid constitutional requirement" that a plaintiff must meet "to invoke a

20   federal court's jurisdiction," even where, as in the present case, the plaintiff brings a "pre-

21   enforcement" First Amendment challenge. *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010).

22   In such pre-enforcement cases, to determine if a plaintiff faces a credible threat of enforcement—

23   and has thus suffered an "actual injury"—courts examine "1) the likelihood that the law will be

24   enforced against the plaintiff; 2) whether the plaintiff has shown, 'with some degree of concrete

25   detail,' that she intends to violate the challenged law; and 3) whether the law even applies to the

26   plaintiff." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1172 (9th Cir. 2018) (quoting *Lopez v.*

27   *Candaele*, 630 F.3d at 786). In that regard, "there must be a genuine threat of imminent

28   prosecution" to establish standing. *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th

8

1200, 1210 (9th Cir. 2022); *see also Younger v. Harris*, 401 U.S. 37, 42 (1971) ("[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.").

Johnson has not and cannot allege the requisite "clear showing" of an injury in fact and thus fails to plead Article III standing to challenge the regulations on two separate, yet related, bases: 1) the regulations do not apply directly to Johnson; and 2) Johnson has not—and cannot—show that he faces an imminent risk of any harm at the hands of Chancellor Christian or the Board as a result of the regulations.

> **A.   The Challenged Regulations Apply to California's Community College Districts, Rather than Johnson.**

The regulations at issue do not apply to Johnson directly.  Rather, they direct community college districts to consider diversity, equity, inclusion, and accessibility principles in the employment processes, as implemented through district policy and collective bargaining.  A plaintiff's "claims of future harm lack credibility when the challenged speech restriction by its terms is not applicable to the plaintiff[]." *Lopez v. Candaele*, 630 F.3d at 788; *see also Leonard v. Clark*, 12 F.3d 885, 888-89 (9th Cir. 1993); *Barke v. Banks*, 25 F.4th 714, 719-20 (9th Cir. 2022).

The Ninth Circuit's decision in *Barke* is instructive.  There, the plaintiffs—who were "elected members of local California government bodies, including city councils, school boards, and community college and special purpose districts"—challenged California Government Code section 3550.  *Barke v. Banks*, 25 F.4th at 716-17.  Section 3550 provides that "[a] public employer shall not deter or discourage public employees . . . from becoming or remaining members of an employee organization."  The plaintiffs alleged that the law violated their First Amendment rights and chilled their speech based on a fear that the California Public Employment Relations Board would "erroneously attribute" their personal statements concerning union membership to their governmental employers, "thereby causing their employers to be sanctioned and damaging [the plaintiffs'] reputations as a result." *Id.* at 717-18.  Affirming the district court's order dismissing the case, the Ninth Circuit held that because section 3550 did not apply

9

1    to the plaintiffs or "the speech Plaintiffs allege they want to engage in," they "failed to

2    demonstrate that they ha[d] suffered an injury in fact sufficient to establish their standing to

3    pursue their pre-enforcement challenge." *Id.* at 720-21.

4         Here, as in *Barke*, the regulations in question do not apply directly to Johnson.  As

5    discussed above, the California Community Colleges Board provides "leadership and direction"

6    to community college districts, while allowing those districts to maintain "to the maximum

7    degree permissible, [their] local authority and control in the administration" of institutions within

8    their district.  Cal. Educ. Code § 70901(a).  Consistent with this principle, the regulations at issue

9    operate upon community college districts, not upon individual district employees who remain

10   under the supervision of their employer-districts.[2]

11        Because the regulations do not apply directly to Johnson, any claim by Johnson that he will

12   suffer future harm as a result of the regulations fails.

13        **B.    Plaintiff Does Not Face an "Imminent Risk" of Harm Under the**
         **Regulations.**

14

15        Johnson has not and cannot plead a cognizable claim that he is likely to suffer irreparable

16   harm due to the regulations because he faces no "imminent" risk of any action by Chancellor

17   Christian for expressing his alleged viewpoints concerning diversity, equity, inclusion, and

18   accessibility, even viewpoints that are potentially in conflict with the California Community

19   Colleges' goals.  "[N]either the mere existence of a proscriptive statute nor a generalized threat of

20   prosecution satisfies the 'case or controversy' requirement."  *Thomas v. Anchorage Equal Rts.*

21   *Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).  Rather, to challenge the prospective

