1   Rob Bonta, State Bar No. 202668
    Attorney General of California
2   Anya M. Binsacca, State Bar No. 189613
    Supervising Deputy Attorney General
3   Jay C. Russell, State Bar No. 122626
    Jane E. Reilley, State Bar No. 314766
4   Deputy Attorneys General
     455 Golden Gate Avenue, Suite 11000
5     San Francisco, CA  94102-7004
     Telephone:  (415) 510-3617
6     Fax:  (415) 703-5480
     E-mail:  Jay.Russell@doj.ca.gov
7   *Attorneys for Sonya Christian, in her official*
    *capacity as Chancellor of the California Community*
8   *Colleges*

9                    IN THE UNITED STATES DISTRICT COURT

10                   FOR THE EASTERN DISTRICT OF CALIFORNIA

11                              FRESNO DIVISION

12

13  | | |
    |---|---|
    | **DAYMON JOHNSON,** | 1:23-cv-00848-ADA-CDB |
    | Plaintiff, | |
    | v. | **DEFENDANT SONYA CHRISTIAN'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
    | **STEVE WATKIN, et al.,** | |
    | Defendants. | Date:        Off-Calendar |

14

15

16

17

18

19   Date:        Off-Calendar
     Time:        Off-Calendar
20   Dept:        1
     Judge:       The Honorable Ana I. de Alba
21   Trial Date:  Not Scheduled
     Action Filed:  June 1, 2023

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

Argument ............................................................................................................... 1

    I.     Johnson Lacks Standing to Assert His Claims Against Chancellor
         Christian. ................................................................................................. 1

         A.    The Implementation Guidelines Do Not—and Cannot—Injure
             Johnson   Because They Are Not Binding Against Johnson or the
             District. ...................................................................................... 2

         B.    The Regulations Do Not Contain Any Means by Which Johnson
             Can Be Punished for His Speech. ............................................... 3

         C.    Professor Garrett's Termination for Dishonest and Unprofessional
             Conduct Does Not Support Johnson's Claims. ............................ 4

    II.    Johnson Does Not State Viable Viewpoint Discrimination or Compelled
         Speech Claims Against Chancellor Christian. ........................................ 5

Conclusion ............................................................................................................. 8

1

# TABLE OF AUTHORITIES

2

<u>Page</u>

3

4

**CASES**

5

*Demers v. Austin*
746 F.3d 402 (9th Cir. 2014) ................................................................. 7

6

7

*Ellins v. City of Sierra Madre*
710 F.3d 1049 (9th Cir. 2013) ............................................................... 5

8

*Hurley v. Irish–Am. Gay, Lesbian & Bisexual Grp. of Boston*
515 U.S. 557 (1995) ............................................................................... 6

9

10

*Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Couns. 31*
— U.S. —, 138 S. Ct. 2448 (2018) ........................................................ 7

11

12

*Lopez v. Cadaele*
630 F.3d 775 (9th Cir. 2010) ............................................................. 1, 2

13

*Maya v. Centex Corp.*
658 F.3d 1060 ........................................................................................ 3

14

15

*Pickering v. Board of Education*
391 U.S. 563 (1968) ............................................................................... 7

16

17

*Roberts v. U.S. Jaycees*
468 U.S. 609 (1984) ............................................................................... 6

18

*Susan B. Anthony List v. Driehaus*
573 U.S. 149 (2014) ............................................................................... 5

19

20

*TransUnion LLC v. Ramirez*
— U.S. —, 141 S. Ct. 2190 (2021) ....................................................... 1

21

**STATUTES**

22

Minnesota's Human Rights Act ................................................................. 6

23

**CONSTITUTIONAL PROVISIONS**

24

United States Constitution
First Amendment .......................................................................... *passim*

25

26

**COURT RULES**

27

Federal Rule of Civil Procedure
Rule 12(b)(1) ......................................................................................... 1

28

1

## TABLE OF AUTHORITIES
### (continued)

2
**Page**

3
Rule 12(b)(1) .................................................................................................................... 5

4
**OTHER AUTHORITIES**

5
Cal. Cmty. Colls., *Procedures and Standing Orders of the Board of Governors*

6
    (Dec. 2022) ch. 2, § 200, https://www.ccccco.edu/-/media/CCCCO-
    Website/docs/procedures-standing-orders/december-2022-procedures-

7
    standing-ordersv2-
    a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D

8
    6 ..................................................................................................................... 2

9
California Code of Regulations, Title 5

10
    § 51201(c) .................................................................................................... 6, 7
    § 51201(d) ....................................................................................................... 7

