ROB BONTA, State Bar No. 202668
Attorney General of California
ANYA M. BINSACCA, State Bar No. 189613
Supervising Deputy Attorney General
JAY C. RUSSELL, State Bar No. 122626
JANE E. REILLEY, State Bar No. 314766
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3617
  Fax:  (415) 703-5480
  E-mail:  Jay.Russell@doj.ca.gov
*Attorneys for Sonya Christian, in her official capacity as Chancellor of the California Community Colleges*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **DAYMON JOHNSON,** <br><br> Plaintiff, <br><br> v. <br><br> **STEVE WATKIN, et al.,** <br><br> Defendants. | 1:23-cv-00848-ADA-CDB <br><br> **DEFENDANT SONYA CHRISTIAN'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS** <br><br> Judge:            The Honorable Ana I. de Alba <br> Trial Date:     Not Scheduled <br> Action Filed:  June 1, 2023 |

**TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................... 1
Argument ....................................................................................................................... 1
    I.    The Proposed Preliminary Injunction Would Bar Every District Policy that Promotes Diversity, Equity, Inclusion, and Accessibility. ..................................... 1
    II.    The Proposed Preliminary Injunction is Based on Erroneous Factual Findings That Do Not Support an Injunction............................................................ 3
    III.    The Proposed Preliminary Injunction Is Overly Broad in Enjoining Regulations that Do Not Apply to Plaintiff. ........................................................... 6
    IV.    The Injunction Is Impermissibly Vague................................................................. 8
    V.    The Findings and Recommendations Enjoin a Valid Regulation Requiring Professors to Demonstrate an Ability to Work with a Community College Campus Population. ............................................................................................... 9
    VI.    The Findings and Recommendations Erroneously Conclude that the Regulations Dictate what Faculty Must Teach. ...................................................... 11
    VII.    The Findings and Recommendations Misinterpret the Chancellor's Guidance. ................................................................................................................ 12
    VIII.    The Court Should Not Adopt the Recommendation to Deny the Chancellor's Motion to Dismiss......................................................................... 13
Conclusion ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Califano v. Yamasaki*
   442 U.S. 682 (1979)............................................................................................. 2, 7

*Davenport v. Bd. of Tr. of State Center Cmty. Coll. Dist.*
   654 F. Supp. 2d 1073 (E.D. Cal. 2009)................................................................ 4, 5

*Does 1-5 v. Chandler*
   83 F.3d 1150 (9th Cir. 1996).................................................................................... 3

*Downs v. Los Angeles Unified Sch. Dist.*
   228 F.3d 1003 (9th Cir. 2000).................................................................................. 8

*Ellins v. City of Sierra Madre*
   710 F.3d 1049 (9th Cir. 2013)................................................................................ 10

*LA Alliance for Human Rights v. County of Los Angeles*
   14 F.4th 947 (9th Cir. 2021).................................................................................... 3

*Lopez v. Brewer*
   680 F.3d 1068 (9th Cir. 2012).................................................................................. 6

*Lopez v. Candaele*
   630 F.3d 775 (9th Cir. 2020).................................................................................... 7

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*
   762 F.2d 1374 (9th Cir. 1985).................................................................................. 7

*Rosenberger v. Rector & Visitors of the Univ. of Virginia*
   515 U.S. 819 (1995).................................................................................................. 8

*Tingley v. Ferguson*
   47 F.4th 1055 (9th Cir. 2023).................................................................................. 4

*TransUnion LLC v. Ramirez*
   ⎯ U.S. ⎯, 141 S. Ct. 2190 (2021).......................................................................... 6

*United States v. BNS, Inc.*
   858 F.2d 456 (9th Cir. 1988).................................................................................... 2

*United States v. Holtzman*
   762 F.2d 720 (9th Cir. 1985).................................................................................... 8

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. Osinger*
   753 F.3d 939 (9th Cir. 2014) ............................................................................... 10

*Weinberger v. Romero-Barcelo*
   456 U.S. 305 (1982) ............................................................................................. 6

*West Valley-Mission Cmty. Coll. Dist. v. Concepcion*
   16 Cal. App. 4th 1766 (1993) ............................................................................ 10

*Wood v. Santa Barbara Chamber of Commerce, Inc.*
   705 F.2d 1515 (9th Cir. 1983) ............................................................................. 9