22   enforcement of a law or regulation, a plaintiff must show "a realistic danger of sustaining a direct

23        _____

         [2] Johnson challenges the Board's "Vision for Success," which further articulates the
24   Board's aspirations for district policies.  (ECF No. 8 at 29-30, ¶ 136, 144.)  However, only
     regulations adopted through the formal regulatory process are binding on districts.  (*See* Cal.
25   Cmty. Colls., *Procedures and Standing Orders of the Board of Governors* (Dec. 2022) ch. 2, §
     200, https://www.cccco.edu/-/media/CCCCO-Website/docs/procedures-standing-
26   orders/december-2022-procedures-standing-ordersv2-
     a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D6 ("Neither the
27   Board nor the Chancellor may administer or enforce any regulation, as defined by section 202,
     paragraph (d), unless that regulation is adopted in accordance with the provisions of this
28   Chapter")).  Similar to the regulations, Board communications like the "Vision for Success" (first
     drafted in 2017) do not apply directly to Johnson.

1   injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers*

2   *Nat'l Union*, 442 U.S. 289, 298, (1979).  A plaintiff who claims that he is threatened with future

3   injury must sufficiently plead "the threatened injury is 'certainly impending,' or there is a

4   'substantial risk that the harm will occur,'" to meet his burden of establishing standing.  *In re*

5   *Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018).  When determining whether a genuine

6   "case or controversy" exists for federal jurisdiction, the Ninth Circuit considers, among other

7   things, "whether the prosecuting authorities have communicated a specific warning or threat to

8   initiate proceedings." *Thomas*, 220 F.3d at 1139 (dismissing First Amendment claims where "the

9   record [was] devoid of any threat [of enforcement]—generalized or specific—directed against

10   [the plaintiffs]").

11          Here, as in *Thomas*, the First Amended Complaint is "devoid of any threat" directed against

12   Johnson by Chancellor Christian or the Board under the challenged regulations.  Chancellor

13   Christian is not a prosecuting authority.  The State's community college districts are legally

14   distinct entities from both the State and Board.  Community college districts are independent local

15   government entities controlled by a locally elected board of trustees, each with the power to sue

16   and be sued.  Cal. Educ. Code § 72000(a) ("The district and its governing board may sue and be

17   sued, and shall act in accordance with Section 70902.").  Education Code section 70902

18   enumerates the authorities and duties of local districts and their governing board of trustees, and

19   specifically requires that "the governing board of *each community college district shall . . .*

20   *employ* and assign all personnel not inconsistent with the minimum standards adopted by the

21   board of governors and establish employment practices, salaries and benefits for all employees

22   not inconsistent with the laws of this state." *Id.* § 70902(b)(4) (emphasis added).  And it is each

23   district that is responsible for "adopt[ing] policies for the evaluation of employee performance,

24   including tenure reviews, that requires demonstrated, or progress toward, proficiency in the

25   locally-developed [diversity, equity, inclusion, and accessibility] competencies or those published

26   by the Chancellor pursuant to section 53601." Cal. Code Regs. tit. 5, § 53602.

27          The distinct roles and different duties of the Board and local districts were examined in

28   *First Interstate Bank of California v. State of California,* 197 Cal. App. 3d 627 (1987).  There,

11

First Interstate Bank attempted to hold the State and the Board of Governors responsible when a community college district failed to make lease payments in connection with a lease-purchase agreement.  First Interstate contended that the construction and maintenance of school buildings is a sovereign and nondelegable duty of the Board, and that the district was acting merely in an agency capacity on the project.

The California Court of Appeal held that the district was a separate entity, and neither the State nor the Board could be held liable for any acts undertaken by a community college district, the community college, or the college's employees.  *First Interstate Bank,* 197 Cal. App. 3d at 633.  The court further noted that neither the state Constitution nor any statute provides that a district can undertake any action at the State or Board's behest.  "[T]he fact that a state agency is created by statute to discharge a duty constitutionally imposed on the state does not transmute the agency into 'the state,' nor render the state liable for its acts under a general theory of respondeat superior."  *Id.*  Recognizing that "liability is fixed on the public entity whose employee causes the injury," the court found the State and the Board were not liable.  *Id.*, at 634; *see also Johnson v. San Diego Unified Sch. Dist.*, 217 Cal. App. 3d 692, 699 (1990) [confirming the "separate distinct character of the school district as distinguished from the state educational entities"].)