11
    § 52510(l) ........................................................................................................ 3
    § 53601 ............................................................................................................ 2

12
    § 53602(b) ....................................................................................................... 7

13
Exec. Order No. 14035, 86 Fed. Reg. 34593, 2021 WL 2662351 (June 21, 2021) ....... 6

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Similar to arguments made in his motion for preliminary injunction, Plaintiff Daymon Johnson insists that Defendant Sonya Christian, named in her official capacity as Chancellor of the California Community Colleges, is somehow "the state's chief ideological enforcer" who is "responsible for guiding and directing" the alleged "enforcement" of the California Community College's guidelines created to assist local districts in formulating policies respecting diversity, equity, inclusion, and accessibility (DEIA). (Pl.'s Opp'n Mot. to Dismiss (Opp'n) 1.) Johnson further argues that guidelines directed to the districts for promoting proficiency and competency in issues concerning diversity, equity, inclusion, and accessibility that benefit California's two million community college students (and community college staff) "discriminat[e] against his viewpoints" and violate his First Amendment rights. (*Id.*)

Johnson's arguments all fail. The regulations in question guide local district policies promoting equity and inclusion. And the competencies and criteria to which Johnson hyperbolically objects advise the districts, but create no enforceable criteria that Johnson "must meet." (Opp'n 1.) Accordingly, Johnson has not and cannot state a cause of action against Chancellor Christian in her official capacity, and the motion to dismiss should be granted.

**ARGUMENT**

**I.    JOHNSON LACKS STANDING TO ASSERT HIS CLAIMS AGAINST CHANCELLOR CHRISTIAN.**

Johnson's opposition does nothing to remedy his elemental failure to meet his burden of establishing that he has suffered a "concrete, particularized, and actual or imminent" injury in fact. *TransUnion LLC v. Ramirez*, ⸺ U.S. ⸺, 141 S. Ct. 2190, 2203 (2021). Because Johnson cannot fulfill this "rigid constitutional requirement" (*Lopez v. Cadaele*, 630 F.3d 775, 786 (9th Cir. 2010), the First Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

**A.   The Implementation Guidelines Do Not—and Cannot—Injure Johnson Because They Are Not Binding Against Johnson or the District.**

As a preliminary matter, Johnson's contention that state regulations directed to community college districts and "Christian's competencies and criteria" have somehow "injured" him (Opp'n 8) is demonstrably untrue.[1]  As explained in Chancellor Christian's motion, the implementation guidelines—which Johnson refers to throughout his opposition as the "competencies and criteria"—are non-binding advisory documents.  (*See* Def.'s Mot. to Dismiss 5.)  Because the implementation guidelines are not (and, by their plain language, clearly do not purport to be) regulations adopted through the formal regulatory process, they do not bind the conduct or speech of either the community college districts or the districts' employees, including Johnson.[2]  Accordingly, the implementation guidelines have no power to control Johnson's speech and, as a matter of law, cannot serve as a basis for Johnson's First Amendment claims.  *Lopez v. Candaele*, 630 F.3d at 788 ("[C]laims of future harm lack credibility when the challenged speech restriction by its terms is not applicable to the plaintiff[]").

Ignoring that the implementation guidelines are not binding, Johnson asserts that these guidelines "'shall be used' in setting standards Johnson must meet—or be fired."  (Opp'n 1.)  Johnson's argument is at best misleading because nothing in the regulations requires the districts to use or incorporate any portion of the implementation guidelines when creating their own policies.  Rather, the regulations expressly state that the implementation guidelines "shall be used *as a reference*" by the districts.  Cal. Code Regs. tit. 5, § 53601 (emphasis added).  Johnson fails to allege that the Kern Community College District has adopted any (much less all) of the

---

[1] By "Christian's competencies and criteria," Johnson is referring to the memoranda entitled "Diversity, Equity and Inclusion Competencies and Criteria Recommendations" (*see* First Am. Compl. Ex. A, ECF No. 8-2) and "Guidance on Implementation of DEIA Evaluation and Tenure Review Regulations" (*id.*, Ex. B, ECF No. 8-3).

[2] *See* Cal. Cmty. Colls., *Procedures and Standing Orders of the Board of Governors* (Dec. 2022) ch. 2, § 200, https://www.cccco.edu/-/media/CCCCO-Website/docs/procedures-standing-orders/december-2022-procedures-standing-ordersv2-a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D6 ("Neither the Board nor the Chancellor may administer or enforce any regulation, as defined by section 202, paragraph (d), unless that regulation is adopted in accordance with the provisions of this Chapter").