*Woodland Joint Unif. Sch. Dist. v. Comm. on Pro. Competence (Zuber)*
   2 Cal. App. 4th, 1429, 1455 (1992) ..................................................................... 5

*Yamaha Corp. of America v. State Bd. of Equalization*
   19 Cal. 4th 1 (1998) ........................................................................................... 12

*Zepeda v. INS*
   753 F.2d 719 (9th Cir. 1983) ............................................................................... 2

**STATUTES**

California Education Code
   § 87332(c) ........................................................................................................... 9
   § 87356 ................................................................................................................ 9
   § 87360(a) ........................................................................................................... 9
   § 87626 ..................................................................................................... 9, 10, 11
   § 87732 ..................................................................................................... 9, 11, 13
   § 87735 .............................................................................................................. 13

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   First Amendment ......................................................................................... *passim*

**COURT RULES**

Federal Rules of Civil Procedure
   Rule 12 .............................................................................................................. 13
   Rule 65(d) ........................................................................................................... 8
   Rule 65(d)(1)(C) ................................................................................................. 8

# TABLE OF AUTHORITIES
## (continued)

**Page**

**OTHER AUTHORITIES**

California Code of Regulations, Title 5
    § 53410 .................................................................................................................. 9
    § 53605(a) ........................................................................................................... 11

Bill Berkowitz, *"Cultural Marxism" Catching On*, Southern Poverty Law Center
    Intelligence Report (Aug. 15, 2003) https://www.splcenter.org/fighting-
    hate/intelligence-report/2003/cultural-marxism-catching ........................................... 4

Cal. Cmty. Colls., Procedures and Standing Orders of the Board of Governors
    (Dec. 2022) ch. 2, § 200, https://www.cccco.edu/-/media/CCCCO-
    Website/docs/procedures-standing-orders/december-2022-procedures-
    standing-ordersv2-
    a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D
    6 (last visited Nov. 28, 2023) ..................................................................................... 13

Ewan Palmer, *Stickers From White Supremacist Group with Links to Europe
    Found in New York: "They Are Inciting Fear and Division Within Our
    Communities"*, Newsweek (Jul. 19, 2019) ................................................................. 4

# INTRODUCTION

The Magistrate Judge's Findings and Recommendations are fundamentally flawed. The proposed preliminary injunction is neither narrowly tailored, nor does it reflect an understanding of how the California Community Colleges Board of Governors regulations operate in relation to the Chancellor's guidance documents. It enjoins laws and regulations that exist for the benefit of California's diverse population of two million community college students, and that do not apply to Plaintiff Daymon Johnson, so cannot cause him injury. And it misinterprets regulations, ascribing to them non-existent restraints on First Amendment rights.

The Findings and Recommendations also misinterpret facts upon which the Magistrate Judge bases his proposed rulings, improperly relying on purported employment decisions concerning a party not before the Court, and related to actions for which the Chancellor can in no way be held accountable.

Finally, on the basis of these erroneous findings, the Magistrate Judge recommends that the Chancellor's motion to dismiss be denied. A correct reading of the facts and the law shows that the motion should be granted.

Accordingly, Defendant Sonya Christian, in her official capacity as California Community Colleges Chancellor, objects to the Magistrate Judge's Findings and Recommendations as follows.

# ARGUMENT

**I. THE PROPOSED PRELIMINARY INJUNCTION WOULD BAR EVERY DISTRICT POLICY THAT PROMOTES DIVERSITY, EQUITY, INCLUSION, AND ACCESSIBILITY.**

First, the Magistrate Judge's proposed injunction is fatally overbroad because it forecloses **all** policies aimed at promoting diversity, equity, inclusion, and accessibility under which Johnson may be evaluated—even policies that have not yet been written, to which Plaintiff might not even be opposed. The State of California is committed to promoting "diversity and equity in fulfilling the [community college] system's educational mission." Cal. Code Regs. tit. 5, § 51200. That expression is intended to "guide the administration of all programs in the California Community Colleges, consistent with all applicable state and federal laws and regulations." *Id.* Despite the

Magistrate Judge's professed agreement that the State's "aim of promoting diversity, equity, inclusion, and accessibility in California's system of community colleges is undoubtedly important" (Findings and Recommendations that Pl.'s Mot. for Prelim. Inj. Be Granted in Part (F&R) at 2), the proposed injunction would bar any expression of these "important" goals. *Id.* Given this unqualified overreach, the Court should reject the proposed injunction.