Neither the Board nor Chancellor Christian employs, evaluates, promotes, or disciplines district staff or college professors, including Johnson.  Instead, the Board merely sets minimum hiring standards for personnel hired by each district. Cal. Educ. Code § 70901(b)(1)(B).  All decisions regarding employee hiring, employment practices, performance evaluation, and potential termination are the responsibility of the district.  *Id.*  Thus, Chancellor Christian cannot and will not take any action against Johnson concerning his speech.  Moreover, the regulations do not direct the district to take any disciplinary action against Johnson, under any circumstances; instead, they instruct the districts to perform "evaluations" of Johnson, which have no disciplinary element and are "tool[s] to provide and receive constructive feedback to promote professional growth and development."  Cal. Code Regs. tit. 5, § 52510(l).  Thus, Johnson faces no "imminent threat" of action by Chancellor Christian, nor does he face any "actual injury" resulting from the

12

regulations.  Because Johnson's allegations lack this essential element of Article III standing, his

First Amended Complaint against Chancellor Christian should be dismissed.

## II.    PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF AGAINST CHANCELLOR CHRISTIAN.

Johnson's First Amended Complaint further fails to state a plausible claim for relief against

Chancellor Christian, and thus should be dismissed pursuant to Federal Rule of Civil Procedure

12(b)(6).  A challenged statute implicates the First Amendment only if it regulates speech or

expressive conduct, which is conduct undertaken with an "'intent to convey a particularized

message'" when the "'likelihood was great that the message would be understood by those who

viewed it.'"  *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (citation omitted).  When challenging

alleged "impingements on First Amendment interests," it is plaintiff's burden to "demonstrate

that the First Amendment even applies."  *Clark v. Cmty. for Creative Non-Violence*, 468 U.S.

288, 293 n.5 (1984).

Johnson raises two First Amendment claims under 42 U.S.C. § 1983 against Chancellor

Christian, for viewpoint discrimination and compelled speech.  (First Am. Compl., ECF No. 8, ¶¶

178-185.)  As set forth below, the First Amended Complaint does not state a viable cause of

action against Chancellor Christian under either theory.

### A.    The Board Is Entitled to Express Its Ideals Regarding Diversity, Equity, Inclusion, and Accessibility, and the Challenged Regulations Serve This Purpose.

First, Johnson has failed to meet his burden of demonstrating that the challenged

regulations implicate his First Amendment rights.  By their plain language, the regulations do not

restrict the free speech or expressive conduct of any employee in their individual capacity,

including Johnson.  Rather, the regulations set forth the Board's policy objective that district

evaluation policies and practices reflect its ideals and principles regarding diversity, equity,

inclusion, and accessibility.

The California Community Colleges Board is entitled to express its ideals and principles

concerning diversity, equity, inclusion, and accessibility, particularly when that expression does

not regulate another person's speech.  *Rosenberger v. Rector & Visitors of the Univ. of Virginia,*

13

1  515 U.S. 819, 828, 833 (1995) (although "the government may not regulate speech based on its

2  substantive content . . . when the State is the speaker, it may make content-based choices"); *see*

3  *also Downs v. Los Angeles Unified Sch. Dist.,* 228 F.3d 1003, 1013 (9th Cir. 2000).  In *Downs,*

4  the school district issued "policies and practices" that supported "Educating for Diversity," and

5  provided posters and materials supporting Gay and Lesbian Awareness Month to be posted on

6  school bulletin boards.  *Downs,* 228 F.3d at 1005-06.  The district court rejected the plaintiff

7  teacher's claim that the district violated his First Amendment rights when it refused to allow him

8  to post contrary messages on the bulletin boards.  *Id.* at 1008.  In affirming that ruling, the Ninth

9  Circuit held that governmental entities "may decide not only to talk about gay and lesbian

10  awareness and tolerance in general, but also to advocate such tolerance if it so decides."  *Id.* at

11  1014, citing *Rust v. Sullivan,* 500 U.S. 173, 194 (1991).