1   language contained in the implementation guidelines into its own policies—nor could he make

2   such allegations, because the District had not even written its policy at the time Johnson filed his

3   First Amended Complaint.[3]   As such, any claim by Johnson that he is required to adhere to any

4   portion of the implementation guidelines is false.

5        For these reasons, the Court should assign no weight to Johnson's argument that he has

6   been or will be injured by the implementation guidelines.

7

8   **B.   The Regulations Do Not Contain Any Means by Which Johnson Can Be Punished for His Speech.**

9        Johnson also ignores that the regulations do not contain any enforcement mechanism by

10   which Chancellor Christian could "punish" Johnson for engaging in any particular speech.

11   Johnson's standing argument is predicated upon the unsubstantiated claim that he will be "fired"

12   if he "does not comport with standards guided by Christian." (Opp'n 9.)  But the regulations do

13   not authorize Chancellor Christian, the California Community Colleges, or anyone else to fire

14   Johnson, even if he engages in speech that is contrary to the California Community College

15   Board's ideals regarding diversity, equity, inclusion, and accessibility.  Rather, the regulations

16   relate to "evaluations" and "tenure reviews," both of which are non-disciplinary procedures aimed

17   at promoting professional development.  *See* Cal. Code Regs. tit. 5, § 52510(l) (defining

18   "evaluation" as "a tool to provide and receive constructive feedback to promote professional

19   growth and development" and "tenure reviews" as "evaluations [of] demonstrated, or progress

20   toward, proficiency in the locally-developed DEIA competencies").  Further, the First Amended

21   Complaint fails to allege any facts showing that Johnson has been threatened with termination or

22   disciplinary action under the regulations, or otherwise has any credible reason to believe that he

23   will be so threatened in the future.

24        Johnson's claim that he will be "fired" as a result of the regulations is precisely the sort of

25   "bare legal conclusion" upon which plaintiffs cannot rely to "assert injury-in-fact." *Maya v.*

26   *Centex Corp.*, 658 F.3d 1060, 1068.  Johnson has not—and will not suffer any "injury" because

27

28   _____

[3] There is no evidence that the District has finalized its DEIA policies.

3

1    of the regulations.  He thus lacks standing, and Chancellor Christian's motion to dismiss should

2    be granted.

3        **C.    Professor Garrett's Termination for Dishonest and Unprofessional
             Conduct Does Not Support Johnson's Claims.**

4

5        Johnson spends a significant portion of his opposition describing the termination of another

6    Bakersfield College employee—Professor Matthew Garrett—asserting that Professor Garrett's

7    termination confers standing in this lawsuit.  (Opp'n 4-6.)  Johnson's arguments are unfounded,

8    because Professor Garrett's termination did not inflict any injury in fact upon Johnson, nor does

9    that termination otherwise have any bearing on Johnson's claims against Chancellor Christian,

10   given that it was based on findings of Professor Garrett's dishonesty and unprofessional conduct,

11   not protected speech.

12       Johnson claims that Professor Garrett was fired for engaging in "disfavored speech" that

13   "Defendants censor and punish."  (Opp'n 4.)  But Johnson's claims are belied by the statement of

14   charges against Professor Garrett, which shows that Professor Garrett's employment was

15   terminated for multiple valid reasons arising from conduct that is decidedly not protected by the

16   First Amendment.  Specifically, Professor Garrett was found to have repeatedly made "knowingly

17   false and demonstrably false" accusations and "frivolous complaints of misconduct" (including,

18   but not limited to, falsely and publicly accusing two of his colleagues at Bakersfield College of

19   "engag[ing] in financial improprieties" by "misusing grant funds"); such misconduct "wasted

20   college and District resources and diminished the value of the District's reporting system."  (First

21   Am. Compl. Ex. G, ECF No. 8-8, at 2-8).  Thus, the Kern Community College District did not

22   terminate Professor Garrett's employment because he had expressed "conservative political views

23   and social values" (Opp'n at 4), or "for just listening to another professor's comment to [Garrett]"

24   while attending committee meetings (*id.* 5).  Instead, Professor Garrett's termination was the

25   inevitable result of his continuing pattern of making statements he knew were false and not

26   protected under the First Amendment.

27       To credibly allege an imminent injury in fact based on past enforcement, a plaintiff must

28   allege "[p]ast enforcement against the same conduct" in which the plaintiff intends to partake.