A preliminary injunction must be "narrowly tailored to remedy the specific harms shown by plaintiffs, rather than to enjoin all possible breaches of the law." *Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983) (cleaned up and citations omitted.)  To meet this standard, "[i]njunctive relief should be no more burdensome to the defendants than necessary." *Califano v. Yamasaki*, 442 U.S. 682, 702, (1979).  If an injunction is not narrowly tailored, but is instead overly broad, the court abuses its discretion and the injunction should be vacated. *United States v. BNS, Inc.*, 858 F.2d 456, 460 (9th Cir. 1988).

Here, the Magistrate Judge concedes that the State's policies expressed in the regulations are "important" (F&R at 2), and that "California's goal of securing equal educational opportunities for nearly two million community college students is unquestionably appropriate and, in many respects, required by law." *Id.* at 36.  But the proposed injunction would nevertheless bar **any** policy that promotes diversity, equity, inclusion, and accessibility. Specifically, the Findings and Recommendations find that "the Undersigned finds it likely that at some point Plaintiff will face the consequences if he does not adhere to **whatever** competencies and criteria are imposed on him through the DEIA regulations." *Id.* (emphasis added).  The Magistrate Judge's view is that no matter what non-regulatory guidance the Chancellor drafts, or what policies the Kern Community College District eventually crafts to acknowledge, promote, and accommodate the diversity of all California community college students, they will inevitably violate the First Amendment.  Thus, the Magistrate's proposed injunction would leave the California Community Colleges effectively barred from addressing an admittedly "important" educational aim.

The proposed injunction's overbreadth, which would bar Johnson's evaluation under **any** policy that might be drafted to promote diversity, equity, inclusion, and accessibility—determined

before the policy is even written—is breathtaking.  Far from encouraging free expression, the Magistrate's proposed injunction would muzzle the Chancellor and the District.  The Court should reject the findings and proposed injunction on that basis alone.

II. **THE PROPOSED PRELIMINARY INJUNCTION IS BASED ON ERRONEOUS FACTUAL FINDINGS THAT DO NOT SUPPORT AN INJUNCTION.**

The Findings and Recommendations are replete with references to the District's investigation and termination of a third party, Professor Matthew Garrett, ultimately concluding that because Johnson may, at some juncture, "engage in similar 'political speech' that Garrett, was, in part, punished for," Johnson has "adequately demonstrated 'injury in fact.'" F&R at 19-20.  The Chancellor of the California Community Colleges has no role in district-level employment decisions—including those concerning Garrett—and does not respond to how the District renders its disciplinary decisions or what other relevant documents would show the efficacy of the District's decision concerning Garrett.  Even so, the Magistrate Judge has misinterpreted the few facts that can be established from the partial record, and that misinterpretation does not support the injunction imposed on the Chancellor.

A preliminary injunction may be reversed "where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Does 1-5 v. Chandler,* 83 F.3d 1150, 1152 (9th Cir. 1996).  A court "abuses its discretion if its conclusions are 'without support in inferences that may be drawn from the facts in the record.'" *LA Alliance for Human Rights v. County of Los Angeles*, 14 F.4th 947, 957 (9th Cir. 2021) (quoting *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017)).  Here, the interpretations and inferences concerning the District's termination of Garrett are erroneous such that they cannot support the proposed injunction.

The Findings and Recommendations spend several pages discussing Garrett and his termination.  F&R at 4-8, 19-20.  Putting aside that the Chancellor has no role in such district-level termination decisions, the facts related to Garrett's termination as recounted in the Findings and Recommendations do not support any finding that "enforcement authorities have communicated a specific warning or threat to initiate proceedings" against Johnson, or that there

3

has been a credible "history of past prosecution or enforcement" of a "law" that Johnson intends to "violate." *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2023).  The Findings and Recommendations place undue weight on the district's legitimate concern regarding Garrett's apparent tolerance of vandalism perpetrated by the European-based hate group Hundred-Handers,[1] and his use of inflammatory right-wing rhetoric in the form of the conspiracy myth of "Cultural Marxism."[2]  F&R at 5.  In addition to this, Garrett's other disruptive conduct, standing alone, was ample justification for termination: he was found to have submitted numerous false and misleading claims and criminal accusations against District administrators, violated COVID-19 policies, and threatened and attempted to intimidate District trustees.  *Id.* at 6-7.