12       *Bair v. Shippensburg Univ.,* 280 F. Supp. 2d 357 (M.D. Pa. 2003), further illustrates the

13  California Community Colleges' right to express guiding principles concerning diversity and

14  equity.  In *Bair,* university students sought to preliminarily enjoin enforcement of the following

15  policies, on the ground that they violated the students' First Amendment rights: (1) a portion of

16  the Preamble to the University Catalog which stated that "[t]he university will strive to protect

17  [the freedoms necessary for the pursuit of truth and knowledge] if they are not inflammatory or

18  harmful towards others," and (2) a portion of the University's Racism and Cultural Diversity

19  Statement which provided, "[i]t is the unequivocal position of Shippensburg University to

20  prohibit racism/ethnic intimidation and harassment; and to affirm cultural diversity, social justice

21  and equality."  *Id.* at 362-363.  The *Bair* court denied the students' motion for preliminary

22  injunction as to both of these policies on the ground that neither policy implicated First

23  Amendment concerns, as "the cited language seeks to advise the student body of the University's

24  ideals and is therefore aspirational rather than restrictive." *Id.* at 370-371.

25       As in *Bair,* the challenged regulations do not implicate Johnson's First Amendment rights.

26  Taken together, the regulations affirm the Board's "official position" to "embrace diversity

27  among students, faculty, staff and the communities we serve" (Cal. Code Regs. tit. 5, §§ 51200

28  and 51201), and direct the State's community college districts to create their own employment

14

Mem. P. & A. Supp. Def. Christian's Mot. to Dismiss Pl.'s First Am. Compl. (1:23-cv-00848-ADA-CDB)

1  policies consistent with this goal.  *Id.* §§ 53425, 53601, 53602, and 53603.  Critically, none of the

2  challenged regulations includes any enforcement mechanism by which the Board or the

3  chancellor can punish any employee of a community college district (including Johnson) for

4  engaging in speech contrary to the ideals set forth in the regulations; instead, as discussed above,

5  the regulations require "evaluations," which are non-punitive, educational tools aimed at

6  promoting professional growth and development.  *Id.,* § 53602(a).  This lack of enforcement

7  mechanism further bolsters the conclusion that the regulations are an expression of the Board's

8  own principles, rather than devices by which the Board or the Chancellor can or will restrict

9  Johnson's individual speech.

10      To maintain his action, Johnson is required to show that his expression of allegedly

11  protected speech will be a substantial or motivating factor in an adverse employment action.  *Eng*

12  *v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) ("[T]he plaintiff bears the burden of showing the

13  state took adverse employment action . . . [and that the] speech was a substantial or motivating

14  factor in the adverse action.") (internal quotation marks omitted).  Because the regulations do not

15  proscribe speech or expressive conduct, Johnson's First Amendment claims against Chancellor

16  Christian necessarily fail.  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc)

17  ("[F]ailure to meet any one of [the *Eng* factors] is fatal to the plaintiff's case.").

18      Because Johnson cannot establish that his First Amendment rights are or will be infringed

19  by the Board's regulations, he cannot plead a cognizable First Amendment claim against

20  Chancellor Christian.

21      **B.    The First Amended Complaint Fails to Allege That Defendant Christian
22             Has or Will Discriminate Against Johnson Based on His Viewpoint.**

23      Johnson also has not—and cannot—set forth sufficient factual allegations to support his

24  claim of viewpoint discrimination against Chancellor Christian.  "'Viewpoint discrimination'

25  occurs when the government prohibits 'speech by particular speakers,' thereby suppressing a

26  particular view about a subject."  *Moss v. U.S. Secret Service,* 572 F.3d 962, 970 (9th Cir. 2009)

27  (citations omitted).  Thus, to state a viewpoint discrimination claim, a complaint must plausibly

28

15

Mem. P. & A. Supp. Def. Christian's Mot. to Dismiss Pl.'s First Am. Compl. (1:23-cv-00848-ADA-CDB)

1  allege that the government took action to suppress the plaintiff's speech "*because of* not merely in

2  spite of" the plaintiff's message.  *Id.* (emphasis in original).

3       The First Amended Complaint is devoid of any factual allegations that Chancellor Christian

4  or the Board has taken any action to suppress Johnson's speech, much less action that was

5  motivated by Johnson's viewpoint.  Nor can Johnson present any such factual allegations,

6  because—as discussed above—the challenged regulations do not apply directly to Johnson, do

7  not regulate Johnson's speech or expressive activity, and do not contain any mechanism by which

8  Chancellor Christian or the Board may take any adverse action against Johnson if he expresses his

9  viewpoints on diversity, equity, inclusion, and accessibility.  Instead of alleging facts to support

10  his viewpoint discrimination claim, Johnson impermissibly relies upon unsubstantiated assertions

11  that the regulations "impose an official political ideology on the faculty of all California

12  community colleges" and "bar faculty from expressing viewpoints that contradict the state's

13  preferred political ideology."  (First Am. Compl., ECF No. 8, ¶ 179.)  Such "conclusory

14  allegations of law and unwarranted inferences are insufficient' to avoid a Rule 12(b)(6)

15  dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1068-69 (9th Cir. 2009).