4

1   *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014).  Johnson's First Amended

2   Complaint is devoid of any allegation that he intends to engage in the same conduct for which

3   Professor Garrett's employment was terminated.  And even assuming that Johnson did intend to

4   engage in that same misconduct—namely, making dishonest statements and engaging in

5   unprofessional actions—such misconduct would not be entitled to protection under the First

6   Amendment.  *See, e.g., Ellins v. City of Sierra Madre,* 710 F.3d 1049, 1057 (9th Cir. 2013)

7   ("[I]ndividual personnel disputes and grievances that 'would be of no relevance to the public's

8   evaluation of the performance of governmental agencies' generally is not of public concern,"

9   quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983)).

10   The Court should reject Johnson's spurious assertion that the First Amendment protects

11   "demonstrably false statements" and baseless accusations against other Bakersfield College

12   professors.  Johnson's arguments concerning Professor Garrett are irrelevant to Johnson's claims

13   and cannot serve as a basis for standing.  Thus, Chancellor Christian's motion should be granted

14   under Rule 12(b)(1).

15

16   **II.    JOHNSON DOES NOT STATE VIABLE VIEWPOINT DISCRIMINATION OR COMPELLED SPEECH CLAIMS AGAINST CHANCELLOR CHRISTIAN.**

17   Echoing his motion for preliminary injunctive relief, Johnson argues that state regulations

18   and the California Community College guidelines concerning diversity, equity, inclusion, and

19   accessibility benefiting all students somehow "compel" him to "advocate particular messages."

20   (Opp'n 17, 18.)  Johnson further complains that these guidelines require him to engage in "self-

21   reflection."  (*Id.*)  Putting aside that a guideline suggesting that educators engage in "self-

22   reflection" concerning their profession and pedagogical methods is a sound direction that does not

23   violate the First Amendment, the guidelines seek to have staff exhibit "proficiency" and be

24   knowledgeable concerning diversity, equity, inclusion, and accessibility issues.  Nothing in the

25   guidelines and criteria mandates particular speech.  Johnson's arguments that his speech is

26   compelled or his viewpoints are impermissibly discriminated against therefore fail.

27   The State's "commitment to eliminating discrimination and assuring its citizens equal

28   access to publicly available goods and services," is a goal "unrelated to the suppression of

5

1    expression, plainly serves compelling state interests of the highest order" and does not run afoul

2    of the First Amendment.  *Roberts v. U.S. Jaycees,* 468 U.S. 609, 624 (1984); see also *Hurley v.*

3    *Irish–Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 572 (1995) (public

4    accommodations law forbidding discrimination based on sexual orientation and other grounds did

5    not, "on its face, target speech or discriminate based on its content, the focal point of its

6    prohibition being rather on the act of discriminating against individuals in the provision of

7    publicly available goods, privileges, and services on the proscribed grounds.").  Here, the

8    regulations aim to "eliminate . . . barriers to equity" in community colleges (Cal. Code Regs. tit.

9    5, § 51201(c)), and do not suppress Johnson's—or anyone's—speech.[4]

10        In *Roberts v. U.S. Jaycees*, the national office of the Jaycees (a charitable organization that

11    pursues "educational and charitable purposes [that] promote and foster the growth and

12    development of young men's civic organizations"), challenged an order issued under Minnesota's

13    Human Rights Act requiring a local chapter to admit women.  *Roberts,* 468 U.S. at 612-16.

14    Holding that the Minnesota Act "does not aim at the suppression of speech, does not distinguish

15    between prohibited and permitted activity on the basis of viewpoint, and does not license

16    enforcement authorities to administer the statute on the basis of such constitutionally

17    impermissible criteria," the Supreme Court found the enforcement order valid, despite the

18    purported infringement on the organization's freedom of association protected under the First

19    Amendment.  *Id.* at 623.  Despite that alleged interference, the Minnesota Act promoted equality

20    that was "unrelated to the suppression of expression, plainly serves compelling state interests of

21    the highest order." *Id.* at 624.

22        Similar to the nondiscrimination policy in *Roberts v. U.S. Jaycees*, the regulations Plaintiffs

23    challenge do not "target speech or discriminate on the basis of its content." *Roberts,* 468 U.S. at

24    624.  Rather, the regulations promote the Board's "commitment to diversity," which "requires

25    that we strive to eliminate those barriers to equity and that we act deliberately to create a safe,

26           [4] The Federal government operates under similar DEIA principles.  In 2021, President
     Biden issued an executive order urging the government to "be a model for diversity, equity,
27    inclusion, and accessibility, where all employees are treated with dignity and respect," and
     establishing "procedures to advance these priorities across the Federal workforce."  *See* Exec.
28    Order No. 14035, 86 Fed. Reg. 34593, 2021 WL 2662351 (June 21, 2021).