All of the above actions were sufficient grounds to terminate Garrett.  *See, e.g., Davenport v. Bd. of Tr. of State Center Cmty. Coll. Dist.* 654 F. Supp. 2d 1073, 1095 (E.D. Cal. 2009) ("[H]arsh and inappropriate treatment of Fresno City College faculty members, students, and employees violated school policy and called into question [plaintiff's] fitness as a faculty member.  Failure to perform in accordance with standards set by the employer is sufficient to constitute a legitimate business reason for termination.").  Yet the Findings and Recommendations minimize and mischaracterize these actions as "some expressions of 'pure political speech'" for which "Garrett was, in part punished for" and in which Johnson ostensibly "intends to engage in" as well.  F&R at 19.  Again, setting aside that the Chancellor plays no part in district-level employment decisions, and that there is no complete record of what occurred in those proceedings,[3] the District was well within its rights to terminate Professor Garrett for his

---

[1] New York has investigated this group after finding stickers with violent messages such as "Multiculturalism kills" and "You are disrespected. You are white. Strike back" posted throughout the state.  Ewan Palmer, *Stickers From White Supremacist Group with Links to Europe Found in New York: "They Are Inciting Fear and Division Within Our Communities"*, Newsweek (Jul. 19, 2019), https://www.newsweek.com/white-supremacist-stickers-new-york-troy-hundred-handers-1448252.

[2] Cultural Marxism is a "theory [holding] that self-interested Jews — the so-called 'Frankfurt School' of philosophers — planned to try to convince mainstream Americans that white ethnic pride is bad, that sexual liberation is good, and that supposedly traditional American values . . . are reactionary and bigoted."  Bill Berkowitz, *"Cultural Marxism" Catching On*, Southern Poverty Law Center Intelligence Report (Aug. 15, 2003) https://www.splcenter.org/fighting-hate/intelligence-report/2003/cultural-marxism-catching.

[3] Professor Garrett has appealed his termination with the California Office of Administrative Hearings.  A decision on that appeal remains pending before an Administrative Law Judge.

"harsh and inappropriate treatment" of District administrators and staff, and for his pervasive violations of school policies. *Davenport*, 654 F. Supp. 2d at 1095. To conclude that the District's decision to terminate Garrett for his patently "unprofessional conduct" somehow means that Johnson "will face consequences if he does not adhere to whatever competencies and criteria" the District ultimately promulgates lacks factual or legal support.

The Findings and Recommendations further incorrectly conclude that Johnson has "already been warned that if he posts on social media, like Garrett had," he may be subject to further investigation. F&R at 19-20. As a preliminary matter, the Chancellor neither made any statement regarding any future investigation of Johnson by the District nor does she control the district-level officials who may have made such a statement. Thus, no injunction should issue against the Chancellor based upon this statement.

Moreover, these findings misstate the circumstances surrounding the District's reservation of its rights to investigate future claims of harassment or bullying made against Johnson. There is no evidence that the District ever threatened to investigate Johnson merely for posting on social media, or for acting in a manner similar to Garrett. Rather, the record reflects that after an especially charged social media post by Bakersfield Community College Professor Andrew Bond, Johnson responded, in part "[h]ere's what one critical race theorist at [Bakersfield College] sounds like. Do you agree with this radical SJW[4] from [the College's] English Department?" F&R at 4. In response to this mocking and pejorative post, Professor Bond filed an administrative complaint alleging that Johnson was "harassing and bullying" him. *Id.* Johnson was not disciplined for his social media post, but the District advised Johnson that—similar to all other staff—it would investigate "complaints of harassment and bullying." ECF No. 1-3 at p. 10. Indeed, the District is bound by statute to investigate complaints of harassment and bullying. *See, e.g., Woodland Joint Unif. Sch. Dist. v. Comm. on Pro. Competence (Zuber)* 2 Cal. App. 4th, 1429, 1455 (1992) (secondary school teacher terminated for "bullying and threatening other

---

[4] "SJW" is the acronym for "social justice warrior," "an often mocking term for one who is seen as overly progressive or left-wing. It is often abbreviated as SJW." *Social Justice Warrior,* Merriam Webster Dictionary, https://www.merriam-webster.com/wordplay/what-does-social-justice-warrior-sjw-mean (last visited Nov. 28, 2023).

5

teachers" since a "professional educator should not need to be told that it is improper to launch personal attacks on a fellow teacher").