16       Because Johnson failed to plead sufficient factual support for his viewpoint discrimination

17  claim against Chancellor Christian, this claim is subject to dismissal under Rule 12(b)(6).

18     **C.    Johnson Fails to Allege a Plausible Claim That Chancellor Christian Has**
           **or Will Compel Johnson to Engage in Any Particular Speech.**
19

20       Johnson's compelled speech cause of action against Chancellor Christian fares no better.

21  To state a valid compelled speech claim, a complaint must plausibly allege that "the complaining

22  speaker's own message [is] affected by the speech [he is] forced to accommodate."  *Rumsfeld v.*

23  *Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 63 (2006).  In *Rumsfeld,* law

24  schools that opposed the military's discrimination based on sexual orientation brought a

25  compelled-speech challenge against the Solomon Amendment, a statute that required law schools

26  to allow military recruiters access to their campuses.  *Id.* at 52-53.  The Supreme Court rejected

27  the law schools' compelled speech claim, holding that "[t]he Solomon Amendment neither limits

28  what law schools may say nor requires them to say anything," and that "[l]aw schools remain free

16

1   under the statute to express whatever views they may have on the military's congressionally

2   mandated employment policy…" *Id.* at 60.

3       Here, as in *Rumsfeld*, the challenged regulations do not force Johnson to accommodate any

4   particular message in his own speech.  Rather, as explained above, the regulations express the

5   Board's own views regarding diversity, equity, inclusion, and accessibility.  The regulations do

6   not impose any requirement on Johnson to incorporate the Board's views into his own speech,

7   and Johnson "remains free" under the regulations to express his own opinions regarding diversity,

8   equity, inclusion, and accessibility.  Because the regulations "neither limit" what Johnson may

9   say nor "require him to say anything," Johnson's compelled speech claim against Chancellor

10  Christian lacks merit.

11      In an attempt to provide sufficient factual allegations in support of his compelled speech

12  claim, Johnson cites several excerpts from the "Diversity, Equity and Inclusion Competencies and

13  Criteria Recommendations."  (First Am. Compl., ECF No. 8, ¶ 181.)  However, these "factual

14  assertions" conflate the challenged regulations with the (non-binding, advisory) implementation

15  guidelines.  And the recommendations are exactly what they purport to be: "a reference for

16  districts/colleges as they engage in their own local process to develop and adopt a personalized

17  set of DEI competencies and criteria for their employee evaluation and tenure review processes."

18  (*Id.*, Ex. A. at 2.)  Because the implementation guidelines are not enforceable against either the

19  districts or individual community college employees, Johnson cannot credibly claim that the

20  statements contained in the implementation guidelines compel him to engage in any particular

21  speech.

22      Accordingly, Johnson's compelled speech claim against Chancellor Christian should be

23  dismissed under Rule 12(b)(6).

## CONCLUSION

25      For the foregoing reasons, the Court should dismiss the First Amended Complaint.

26  Because amendment would not cure the First Amended Complaint's defects, Chancellor Christian

27  respectfully requests that the Court deny leave to amend.

28

17

Mem. P. & A. Supp. Def. Christian's Mot. to Dismiss Pl.'s First Am. Compl. (1:23-cv-00848-ADA-CDB)

1    Dated: October 3, 2023                          Respectfully submitted,

2                                                     ROB BONTA
                                                      Attorney General of California
3                                                     ANYA M. BINSACCA
                                                      Supervising Deputy Attorney General
4

5

6                                                      /s/ *Jay C. Russell*
                                                     JAY C. RUSSELL
7                                                     JANE E. REILLEY
                                                     Deputy Attorneys General
8                                                     *Attorneys for Sonya Christian, in her official*
                                                     *capacity as Chancellor of the California*
9    SA2023303989                                    *Community Colleges*
10   43887282.docx

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mem. P. & A. Supp. Def. Christian's Mot. to Dismiss Pl.'s First Am. Compl. (1:23-cv-00848-ADA-CDB)