6

1   inclusive, and anti-racist environment" that "offers equal opportunity for all."  Cal. Code Regs.

2   tit. 5, § 51201(c) and (d).  The Supreme Court has consistently held that such policies do not

3   violate the First Amendment.

4        Johnson's reliance upon *Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Couns. 31,*

5   — U.S. —, 138 S. Ct. 2448 (2018) is misplaced.  In *Janus,* a state employee declined to join his

6   unit's union because he "oppose[d] many of the public policy positions that it advocate[d]," but

7   was nevertheless required under his unit's collective-bargaining agreement to pay monthly

8   nonmember dues to the union.  *Id.* at 2461.  The Supreme Court held that such compulsory

9   payment of nonmember dues "violates the free speech rights of nonmembers by compelling them

10   to subsidize private speech on matters of substantial public concern."  *Id.* at 2460.  Here, in

11   contrast, the regulations at issue do not require Johnson to "subsidize" any entity's private speech.

12   Indeed, they do not require Johnson to speak at all, but to "establish proficiency in" and have a

13   working knowledge of DEIA concepts.  *See* Cal. Code of Regs. tit. 5, § 53602(b).

14        Johnson's reliance on *Demers v. Austin,* 746 F.3d 402 (9th Cir. 2014) similarly fails.  In

15   *Demers*, the plaintiff professor alleged that he had been retaliated against by school

16   administrators for having distributed the school's accreditation plan for its communications

17   department and drafts from an in-progress book critical of school administrators.  *Demers,* 746

18   F.3d. at 406-408.  The Ninth Circuit examined the protections applicable to the speech of teachers

19   and professors and held that because "teaching and academic writing are at the core of the official

20   duties of teachers and professors [and] are a special concern of the First Amendment," the

21   balancing test articulated in *Pickering v. Board of Education*, 391 U.S. 563 (1968) applied, which

22   requires that a government employee's interest "in commenting upon matters of public concern"

23   outweighs the State's interest "in promoting the efficiency of the public services it performs

24   through its employees." *Demers,* 746 F.3d at 411-12, citing *Pickering*, 391 U.S. at 568.

25        Both *Pickering* and *Demers* require that speech concerning "matters of public concern" be

26   restricted in some way to state a First Amendment claim.  But as discussed above, Johnson cannot

27   show that his speech has been restricted, compelled, or altered in any way because of the

28   regulations and guidelines.  Again, the regulations and guidelines provide direction as to how

7

districts should formulate their policies concerning diversity, equity, inclusion, and accessibility. While they obligate professors to be "proficient" in these concepts, they do not compel speech, nor do they restrict a professor's speech, even speech that might challenge these concepts. Johnson's argument that having to learn about these concepts somehow restricts his expression is unavailing.

In short, the regulations and guidelines call for proficiency and increased learning concerning important issues that are evolving but are nevertheless important in assisting professors to recognize and respect the experiences of California's extremely diverse community college population. For Johnson to argue that any effort to increase his understanding and knowledge of these concepts somehow "compels specific ideological speech," and that learning more about these concepts constitutes a "viewpoint discrimination claim," is unfounded. Johnson cannot state a claim based on these allegations, and Chancellor Christian's motion should be granted.

## CONCLUSION

The First Amended Complaint fails to establish that Johnson has standing to bring his claims against Chancellor Christian, and further fails to state a cognizable claim of viewpoint discrimination or compelled speech against Chancellor Christian. Accordingly, Chancellor Christian respectfully requests that the Court dismiss the First Amended Complaint without leave to amend.

Dated: October 27, 2023                          Respectfully submitted,

                                                 ROB BONTA
                                                 Attorney General of California
                                                 ANYA M. BINSACCA
                                                 Supervising Deputy Attorney General


                                                  */s/ Jay C. Russell*
                                                 _____
                                                 JAY C. RUSSELL
                                                 JANE E. REILLEY
                                                 Deputy Attorneys General
                                                 *Attorneys for Sonya Christian, in her official
                                                 capacity as Chancellor of the California
                                                 Community Colleges*

SA2023303989/ 43887282.docx

8

# CERTIFICATE OF SERVICE

Case Name:    ***Johnson, Daymon v. Watkin,***         Case No.    **1:23-cv-00848-ADA-CDB**
                         ***Steve, et al.***

I hereby certify that on <u>October 27, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANT SONYA CHRISTIAN'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 27</u> <u>2023</u>, at San Francisco, California.

|                      |                      |
|----------------------|----------------------|
| M. Mendiola          |                      |
| Declarant            | Signature            |

SA2023303989
43936756.docx