The Findings and Recommendations erroneously categorize the District's instruction as "the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation," citing *Lopez v. Candaele,* 630 F.3d 775, 786 (9th Cir. 2020).  F&R at 20.  But similar to the prior misinterpretation of fact, the District's instruction can in no way be considered a "threat" or "coercion, persuasion, and intimidation," but rather a statement of the protections offered to all administrators, staff, and students under the Education Code.  Harassment and bullying are not and cannot be tolerated in California's community colleges.  Here, allegations of the same were investigated and found to not be substantiated.  But that does not in any way make the law and the District's actions a "threat" or "coercive."

These misinterpretations of fact show that the Court would abuse its discretion if the Findings and Recommendations were adopted.  They should instead be rejected.

### III. THE PROPOSED PRELIMINARY INJUNCTION IS OVERLY BROAD IN ENJOINING REGULATIONS THAT DO NOT APPLY TO PLAINTIFF.

As noted above, the regulations in question express the State's "commitment to diversity and equity in fulfilling the [community college] system's educational mission."  Cal. Code Regs. tit. 5, § 51200.  If adopted by the Court, the proposed Findings and Recommendations would bar enforcement of these guiding expressions, most of which are not directed to Johnson, and thus have no impact on his speech or pedagogy.  Because the proposed injunction is not narrowly tailored and does not remedy a significant risk of substantial harm that Johnson might incur, the Court should reject the Magistrate Judge's Findings and Recommendations.

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'"  *Lopez v. Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, (1997) (per curiam)).  "[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); *see also TransUnion LLC v. Ramirez*, ___ U.S. ___, 141 S. Ct. 2190, 2203

(2021) (injunctive relief appropriate only if there is "concrete, particularized, and actual or imminent" injury in fact).  The party seeking the injunction must prove that it faces a significant threat of irreparable harm.  *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).  Such proof is a "rigid constitutional requirement." *Lopez v. Candaele*, 630 F.3d at 786.  Importantly, injunctive relief should not impose unnecessary burdens that do not remedy a threat of significant harm.  *Califano v. Yamasaki*, 442 U.S. at 702.  The Findings and Recommendations here improperly enjoin the Chancellor's lawful and valid aspirational statements concerning diversity, equity, inclusion, and accessibility.

In the Findings and Recommendations, the Magistrate Judge recommends that Defendants—including Chancellor Christian—"be enjoined . . . from enforcing" California Code of Regulations, title 5, sections 51200, 51201, 53425, 53601, 53602, and 53605, "and the customs, policies, and criteria in evaluating faculty performance against Plaintiff."  F&R at 44.  The recommendation that all of these sections be enjoined is patently overbroad.  Section 51200 expresses the California Community College Board's "intent . . . that the statement on Diversity, Equity, and Inclusion set forth in Section 51201" be the Board's "official position . . . on their commitment to diversity and equity in fulfilling the system's educational mission and that it should guide the administration of all programs in the California Community Colleges."  Section 51201 further explains that "intent" and the Board's "official position," stating that the Board "embrace[s] diversity among students, faculty, staff, and the communities [it] serves."  The section further elucidates what the Board believes it must do to further its intent and goals concerning diversity and anti-racism.  Neither regulation references any individual's speech or beliefs, or purports to impose upon others the Board's official recognition of the diversity of the community colleges.  And, by their plain language, neither regulation can be enforced by the Chancellor against Johnson, because the regulations neither require Johnson to take or refrain from any action nor do they include any enforcement mechanism by which Johnson could be punished under them.

In recommending that these regulations be enjoined, the Magistrate Judge ignores that governmental entities like the Board are entitled to express their ideals and principles concerning

7

diversity, equity, inclusion, and accessibility, particularly when that expression does not regulate another person's speech. *Rosenberger v. Rector & Visitors of the Univ. of Virginia*, 515 U.S. 819, 828, 833 (1995) (although "the government may not regulate speech based on its substantive content . . . when the State is the speaker, it may make content-based choices"); *see also Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1013 (9th Cir. 2000). Indeed, governmental entities "may decide not only to talk about . . . tolerance in general, but also to advocate such tolerance if it so decides." *Downs* at 1014, (citing *Rust v. Sullivan*, 500 U.S. 173, 194 (1991)).

These two regulations in particular seek only to express the Board's "intent" and "official position" concerning diversity, equity, inclusion, and accessibility, and in no way regulate Johnson's—or anyone else's—speech. Silencing the Board's "official position" is unwarranted and legally unsupportable, and it would be an abuse of discretion to adopt the overly broad Findings and Recommendations enjoining the Board's expression.

### IV. THE INJUNCTION IS IMPERMISSIBLY VAGUE.

In addition to recommending that Defendants "be enjoined . . . from enforcing" California Code of Regulations, title 5, sections 51200, 51201, 53425, 53601, 53602, and 53605, the Findings and Recommendations also recommend enjoining "the customs, policies, and criteria in evaluating faculty performance against Plaintiff." F&R at 44. The phrase "customs, policies, and criteria" is found nowhere in the regulations or the Chancellor's recommendations, and Chancellor Christian can only guess at what this phrase intends to enjoin.

Federal Rule of Civil Procedure 65(d)(1)(C) requires that "[e]very order granting an injunction . . . must describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." "Rule 65(d) requires the language of injunctions be reasonably clear so that ordinary persons will know precisely what action is proscribed." *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985).

Here, the Chancellor's recommendations are entitled "Diversity, Equity and Inclusion Competencies and Criteria." But those recommendations do not use the phrase, nor are they ever called, "customs, policies, and criteria." Pl.'s Mot. for Prelim. Inj., Ex. A, ECF 26-4. And the phrase appears nowhere within the laws and regulations to be enjoined.

"The danger of an overly broad injunction is that it will leave a litigant uncertain as to what he may or may not do without being in contempt of court." *Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1525 (9th Cir. 1983).  Here, Chancellor Christian is unsure what—if anything—is being enjoined when the Findings and Recommendations state that "customs, practices, and policies" are not to be used "in evaluating faculty performance against Plaintiff."  The Court should not adopt the hopelessly vague Findings and Recommendations.

### V.   THE FINDINGS AND RECOMMENDATIONS ENJOIN A VALID REGULATION REQUIRING PROFESSORS TO DEMONSTRATE AN ABILITY TO WORK WITH A COMMUNITY COLLEGE CAMPUS POPULATION.

The Legislature has appropriately authorized the Board of Governors for the California Community Colleges to "adopt regulations to establish and maintain the minimum qualifications for service as a faculty member teaching credit instruction."  Cal. Educ. Code § 87356.  Under that law, professors are, among other things, required to have either a post-graduate degree or a lower degree with several years of professional experience.  Cal. Code Regs. tit. 5, § 53410.  Johnson does not and could not credibly challenge that the Board and Chancellor Christian have the authority to promulgate such minimum standards and require that professors meet them.  See, e.g., Cal. Educ. Code § 87332(c) (allowing dismissal for "unsatisfactory performance").  "In addition to [the] category-specific qualifications . . ., [professors] shall demonstrate the ability to work with and serve individuals within a diverse community college campus environment as required by local policies regarding [diversity, equity, inclusion, and accessibility] competencies."  Cal. Code Regs. tit. 5, § 53425; *see also* Cal. Educ. Code § 87360(a) ("[D]istrict governing boards shall . . . develop criteria that include a sensitivity to and understanding of the diverse academic, socioeconomic, cultural, disability, and ethnic backgrounds of community college students").  The Magistrate Judge's recommendation that this requirement be enjoined is legally unsupportable, overly broad, and should be rejected.

It is axiomatic that the State may promulgate regulations and that community college districts may enforce them, terminating professors for "misconduct."  Cal. Educ. Code §§ 87732, 87626.  The Education Code provides that the evaluation processes must be "fair" and "basically similar in substance and intent" across all of the state's community college districts, but it also

allows for local variation by "permit[ing] and encourag[ing] a district governing board to establish evaluation procedures and standards which meet the particular needs of that district." Cal. Educ. Code § 87626.  Thus, districts are authorized to enact evaluation processes as they see fit, subject to the Legislature's general guidance.

When determining if conduct may render a professor unfit, a fact-finder may evaluate, among other issues, the "likelihood that the conduct adversely affected students or fellow teachers." *Id.* at 229; *see also West Valley-Mission Cmty. Coll. Dist. v. Concepcion* (1993) 16 Cal. App. 4th 1766, 1774.  Evaluations that investigate "personnel disputes and grievances" will rarely, if ever, implicate constitutional issues. *See Ellins v. City of Sierra Madre,* 710 F.3d 1049, 1057 (9th Cir. 2013) ("Speech that deals with individual personnel disputes and grievances that would be of no relevance to the public's evaluation of the performance of governmental agencies" does not implicate First Amendment).

Here, the regulation in question requires that in addition to holding an advanced degree or being experienced in their field, professors like Johnson "demonstrate the ability to work with and serve individuals within a diverse community college campus environment as required by local policies regarding [diversity, equity, inclusion, and accessibility] competencies."  Cal. Code Regs. tit. 5, § 53425.  The State and districts are entitled to require professors to "work with and serve" diverse individuals.  That does not amount to either compelled speech or a restriction on speech.  Indeed, if the inability to "work with others" descends into speech that is "harassing and intimidating" and evinces an "intent to cause substantial emotional distress," there are no constitutional protections. *See United States v. Osinger* 753 F.3d 939, 947 (9th Cir. 2014), citing *United States v. Shrader*, 675 F.3d 300, 312 (4th Cir. 2012).

Here, the proposed injunction would bar a requirement that professors "work with and serve" diverse individuals.  That over breadth renders the proposed injunction an abuse of discretion, and the Court should reject the Magistrate Judge's recommendations.

### VI. THE FINDINGS AND RECOMMENDATIONS ERRONEOUSLY CONCLUDE THAT THE REGULATIONS DICTATE WHAT FACULTY MUST TEACH.

The Findings and Recommendations also err in concluding that the challenged regulations "dictate[] what faculty must teach." F&R at 22. The Magistrate Judge cites to California Code of Regulations, title 5, sections 53602(a-b) and 53605(a) to support this conclusion. But nothing in either of these regulations mandates that any faculty member—including Johnson—"must teach" any particular lesson or engage in any particular speech in his or her classroom. Rather, section 53602 simply requires districts to consider employees' "demonstrated, or progress toward, proficiency in [DEIA] competencies" that "enable work with diverse communities, as required by section 53425." Cal. Code Regs. tit. 5, § 53602(a-b). Similarly, section 53605 requires only that faculty members "employ teaching, learning, and professional practices that reflect DEIA and anti-racist principles, and in particular, respect for, and acknowledgment of the diverse backgrounds of students and colleagues to improve equitable student outcomes and course completion." Cal. Code Regs. tit. 5, § 53605(a). By their plain language, these regulations do not prescribe what a faculty member can or cannot say in the classroom, and thus do not violate any faculty members' First Amendment rights.

The Findings and Recommendations do correctly state that the above regulations dictate "how [faculty] should teach" and "how they will be evaluated." F&R at 22. However, such regulations neither regulate speech nor implicate the First Amendment. As set forth in Section IV, *supra*, the Board is authorized to establish minimum standards and evaluation criteria for their faculty members, to ensure that all faculty members are fit to teach. Cal. Educ. Code §§ 87732, 87626. The ability to facilitate "equitable student outcomes and course completion" (Cal. Code Regs. tit. 5, § 53605(a)), is undoubtedly a key component of a faculty member's fitness to teach. For example, if students of a particular gender, race, socioeconomic, or disability status consistently perform poorly in, or fail to complete, a certain faculty member's course, that could suggest that the faculty member reflect on their pedagogical methods to ensure students across diverse backgrounds can succeed. It is wholly appropriate for community college districts to evaluate their faculty members in these areas, to ensure that their 2 million students are all

granted equitable access to a high-quality education.  Regulations aimed at ensuring that faculty members employ teaching methodologies that allow them to effectively interact with and educate students from all backgrounds do not impinge faculty members' speech, and thus do not raise any First Amendment concerns.

For these reasons, the Magistrate Judge's finding that California Code of Regulations, title 5, sections 53602(a-b) and 53605(a)—or any of the other challenged regulations—"dictate what faculty must teach" (F&R at 22) should be rejected.

### VII.  THE FINDINGS AND RECOMMENDATIONS MISINTERPRET THE CHANCELLOR'S GUIDANCE.

In the Findings and Recommendations, the Magistrate Judge acknowledges that the Chancellor's "Diversity, Equity and Inclusion Competencies and Criteria Recommendations," are a "starting point" for each district's reference "as they engage in their own local process to develop and adopt a personalized set of DEI competencies and criteria."  F&R at 12.  Despite that acknowledgment, the Findings and Recommendations then proceed to misinterpret these recommendations, making the illogical leap that because there is no "history of enforcement," Johnson "has shown 'injury in fact' as to the DEIA regulations and the DEI Competencies and Criteria Recommendations."  F&R at 23.  The Findings and Recommendations also appear to conflate the Chancellor's recommendations, which are just that — recommendations — with regulations, which all parties agree the district is obligated to fulfill.  *See, e.g.,* F&R at 37 ("[T]he State's interest in imposing the DEIA regulations and the DEI Competencies and Criteria Recommendations do not outweigh Plaintiff's First Amendment rights").  But the Findings and Recommendations use the Chancellor's recommendations — which districts are not required to implement — to bolster the Magistrate Judge's findings of a First Amendment violation.  Without any evidence that the recommendations will play any role in Johnson's employment, there are no grounds for them to be enjoined, and the Court should reject the proposed injunction.

Regulations adopted through the formal regulatory process are binding on districts.  *See Yamaha Corp. of America v. State Bd. of Equalization,* 19 Cal. 4th 1, 7 (1998) ("regulations adopted by an agency to which the Legislature has confided the power to 'make law'" are

binding). But unless "adopted in accordance with the provisions" of law allowing the Board to promulgate regulations, "[n]either the Board nor the Chancellor may administer or enforce" any recommendation. *See* Cal. Cmty. Colls., Procedures and Standing Orders of the Board of Governors (Dec. 2022) ch. 2, § 200, https://www.cccco.edu/-/media/CCCCO-Website/docs/procedures-standing-orders/december-2022-procedures-standing-ordersv2-a11y.pdf?la=en&hash=FF692A0AE8ACC8FE6BB2A4D75018302005A8A4D6 (last visited Nov. 28, 2023). Thus, while districts are "strongly" encouraged to review and use the Chancellor's recommendations "as a reference", no district is required to follow their specific provisions.

Despite the non-enforceable nature of the Chancellor's recommendations to the district, the Findings and Recommendations use their language to conclude that they somehow "invalidate protected expressions of speech." F&R at 37. But the recommendations—directed to districts—do nothing of the sort; instead, they only give guidance to districts as to how they might promulgate their own policies. Because the Chancellor's recommendations do not "invalidate speech," the Magistrate Judge's reliance on their language to support the Findings and Recommendations is fundamentally flawed and should be rejected.

**VIII. THE COURT SHOULD NOT ADOPT THE RECOMMENDATION TO DENY THE CHANCELLOR'S MOTION TO DISMISS.**

The Magistrate Judge recommends that Chancellor Christian's motion to dismiss under Federal Rule of Civil Procedure 12 should be denied given that he "substantially addressed and dismissed the same arguments" that were made in the Chancellor's opposition to Johnson's motion for preliminary injunction. (F&R at 40.) As shown above, the grounds on which the Findings and Recommendations are based are fundamentally flawed, misinterpreting facts and the breadth and meaning of Education Code section 87732 and 87735 and California Code of Regulations title 5, section 51200, 51201, 53425, 53601, 53602, and 53605. As discussed above, Chancellor Christian plays no role in applying these Education Code sections, and the regulations articulate the Board's position concerning diversity, equity, inclusion, and accessibility, again imposing no mandatory duties on Johnson. For all these reasons, Chancellor Christian objects to

the recommendation that the motion to dismiss be denied, and urges this Court to reject it and dismiss the action against her.

## CONCLUSION

The preliminary injunction proposed by the Findings and Recommendations is overly broad and misconstrues the regulations in question. Because they are based on misinterpretations of both law and facts, Chancellor Christian respectfully requests that the Court reject them and instead deny Johnson's motion for preliminary injunction and grant Chancellor Christian's motion to dismiss.

Dated: November 28, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General

/s/ *Jay C. Russell*
JAY C. RUSSELL
JANE E. REILLEY
Deputy Attorneys General
*Attorneys for Sonya Christian, in her official capacity as Chancellor of the California Community Colleges*

SA2023303989
43973130.docx

14

Def. Christian's Objs. to Magistrate Judge's Findings and Recommendation (1:23-cv-00848-ADA-CDB)

# CERTIFICATE OF SERVICE

Case Name: **Johnson, Daymon v. Watkin, Steve, et al.**   Case No. **1:23-cv-00848-ADA-CDB**

I hereby certify that on November 28, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANT SONYA CHRISTIAN'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 28, 2023, at San Francisco, California.

M. Mendiola
Declarant

*[Signature]*
Signature

SA2023303989
43973237.docx