Jesse J. Maddox, Bar No. 219091
jmaddox@lcwlegal.com
David A. Urban, Bar No. 159633
durban@lcwlegal.com
Olga Y. Bryan, Bar No. 298969
obryan@lcwlegal.com
Morgan J. Johnson, Bar No. 345620
mjohnson@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704
Telephone:     559.256.7800
Facsimile:     559.449.4535

Attorneys for Defendants STEVE WATKIN; et al.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA - BAKERSFIELD

| | |
|---|---|
| DAYMON JOHNSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STEVE WATKIN, in his official capacity as Interim President, Bakersfield College; et al.;,<br><br>　　　　Defendants. | Case No.:  1:23-cv-00848 ADA-CDB<br><br>Complaint Filed: June 1, 2023<br>FAC Filed: July 6, 2023<br><br>**OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

12247468.8 KE020-114

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................8

II.   FACTUAL BACKGROUND ..................................................................8

III.  STANDARD OF REVIEW FOR MAGISTRATE JUDGE'S
RECOMMENDATION ..........................................................................8

IV.  THE RECOMMENDATION IGNORES JOHNSON'S FAILURE TO
SATISFY KEY ELEMENTS FOR SUCH EXTRAORDINARY
INJUNCTIVE RELIEF...........................................................................9

    A.    JOHNSON CANNOT OBTAIN A PRELIMINARY INJUNCTION
WITHOUT EVIDENCE SATISFYING PARTICULAR
REQUIREMENTS........................................................................9

    B.    JOHNSON DID NOT SHOW A LIKELIHOOD OF
IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY
INJUNCTIVE RELIEF..................................................................9

    C.    JOHNSON DID NOT SHOW THE BALANCE OF EQUITIES
AND HARDSHIPS TIPS IN HIS FAVOR AND THE
RECOMMENDATION DOES NOT ADDRESS THE ISSUE .........11

    D.    JOHNSON DID NOT REFUTE THAT PRELIMINARY
INJUNCTIVE RELIEF HERE CONTRAVENES THE PUBLIC
INTEREST....................................................................................12

V.   JOHNSON DOES NOT SHOW HE IS LIKELY TO SUCCEED ON THE
MERITS ..................................................................................................13

    A.    JOHNSON DID NOT SHOW STANDING REQUIRED TO
ASSERT HIS PRE-ENFORCEMENT CHALLENGES.....................13

        1.    Johnson Failed to Establish Standing to Challenge Sections
87732 and 87735 or BP 3050......................................................14

            a.    Johnson Did Not Show He Planned to Violate
Sections 87732 and 87735 or BP 3050............................14

            b.    The District Never Warned or Threatened Johnson .........16

            c.    Johnson Cannot Rely on Garrett's Termination for a
History of Past Enforcement............................................18

        2.    Johnson Did Not Show Standing to Challenge the DEIA
Regulations as to the District Defendants in Particular .............19

    B.    JOHNSON DID NOT SHOW A LIKELIHOOD OF SUCCESS ON
HIS FIRST AMENDMENT CHALLENGES TO THE
STATUTES, POLICIES, AND REGULATIONS AT ISSUE.............20

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

2

12247468.8 KE020-114

1.    The Challenges to Application of Sections 87732 and 87735 Lack Merit ................................................................................20

    a.    Johnson's proposed speech in his personal capacity does not necessarily qualify as a matter of public concern ................................................................................21

    b.    Johnson's interest in his proposed speech does not outweigh the District's interest ................................................22

2.    The Challenges to BP 3050 Lack Merit ................................................23

    a.    BP 3050 Does Not Violate the First Amendment ........................23

    b.    BP 3050 is Not Vague Under the Fourteenth Amendment ................................................................................23

3.    The Challenges to the DEIA Regulations Lack Merit ...........................26

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objections to Magistrate Judge's Findings and Recommendations

12247468.8 KE020-114

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Alliance For The Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ............................................................. 11

*Babbitt v. Farm Workers,*
    442 U.S. 289 (1979) .............................................................................. 13

*Bauer v. Sampson,*
    261 F.3d 775 (9th Cir. 2001) ........................................................... 20, 23

*Beram v. City of Sedona,*
    587 F. Supp. 3d 948 (D. Ariz. 2022) .................................................... 18

*Bishop Paiute Tribe v. Inyo Cty.,*
    863 F.3d 1144 (9th Cir. 2017) .............................................................. 17

*Brooks v. Univ. of Wis. Bd. of Regents,*
    406 F.3d 476 (7th Cir. 2005) ................................................................ 21

*Cal. Teachers Ass'n v. Bd. Of Educ.,*
    271 F.3d 1141 (9th Cir. 2001) .......................................................... 24, 25

*Caribbean Marine Servs. Co. v. Baldrige,*
    844 F.2d 668 (9th Cir. 1988) ................................................................ 11

*Castillo v. Ingram,*
    2015 U.S. Dist. LEXIS 73190 (D. Nev. June 5, 2015) ......................... 14

*Chaplinsky v. New Hampshire,*
    315 U.S. 568 (1942) .............................................................................. 25

*Clinger v. N.M. Highlands Univ., Bd. of Regents,*
    215 F.3d 1162 (10th Cir. 2000) ............................................................ 21

*Coalition for Econ. Equity v. Wilson,*
    122 F.3d 718 (9th Cir. 1997) ................................................................ 12

*Connick v. Myers,*
    461 U.S. 138 (1983) ......................................................................... 20, 21

*Dodge v. Evergreen Sch. Dist. #114,*
    56 F.4th 767 (9th Cir. 2022) ................................................................. 18

*Doe v. Univ. of Michigan,*
    721 F. Supp. 852 (E.D. Mich. 1989) ..................................................... 25

*Edge v. City of Everett,*
    929 F.3d 657 (9th Cir. 2019) ................................................................ 24

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

4

*Fogel v. Collins*,
    531 F.3d 824 (9th Cir. 2008) ............................................................................25

*Hernandez v. City of Phoenix*,
    43 F.4th 966 (9th Cir. 2022) ...............................................................21, 22, 23

*Hill v. Colorado*,
    530 U.S. 703 (2000) ...........................................................................................24

*Keyishian v. Board of Regents*
    385 U.S. 589, 603 (1967) ..................................................................................12

*Kiva Health Brands LLC v. Kiva Brands Inc.*,
    402 F. Supp. 3d 877, 898-99 (N.D. Cal. 2019) ...............................................10

*Laird v. Tatum*,
    408 U.S. 1 (1972) ...............................................................................................16

*Lopez v. Candaele*,
    630 F.3d 775 (9th Cir. 2010) ............................................................................13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...........................................................................................13

*Marshall v. Amuso*,
    571 F. Supp. 3d 412 (E.D. Penn. 2021) ...........................................................25

*Maryland v. King*,
    567 U.S. 1301 (2012) .........................................................................................12

*Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*
    611 F. Supp. 415, 427 (C.D. Cal. 1985) ..........................................................10

*Miller for and on behalf of N.L.R.B. v. Cal. Pac. Medic. Ctr.*
    991 F.2d 536, 544 (9th Cir. 1993) ...................................................................10

*Ness v. Comm'r*,
    954 F.2d 1495 (9th Cir. 1992) ............................................................................9

*Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*,
    725 F.2d 537 (9th Cir. 1984) ..............................................................................9

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968) ...........................................................................................20

*Pool v. Vanrheen*,
    297 F.3d 899 (9th Cir. 2002) ............................................................................21

*Porretti v. Dzurenda*
    11 F.4th 1037, 1050 (9th Cir. 2021) .................................................................12

*Protectmarriage.com-Yes on 8 v. Bowen*,
    752 F.3d 827 (9th Cir. 2014) ............................................................................18

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Objections to Magistrate Judge's Findings and Recommendations

12247468.8 KE020-114

*Regents of Univ. of Michigan v. Ewing*
   474 U.S. 214, 226 n.15 (1985) ...........................................................................12

*Rincon Band of Mission Indians v. San Diego Cnty.*,
   495 F.2d 1 (9th Cir. 1974) ................................................................................18

*Sanchez v. City of Phx.*,
   2013 U.S. Dist. LEXIS 10349 (D. Ariz. Jan. 25, 2013) ...................................19

*Shurtleff v. City of Bos.*,
   142 S. Ct. 1583 (2022) .....................................................................................26

*Stormans, Inc. v. Selecky*
   586 F.3d 1109, 1139 (9th Cir. 2009) ..........................................................12, 19

*Sullivan v. Univ. of Wash.*,
   60 F.4th 574 (9th Cir. 2023) .............................................................................20

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .........................................................................................16

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) .........................................................................................13

*Sweezy v. New Hampshire*
   354 U.S. 234, 250 (1957) .................................................................................12

*Swenson v. Potter*,
   271 F.3d 1184 (9th Cir. 2001) ..........................................................................17

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) ..........................................................................17

*United Data Servs., LLC v. FTC*,
   39 F.4th 1200 (9th Cir. 2022) ...........................................................................13

*United Pub. Workers v. Mitchell*,
   330 U.S. 75 (1947) ...........................................................................................16

*United States v. Williams*,
   553 U.S. 285 (2008) .........................................................................................24

*University of California Regents v. Bakke*
   438 U.S. 265, 312 (1978) .................................................................................12

*Voigt v. Savell*,
   70 F.3d 1552 (9th Cir. 1995) ........................................................................20, 21

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1984) .........................................................................................24

*Waters v. Churchill*,
   511 U.S. 661 (1994) .....................................................................................24, 26

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

6

12247468.8 KE020-114

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2020) ................................................................................18

*Winter v. Natural Resources Def. Council, Inc.*,
555 U.S. 7 (2008) .............................................................................................9, 10

**Federal Statutes**

28 U.S.C. § 636(b)(1).............................................................................................9

**State Statutes**

California Education Code § 87732.........................................................................10

California Education Code § 87735.........................................................................10

**Federal Rules**

Federal Rule Civil Procedure 72(b)(3) ...................................................................9

Local Rule 304(f).................................................................................................9

**State Regulations**

California Code Regulations title 5, § 51200.........................................................26

California Code Regulations, title 5 §§ 51200.......................................................19

Objections to Magistrate Judge's Findings and Recommendations

12247468.8 KE020-114

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

## I.   <u>INTRODUCTION</u>

The Magistrate Judge's Findings and Recommendation (ECF No. 70, "Recommendation") provides for a preliminary injunction in favor of Plaintiff Daymon Johnson ("Johnson"), a professor in the Social Sciences Department at Bakersfield College.  The preliminary injunction prohibits the enforcement against him of Board Policy 3050 relating to civility and prohibits him from being evaluated under California's new Diversity, Equity, Inclusion, and Accessibility ("DEIA") regulations now applicable to all community college faculty in the State.  The preliminary injunction also applies to the State Chancellor of the Community Colleges, Sonya Christian, whose office has been responsible for developing the regulations over the last several years.  The preliminary injunction is improper because Johnson lacks standing to obtain federal judicial relief as to his employment under the circumstances.  He is an employee in good standing at the District who cannot show the imminent irreparable harm necessary for him to obtain the "extraordinary" remedy of preliminary injunctive relief, he does not have standing to assert his pre-enforcement challenges at issue, and his constitutional free speech challenges ultimately do not have a likelihood of success.  The Trustees and Administrators of the Kern Community College District (the "District") named as individual defendants in this matter[1] object to the Recommendation for the reasons set forth herein.[2]

## II.   <u>FACTUAL BACKGROUND</u>

Given the Court's page limitations, the District Defendants respectfully refer this Court to the Factual Background section of their Motion to Dismiss (ECF No. 44, pp. 10-12).

## III.   <u>STANDARD OF REVIEW FOR MAGISTRATE JUDGE'S RECOMMENDATION</u>

In reviewing a Magistrate Judge's findings and recommendations on a motion for preliminary injunction, a District Court Judge must make a *de novo* determination of any portion of a Magistrate Judge's recommended disposition to which a timely objection is filed.  28 U.S.C.

---

[1] The above-captioned counsel represents each Defendant, except Sonya Christian.  These Defendants include the following sued in their official capacity: Steve Watkin, Richard McCrow, Thomas Burke, Romeo Agbalog, John S. Corkins, Kay S. Meek, Kyle Cater, Christina Scrivner, Nan Gomez-Heitzeberg, and Yovani Jimenez (collectively the "District Defendants").

[2] The District Defendants respectfully incorporate herein each objection in the concurrently filed Objections to the Magistrate's Recommendation on District Defendants' Motion to Dismiss.

12247468.8 KE020-114

§ 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Rule 304(f).  *De novo* review means the Court must consider the matter anew, as if no decision previously had been rendered.  *Ness v. Comm'r*, 954 F.2d 1495, 1497 (9th Cir. 1992).  The District Court Judge is free to substitute their own view for that of the Magistrate Judge without making any threshold finding.  *Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc*., 725 F.2d 537, 546 (9th Cir. 1984).

## IV.   **THE RECOMMENDATION IGNORES JOHNSON'S FAILURE TO SATISFY KEY ELEMENTS FOR SUCH EXTRAORDINARY INJUNCTIVE RELIEF**

> *As explained in sections IV.A through IV.D, the District Defendants object to the Recommendation's abbreviated analysis of the preliminary injunction factors and its finding that Johnson has carried his burden as to all four factors. (ECF No. 70 at p. 39:2-9.)*

### A.   **JOHNSON CANNOT OBTAIN A PRELIMINARY INJUNCTION WITHOUT EVIDENCE SATISFYING PARTICULAR REQUIREMENTS**

A plaintiff seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The Recommendation focuses overwhelmingly on a single factor, likelihood of success.  (ECF No. 70 at 39.)  The three remaining *Winter* factors are relegated to a single paragraph of eight lines.  *Id.*  There is no articulated analysis of the factors; instead, the Recommendation reasons, "[t]hese remaining factors are thoroughly intertwined with considerations already addressed above regarding the merits of Plaintiff's claims."  *Id.*  There is only a conclusory statement as to "irreparable injury."  *Id.*  The lack of any analysis on mandatory *Winter* factors constitutes error, warranting rejection of the Recommendation.

### B.   **JOHNSON DID NOT SHOW A LIKELIHOOD OF IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF**

In order to prevail at the preliminary injunction stage, a plaintiff must make a "clear showing" of their injury and that they are entitled to the injunction.  *Winter*, 555 U.S.  at 22.  The plaintiff must show that "irreparable injury is *likely* in the absence of an injunction."  *Id.* (emphasis in original).  A plaintiff's "*long delay* before seeking a preliminary injunction implies a

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

9

lack of urgency and irreparable harm." *Miller for and on behalf of N.L.R.B. v. Cal. Pac. Medic. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (emphasis added). Courts in this Circuit have found unexplained delays of only several months to indicate absence of irreparable harm. *See Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*, 611 F. Supp. 415, 427 (C.D. Cal. 1985); *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 898-99 (N.D. Cal. 2019).

The Recommendation does not address *at all* Johnson's delay in seeking relief as to BP 3050 and California Education Code sections 87732 and 87735.[3] That delay has been so long – more than a year – that it precludes relief. A colleague accused Johnson of bullying in September 2021, and an Administrative Determination, that was in Johnson's favor, issued in February 2022. (ECF No. 26-2, ¶ 19; ECF No. 26-8.) He filed this lawsuit over a year later, claiming there is an exigency warranting injunctive relief, but there clearly is none. Johnson is in good standing at the District, as articulated by Chancellor Burke in his declaration. (*See* ECF No. 43-1, ¶¶ 1-2.)

Even aside from delay, the Recommendation does not squarely address that the evidence Johnson presented does not meet the standard for showing irreparable harm. Irreparable harm for preliminary injunctive relief is not the same as allegedly threatened harm for Article III standing. The plaintiff must show that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 20 (emphasis in original). A mere "possibility of irreparable harm" is not enough and "is inconsistent" with a preliminary injunction's status as an "extraordinary remedy." *Id.*

The Recommendation repeatedly uses terms synonymous with "possibility" in evaluating whether sections 87732 and 87735, BP 3050, and the new DEIA regulations will be enforced against Johnson: "Plaintiff has presented ample evidence of his intent to engage in speech and conduct that Defendants *could* conclude is inconsistent with Cal. Educ. Code §§ 87732 and 87735." (ECF No. 70 at 19 (emphasis added).) As to BP 3050, the Recommendation concludes: "Plaintiff has expressed an intent to engage in speech that the District *may deem* to be in violation of BP 3050." (*Id.* at 20 (emphasis added).) These determinations are far from identifying the "likely" harm *required* to satisfy the irreparable harm element. *Winter*, 555 U.S. at 20. Instead, the language of "could" and "may deem" axiomatically fails to meet the standard. And these are

---

[3] Unless specified otherwise, all future statutory citations refer to the California Education Code.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

the only determinations potentially relevant to irreparable harm as to sections 87732 and 87735 or BP 3050 in the decision.  *See Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("Under *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction.") (emphasis in original).

The Recommendation's determination of likelihood of harm also has flaws with regard to the enforcement of the DEIA regulations.  The Recommendation uses the phrase "likely" in assessing potential application, but the determination of what will happen is overly speculative: "it is likely that *at some point* Plaintiff will *face consequences* if he does not adhere to *whatever* competencies and criteria are imposed on him through the DEIA regulations."  (ECF No. 70 at 23 (emphasis added).)  The use of the phrase "at some point" dilutes the likelihood ascertained by the Magistrate Judge, as does the use of the phrase "face consequences," which amounts to a concession that the DEIA regulations are not disciplinary.  There is no identification of what the "consequences" of Johnson's proposed teaching would be – it could include coaching, recommended modifications in teaching, or even use of Johnson's critiques (if well-founded) in existing local processes, consistent with the State regulations.  "Consequences" likely to occur "at some point" based on "whatever competencies and criteria" are ultimately adopted constitutes the Recommendation's conclusion based on the evidence reviewed, and it falls short of *likely* actual harm necessary to invoke the "extraordinary" remedy of preliminary injunctive relief.  *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.").

## C.   JOHNSON DID NOT SHOW THE BALANCE OF EQUITIES AND HARDSHIPS TIPS IN HIS FAVOR AND THE RECOMMENDATION DOES NOT ADDRESS THE ISSUE

The Recommendation does not analyze the balance of equities and hardships factor, and instead incorporates other sections of its Recommendation.  (ECF No. 70 at 39.)  The Recommendation did not consider that there is no hardship on Johnson in declining injunctive relief because no exigency exists; he is in good standing at the District.  (ECF No. 43-1, ¶¶ 1-2.)

11

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

There is significant hardship to the District Defendants in a preliminary injunction because they will potentially have to pay attorneys' fees despite doing absolutely nothing wrong.[4]   Also, the Recommendation does not recognize the inherent irreparable harm to the *District Defendants* of preliminary injunctive relief.  (See ECF No. 43 at 19-20.)  "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997).

### D.    JOHNSON DID NOT REFUTE THAT PRELIMINARY INJUNCTIVE RELIEF HERE CONTRAVENES THE PUBLIC INTEREST

Plaintiffs must also establish that the public interest warrants a preliminary injunction. Where a party requests an injunction enjoining enforcement of state law, like here, the public interest is clearly involved.  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009).  The Recommendation does not consider the ways the District Defendants explained that a preliminary injunction harms the public interest, and overwhelmingly support denial.[5]  The District Defendants explained that Johnson's First Amendment speech rights are diminished in contrast to those of members of the public generally, because Johnson accepted work as a public employee. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Demers v. Austin*, 746 F.3d 402, 413 (9th Cir. 2014).  In addition, his demand that this Court intervene – in an extremely significant way – in the management of the District, and by extension the California Community College system, infringes on the institutional academic freedom rights of both.  *See Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 226 n.12 (1985) (citing *Keyishian v. Board of Regents,* 385 U.S. 589, 603 (1967)); *Sweezy v. New Hampshire,* 354 U.S. 234, 263 (1957) (Frankfurter, J., concurring in result); *University of Cal. Regents v. Bakke,* 438 U.S. 265, 312 (1978) (opinion of Powell, J.).

---

[4] Indeed, Johnson has denied emphatically that he is asserting any type of free speech retaliation claim as to the District's investigation of the bullying complaint against him.  These same considerations apply to preliminary injunctive relief as to the DEIA regulations.  (See ECF No. 43 at 19-20.)

[5] "The third and fourth factors of the preliminary-injunction test—balance of equities and public interest— merge into one inquiry when the government opposes a preliminary injunction." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021).  These Objections treat them separately for purposes of organization, but all the arguments for each element support the other as well.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

12

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

# V.    JOHNSON DOES NOT SHOW HE IS LIKELY TO SUCCEED ON THE MERITS

## A.    JOHNSON DID NOT SHOW STANDING REQUIRED TO ASSERT HIS PRE-ENFORCEMENT CHALLENGES

Johnson brings pre-enforcement "as applied" challenges to sections 87732 and 87735 and BP 3050.  Plaintiffs bringing a pre-enforcement challenge must still satisfy all three elements of standing: "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury will be redressed by a favorable decision.'"  *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 157-58 (2014) ("*SBA List*").  A sufficient injury must be "concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

In the pre-enforcement context, the "injury in fact" element of standing requires a plaintiff to show they possess "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder."  *Babbitt v. Farm Workers,* 442 U.S. 289, 298 (1979).  The Ninth Circuit has established a three-factor test to determine whether plaintiffs have shown a "credible threat" of "imminent" enforcement: "[1] whether the plaintiffs have articulated a concrete plan to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute."  *United Data Servs., LLC v. FTC,* 39 F.4th 1200, 1210 (9th Cir. 2022).  Where plaintiffs cannot make this showing, they fail to show injury in fact to support standing.  *Lopez v. Candaele*, 630 F.3d 775, 792 (9th Cir. 2010).

Defendants' Opposition (ECF No. 43) and Motion to Dismiss ("Motion," ECF No. 44) established that all three factors weigh against standing, and thus, Johnson cannot establish a likelihood of success.  *See Lopez*, 630 F.3d at 794 (vacating preliminary injunction after finding plaintiff lacked standing to bring pre-enforcement challenge).

/ / /

/ / /

/ / /

13

12247468.8 KE020-114

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1. **Johnson Failed to Establish Standing to Challenge Sections 87732 and 87735 or BP 3050**

*As explained in sections V.A.1.a through V.A.1.c, the District Defendants object to the Recommendation's conclusion that Johnson demonstrated "injury in fact" as to sections 87732 and 87735 and BP 3050. (ECF No. 70 at pp. 18-20.)*

   a. **Johnson Did Not Show He Planned to Violate Sections 87732 and 87735 or BP 3050**

With respect to a "concrete plan to violate the law in question," the District Defendants established that Johnson has none. To sufficiently articulate a concrete plan, Johnson was required to provide details about his future speech, such as "when, to whom, where, or under what circumstances" it will occur. *Lopez,* 622 F.3d at 786-87. However, the only plan Johnson attempted to articulate in his Declaration was a description of what he intends to teach in the future, including texts he contends are incompatible with the current academic norms. (See ECF No. 26-2 at ¶¶ 100-105.) Johnson failed to explain how teaching those texts would violate any portion of section 87732 or 87735 or BP 3050. Without these details, it is impossible for the Court to determine whether Johnson contends his teaching would constitute "immoral or unprofessional conduct" or "unfitness for service," which are distinct grounds for discipline under section 87732, or how his future instruction could be interpreted as "verbal forms of aggression, threat, harassment, ridicule, or intimidation" under BP 3050. The remainder of Johnson's Declaration describes speech he *avoids* because he speculates the District would deem it a violation sections 87732 and 87735. This is insufficient. *See Castillo v. Ingram*, 2015 U.S. Dist. LEXIS 73190, at *7 (D. Nev. June 5, 2015) (plaintiff failed to allege even a hypothetical plan to violate statute where he indicated he has gone to great lengths to avoid a potential violation).

Although the Recommendation finds Johnson presented "ample" evidence of a concrete plan to violate sections 87732 and 87735, the Recommendation does not identify any such evidence of Johnson's intent to engage in "similar 'political speech' that Garrett was, in part, punished for." (ECF No. 70 at p. 19:24-27.) The Recommendation concluded that Garrett was disciplined for "pure political speech": "(1) Garrett's May 19, 2019, Op-Ed suggesting certain terms such as 'Cultural Marxism' weren't 'hate speech', (2) Garrett's criticism of the Bakersfield

14

1    curriculum committee and the 'Cesar E. Chavez Leadership Certificate and Landmarks in

2    California courses,' and (3) some of Garrett's participation in media, and social media." (ECF

3    No. 70, p. 19:14-18.)  Significantly, the Recommendation reaches this conclusion without

4    applying the *Pickering* balancing test for government employee speech.

5          The Recommendation does not, however, identify any such "similar 'political speech'"

6    that Johnson intends to engage in.  Johnson's Declaration concedes that he used the term

7    "Cultural Marxism" at least 15 times on RIFL's Facebook page, with no resulting discipline, and

8    alleges no intention to use that term in the future.  (ECF No. 26-2, ¶¶ 39-40.)  Even if he had

9    stated a plan to do so, the District did not discipline Garrett simply for using the term "Cultural

10   Marxism." (ECF No. 26-10 at p. 7.)  The District disciplined Garrett for a pattern of conduct that

11   interfered with and disrupted campus operations, which the Recommendation does not evaluate.

12   Even if the Court interprets this charge otherwise, the fact that neither Johnson nor Garrett were

13   ever disciplined for discussing "Cultural Marxism" in other contexts completely negates the idea

14   that Garrett was punished simply for using that term in his Op-Ed piece.

15         Similarly, Johnson does not state that he intends to criticize the Bakersfield curriculum

16   committee and the "Cesar E. Chavez Leadership Certificate and Landmarks in California

17   courses."  Rather, he concedes he has already done so, with no resulting discipline.  (ECF No. 26-

18   2, ¶ 46.)[6]  Although the Recommendation does not address this fact, it negates any assumption

19   that the District punished Garrett simply for criticizing the courses, as opposed to the disruptive

20   manner in which did so.  (ECF No. 26-10 at p. 9-10.)  Neither the Recommendation nor

21   Johnson's Declaration identify any other criticism of the curriculum Johnson intends to espouse.

22   (See ECF Nos. 26-2, 70.)[7]

---

[6] In fact, Johnson describes a variety of "controversial" speech he has engaged in without any resulting discipline. (ECF No. 26-2 at ¶ 3 [no discipline for promoting RIFL events]; ¶ 4 [no discipline for past voting on EODAC proposals]; ¶ 12 [no discipline for expressing opposing views on DEI issues]; ¶¶ 39-40 [no discipline for Johnson or Garret for 18 Facebook posts about "Cultural Marxism"]; ¶ 46 [no discipline for criticizing courses]; ¶ 50 [no discipline for not censoring RIFL Facebook post]; ¶ 59 [no discipline for expressing views on transgender issues]; ¶¶ 100-105 [no discipline for teaching topics that criticize the "DEIA and anti-racist/racist ideology"].)  Despite sharing Garrett's views and freely expressing them in the past, Johnson presents no evidence that he has ever been investigated or disciplined for such speech.

[7] Neither Johnson's Declaration nor the Recommendation identify any "participation in media, and social media" similar to Garrett's that Johnson plans to engage in. The remainder of the speech identified in

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

With respect to BP 3050, the Recommendation finds that Johnson "has expressed an intent to engage in speech that the District may deem to be in violation of BP 3050," but, again, does not identify any such speech.  (ECF No. 70 at p. 20:9-10.)  Neither Johnson's Declaration nor the Recommendation identify any of Johnson's planned speech that the District would interpret as "verbal forms of aggression, threat, harassment, ridicule, or intimidation." Nonetheless, the Recommendation suggests, "[Johnson] already has been investigated for engaging in speech that appears to be contrary to BP 3050."  (ECF No. 70 at p. 20:12-13.)  But as explained in Section V.A.1.b, there is no showing that the only investigation at issue – the District's investigation of Professor Bond's bullying complaint against Johnson – had anything to do with BP 3050.  Even if the Bond investigation could be interpreted as resulting from "speech that appears to be contrary to BP 3050," Johnson alleges no intention to engage in any speech that could be interpreted as bullying or harassing his colleagues in the future.  Thus, the Recommendation provides no basis to conclude that any of Johnson's future speech would "appear[] to be contrary to BP 3050."

**b.    The District Never Warned or Threatened Johnson**

Defendants have established that none of the District's communications amounted to a specific warning or threat to initiate any proceedings against Johnson.  Neither "an implied threat" nor a "general threat" to enforce the regulations at issue meet the standard necessary to show injury in fact.  *Lopez*, 630 F.3d at 789; *United Pub. Workers v. Mitchell*, 330 U.S. 75, 88 (1947).  A plaintiff merely stating they face "serious civil penalties" is insufficient to establish that an injury is actually "imminent or realistic."  *United Data Servs.,* 39 F.4th at 1211.

Johnson's Declaration fails to identify any specific warning or threat to initiate proceedings against him for violating section 87732 or 87735 or BP 3050.  At most, Johnson

---

Johnson's Declaration is either speech he "wants" to engage in, without a concrete plan for doing so, or speech that he refrains from engaging in.  (*See* ECF No. 26-2.)  However, a "vague desire" or "some day intentions" to violate the regulations at issue, without any description of a concrete plan to do so, is insufficient to satisfy the imminent injury requirement.  *Summers v. Earth Island Inst*., 555 U.S. 488, 496 (2009) (citing *Lujan*, 504 U.S. at 564).  Similarly, "self-censorship alone is insufficient to show injury." *Lopez,* 630 F.3d at 792 (citing *Laird v. Tatum,* 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm . . . .")).

identifies only nonactionable "implied" threats (Defendant Corkins' statement that the District would "cull" bad actors, then-President Dadabhoy's holiday email about core values) or "generalized threats of prosecution" (the District's determination of Professor Bond's complaint), none of which show a reasonable likelihood of enforcement.  *Bishop Paiute Tribe v. Inyo Cty.,* 863 F.3d 1144, 1154 (9th Cir. 2017); *Lopez*, 630 F.3d at 789.

The Recommendation rightly lends no credence to Johnson's claims that Defendant Corkins' December 12, 2022, embellished statement to "'cull' Johnson[8] and 'take [him] to the slaughterhouse'" or the "disciplinary notice to Garrett" amount to a warning or threat to initiate proceedings against him.  (ECF No. 56 at p. 15:9-20; ECF No. 49 at p. 8:18-26.)  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1140 (9th Cir. 2000) (to be actionable, "the threat of enforcement must at least be credible, not simply imaginary or speculative.").  However, the Recommendation finds that Johnson has already "been investigated for engaging in speech that appears to be contrary to BP 3050" and "warned by District Defendants that if he posts on social media, like Garrett had, '[t]he District will investigate any further complaints of harassment and bullying and, if applicable, will take appropriate remedial action including but not limited to any discipline determined to be appropriate.'"  (ECF No. 70 at p. 19:27-20:2; 20:12-13.)[9]  These findings are speculative and inconsistent with the evidence.

The Administrative Determination does not warn Johnson that he will be investigated "if he posts on social media."  (*See* ECF No. 26-8.)  The Administrative Decision is clear: "[t]he District will investigate any further complaints of harassment and bullying," as required by law.

---

[8] Trustee Corkins did not reference Johnson, explicitly or impliedly.

[9] The only investigation Johnson identified in his Declaration related to Professor Bond's complaint against him.  (ECF No. 26-2 at ¶¶ 17-21.)  Professor Bond's complaint included allegations of harassment, bullying, doxing, and retaliation, among other things.  *Id.*  The District was obligated by law and its policies to investigate the complaint.  *Swenson v. Potter*, 271 F.3d 1184, 1192-93 (9th Cir. 2001) (employers are obligated to investigate complaints from employees about other employees); *see also* Administrative Procedure 3435, Discrimination and Harassment Complaints and Investigations ("The District shall promptly investigate every complaint and claim of harassment or discrimination."), available at https://www.kccd.edu/board-trustees/_documents/board-policy/chapter-3/AP_3435.pdf.  An independent investigator concluded there were no grounds for discipline against Johnson.  (ECF No. 26-8.)  The subsequent Administrative Determination does not state that Johnson violated, or was accused of violating, sections 87732 or 87735, or BP 3050.  *Id.*  Also, Johnson's Declaration fails to establish the investigation had anything to do with sections 87732 or 87735, or BP 3050.  (ECF Nos. 26-2, 26-8).

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave., Suite 310
Fresno, California 93704

Objections to Magistrate Judge's Findings and Recommendations

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave., Suite 310
Fresno, California 93704

1  *Id.* The law is settled that this type of statement does not amount to a specific warning by the

2  District that it will enforce sections 87732 and 87735 or BP 3050 against Johnson.[10]

3  The Recommendation does not reconcile how "informal measures" (ECF No. 70 at p.

4  20:14-26) could suffice as "a specific warning or threat to initiate proceedings" in the context of

5  Johnson's pre-enforcement challenge. *United Data Servs.*, 39 F.4th at 1210. Without a specific

6  threat of enforcement, Johnson's allegations are too attenuated to confer standing. *Thomas*, 220

7  F.3d at 1140 ("The threat of enforcement based on a future violation - which may never occur - is

8  beyond speculation").[11]

9            **c.    Johnson Cannot Rely on Garrett's Termination for a History of**

10                   **Past Enforcement**

11  The pleadings in this case establish that Garrett's termination does not support a history of

12  past enforcement of sections 87732 and 87735 or BP 3050. For a threat to be credible based on

13  allegations of past enforcement, a plaintiff must allege "[p]ast enforcement against the *same*

14  *conduct."* SBA List, 573 U.S. at 164 (emphasis added). Where a plaintiff points to the

15  government's action against another, the question becomes whether there is sufficient similarity

16  of positions between the plaintiff and the third party. *Sanchez v. City of Phx.,* 2013 U.S. Dist.

---

[10] *United Pub. Workers*, 330 U.S. 75, 88 (a general threat by officials to enforce those laws which they are charged to administer does not show injury in fact); *Rincon Band of Mission Indians v. San Diego Cnty.*, 495 F.2d 1, 4 (9th Cir. 1974) (allegations that members of sheriff's office informed plaintiffs gambling was illegal under county law and they would enforce all county laws was "clearly of a general nature"); *Beram v. City of Sedona*, 587 F. Supp. 3d 948, 955 (D. Ariz. 2022) (verbal warning of potential prosecution did not constitute a specific warning or threat). Citing *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2020), the Recommendation finds the Bond investigation, amounts to an "informal measure" that violates the First Amendment. (ECF No. 70 at p. 20:14-26.) The Recommendation concludes, "a person of ordinary firmness would be deterred from continuing to post on Facebook if such action required them to be investigated and to retain counsel." (ECF No. 70 at p. 20:23-25.) But this is the standard for First Amendment *retaliation* cases, which both Johnson and the Recommendation assert this is not. (ECF No. 70 at p. 40:5-12.) *See Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 778 (9th Cir. 2022) (plaintiffs asserting First Amendment *retaliation* must establish an adverse employment action by proving the employer's action was reasonably likely to deter them from engaging in constitutionally protected speech).

[11] Absent an actual threat of prosecution, a plaintiff may establish injury by "demonstrat[ing] that a threat of potential enforcement will cause him to self-censor, and not follow through with his concrete plan to engage in protected conduct." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014).

LEXIS 10349, at *13 (D. Ariz. Jan. 25, 2013) (citing *Stormans,* 586 F.3d at 1125).[12]

### 2. Johnson Did Not Show Standing to Challenge the DEIA Regulations as to the District Defendants in Particular

*The District Defendants object to the Recommendation's conclusion that Johnson has established "injury in fact" to challenge the District Defendants' implementation of the DEIA regulations (ECF No. 70 at pp. 21-24) for the following reasons.*

Johnson did not satisfy the pre-enforcement standing requirements to challenge the DEIA regulations, Cal. Code Regs., tit. 5 §§ 51200, 51201, 53425, 53601, 53602, 53605, and 53601. Again, Johnson's evidence does not show any "concrete plan to violate" those regulations, despite the many pages of Johnson's declaration criticizing them. *United Data Servs.*, 39 F.4th at 1210. Although Johnson articulates why he disagrees with different portions of the regulations and will not conform his speech to them, his statements are ultimately conclusory. (*E.g.*, ECF No. 26-2, ¶ 100 ("Almost everything I teach violates the new DEIA requirements – not just by failing to advance the DEIA and anti-racist/racist ideology, but also by criticizing it."). He does not detail specific instances of how he will infringe the regulations, and nothing specific that could lead to some form of discipline. (*Id.*, ¶¶ 60-100.) As to threats of enforcement, there are none – neither the Bond investigation nor Garrett's termination involved the DEIA regulations.

Despite finding a sufficient concrete plan, the Recommendation does not identify anything specific Johnson will say in his instruction that would violate the DEIA regulations. (*See* ECF No. 70 at 22-23.) Much of what Johnson articulates is what he "does not want" or "does not wish" to say or do. (ECF 26-2, ¶¶ 73-100.) Indeed, the Recommendation finds only generally that it "appears" Johnson intends to criticize the regulations in the classroom. (ECF No.

---

[12] The Recommendation recognizes that "a substantial amount of Garrett's conduct allegedly went beyond pure political speech." (ECF No. 70 at p. 19:19-23.) Nonetheless, the Recommendation concludes that Johnson's fear of prosecution is reasonable "based on his own experience and that of [Professor Garrett]." (ECF No. 70 at p. 19:19-23; 20:3-4.) Garrett's termination, the only instance of past enforcement Johnson identifies, has no bearing on the standing analysis. Johnson's "concrete plan" to violate the laws at issue involves nothing more than teaching certain texts that Johnson contends are contrary to the DEIA ideology. In contrast, none of the charges against Garrett relate to his instruction in the classroom. Rather, Garrett was terminated for a pattern of half-truths and actions that disrupted the District's operations. While Johnson may "share[] many of" Garrett's views and values, he does not allege he will engage in the "same conduct" that led to Garrett's termination. *SBA List,* 573 U.S. at 164.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Objections to Magistrate Judge's Findings and Recommendations

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

1   70 at 22-23.)[13]  The paragraph of Johnson's Declaration that the Recommendation references

2   indicates what Johnson will say, but it is utterly conclusory.  (ECF No. 26-2, ¶ 100.)[14]

**B.      JOHNSON DID NOT SHOW A LIKELIHOOD OF SUCCESS ON HIS
FIRST AMENDMENT CHALLENGES TO THE STATUTES, POLICIES,
AND REGULATIONS AT ISSUE**

*As set forth in sections V.B.1.a-b and V.B.2.a, the District Defendants object to the
Recommendation's conclusion that Johnson's "interest in expressing himself in his personal
capacity, and through his 'scholarship or teaching' overrides" the interest in regulating
Johnson's speech through sections 87732, 87735, and BP 3050. (ECF No. 70 at p. 33:7-16.)*

**1.      <u>The Challenges to Application of Sections 87732 and 87735 Lack Merit</u>**

The Recommendation did not adequately analyze Johnson's speech under the *Pickering*

balancing test.[15]  It errs by concluding Johnson's proposed speech automatically qualifies as a

matter of public concern and by not considering "the government's interest in the effective and

efficient fulfillment of its responsibilities to the public" in concluding that Johnson's interest in

that speech outweighs the District Defendants' interest.  *Voigt v. Savell,* 70 F.3d 1552, 1561 (9th

Cir. 1995); *Bauer v. Sampson,* 261 F.3d 775, 785 (9th Cir. 2001).  The *Pickering* test has two

parts.  First, the employee must show that his or her speech addressed "matters of public

concern."  *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *see Connick v. Myers*, 461 U.S.

138, 146 (1983).  Second, if the employee meets their initial burden, the burden shifts to the

---

[13] Johnson could point out that this case in part involves compelled speech contentions, so that refusing to speak can support a "concrete plan."  But even then, Johnson's attesting to what he does not "wish" or "want" to say does not satisfy the plain terms of the requirement, because he does not actually express an intention to conduct himself this way.  *Lopez*, 630 F.3d at 786 (plaintiff must specify "with some degree of concrete detail" that they "intend to violate" the standard); *United Data Servs.*, 39 F.4th at 1210 (same).

[14] Also, although Johnson's declaration provides significant discussion of his beliefs and principles, he is contrasting them not with the actual text of the DEIA regulations but with the Competencies and Criteria document (Exhibit A to his Declaration).  This is guidance only, not mandatory, and his District may choose not to implement them fully or to incorporate them in the evaluation process (or otherwise) in a way that Johnson does not anticipate.  How the District will interpret the regulations, including how actual reviews will interpret the regulations, is *not in the record*.  The evidence thus presents a worst case scenario for a plaintiff trying to prove standing by a "concrete plan" to violate particular District standards:  Johnson's evidence both fails to present what the challenged standards actually are and fails to specify what Johnson will actually say.  This Court should find there is no standing under these circumstances.

[15] The Magistrate Judge correctly concluded that Johnson's work on the screening committees and EODAC is speech pursuant to Johnson's official duties as a public employee, and is not "teaching or scholarship." *Sullivan v. Univ. of Wash.*, 60 F.4th 574, 582 n. 6 (9th Cir. 2023).  Therefore, the District Defendants only challenge the Magistrate Judge's *Pickering* analysis as to Johnson's speech in his personal capacity and his speech pursuant to his scholarship and teaching.

---

20

public employer to show that its "legitimate administrative interests" outweigh the employee's interest in freedom of speech.  *Pool v. Vanrheen,* 297 F.3d 899, 906 (9th Cir. 2002).

> **a.    Johnson's proposed speech in his personal capacity does not necessarily qualify as a matter of public concern**

Johnson's proposed speech falls into two main categories: speech made in his personal capacity – Facebook posts, editorials, media appearances, event organization – and speech made as a professor with the District – class curriculum and pedagogy.  (ECF No. 70 at 30.)

However, not all speech by a teacher or faculty member addresses a matter of public concern.  If a faculty member "speaks or writes about what is properly viewed as essentially a private grievance, the First Amendment does not protect him or her from any adverse reaction." *Demers,* 746 F.3d at 416; *Hernandez v. City of Phoenix,* 43 F.4th 966, 977 (9th Cir. 2022).  Also, speech will qualify as a matter of private concern if the speaker cloaks their personal, private grievances as "speech about academic organization and governance."  *Demers,* 746 F.3d. at 416-17; *see also Brooks v. Univ. of Wis. Bd. of Regents,* 406 F.3d 476, 480 (7th Cir. 2005); *Clinger v. N.M. Highlands Univ., Bd. of Regents,* 215 F.3d 1162, 1166-67 (10th Cir. 2000).  This is an intensely fact-specific inquiry not suitable for the pre-enforcement context in this case.  *Voigt v. Savell,* 70 F.3d at 1560-61.[16]

Johnson's proposed speech, especially the speech made in his personal capacity, does not automatically qualify as speech on a matter of public concern unless and until the "content, form, and context" of that speech becomes apparent.  *Demers,* 746 F.3d at 415 (citing *Connick,* 461 U.S. at 147-48).  The proposed injunction is too broad as it assumes *all* of Johnson's proposed "social and/or political" speech will meet this intensely fact-based inquiry.  The Recommendation would permit Johnson to engage in unprotected speech on matters of private concern, like Garrett

---

[16] This distinction is one of the central disputes with regard to Garrett's discipline – much of Garrett's purported speech involved flagrant, repetitive, and unfounded complaints lodged against his colleagues and the District that amounted to nothing more than interpersonal grievances.  (ECF No. 70 at 19:19-20 ("The record demonstrates a substantial amount of Garrett's conduct allegedly went beyond pure political speech.").)  The Recommendation acknowledges this distinction, noting that speech about "internal power struggles in the workplace" or made because of a grudge or other private interests may not be a matter of public concern (ECF No. 70 at 32, n. 5), but does not consider or apply it to Johnson's proposed speech. (*See e.g.,* ECF No. 26-8 at pp. 4, 8).

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

12247468.8 KE020-114

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

did, with impunity so long as the speech is phrased in some form as a critique of the District or the DEIA regulations.  If Johnson's speech amounts to personal attacks and "complaints over internal office affairs" against his peers to further "personal employment disputes," that speech will not be on matters of public concern.  *Hernandez*, 43 F.4th at 977; ECF No. 70 at 32, n. 5 (noting "purported internal criticism of Bakersfield College and personal attacks may not constitute matters of public concern").  Yet, the broad Recommendation would protect it.

### b.     Johnson's interest in his proposed speech does not outweigh the District's interest

The Recommendation does not consider the second step of the *Pickering* analysis, which requires the Court to balance the government entity's legitimate interest in regulating public employee speech to efficiently perform its mission with the public employee's interests in commenting on matters of public concern.  *Hernandez*, 43 F.4th at 976.  As the Ninth Circuit cautioned in *Demers*, cases "involving academic speech" are usually "particularly subtle and difficult."  *Demers*, 746 F.3d at 413.  The "nature and strength" of the public interest in academic speech and the interest of an employing academic institution will be difficult to assess, and may involve "a [content-based] judgment by the employing university about the quality of what [the faculty member] has written."  *Demers*, 746 F.3d at 413.

Here, assuming Johnson's speech is on matters of public concern, the District Defendants have a legitimate interest in regulating disruptive speech.  Such conduct can interfere with faculty members' ability to carry out their duties and harm the ability of faculty members to work closely with each other in educating the District's students.  As demonstrated by Garrett's misuse of the District's reporting system, the District's ability to discipline such disruptive behavior by faculty under sections 87732 and 87335 can be necessary.  An injunction prohibiting the District from disciplining Johnson would hamstring the District from protecting its employees and students should Johnson's proposed speech cause disruption on campus.

In conducting the "subtle and difficult" *Pickering* balancing test, the Ninth Circuit considers five factors, with no single factor being dispositive: (1) whether the employee's speech disrupted harmony among co-workers; (2) whether the relationship between the employee and the

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

employer was a close working relationship with frequent contact which required trust and respect in order to be successful; (3) whether the employee's speech interfered with performance of his duties; (4) whether the employee's speech was directed to the public or the media or to a governmental colleague; and (5) whether the employee's statements were ultimately determined to be false. *Bauer*, 261 F.3d at 785. No one, not the District nor the Court, can evaluate these factors until Johnson actually engages in conduct that violates District rules; accordingly, the preliminary injunction the Recommendation describes is clearly overbroad.

### 2. <u>The Challenges to BP 3050 Lack Merit</u>

#### a. BP 3050 Does Not Violate the First Amendment

Johnson's proposed speech does not automatically qualify as a matter of public concern under the first step of *Pickering* balancing, and the Court should refrain from issuing an overbroad injunction that limits the District's ability to respond to Johnson's disruptive speech on matters of private concern. Under the second step of *Pickering* as applied to BP 3050, Johnson's interest in his proposed speech is outweighed by the District's legitimate interest in restricting employee speech "that undermines, interferes with, or is detrimental to the [District's] goals and mission and its relationship with the public." *Hernandez*, 43 F.4th at 982. As with Johnson's challenge to sections 87732 and 87735, the District has a substantial and legitimate interest in addressing disruptions to the work of its faculty. BP 3050 directly advances the District's interest as it imposes a Code of Ethics upon all District employees, including faculty, to treat each other within professional standards, regardless of their beliefs or political ideology. An injunction would give Johnson immunity from District discipline for violations of this Code of Ethics.[17]

#### b. BP 3050 is Not Vague Under the Fourteenth Amendment

*The District Defendants object to the Recommendation's conclusion that BP 3050's use of the term "verbal forms of aggression . . . harassment, ridicule, or intimidation" has a likelihood of being impermissibly vague because it "lacks a commonly understood meaning" and the policy is "broader" than other similar civility policies. (ECF No. 38:4-21.)*

---

[17] For example, Johnson could wield his "social and/or political speech" to berate and harass his faculty peers, creating a hostile work environment, but under the injunction, the District would be powerless to address his misconduct. Under the multi-factor analysis, factors one, two, and three weigh in favor of the District's interest, and factors four and five could support either party's position depending on the particular content, form, and context of Johnson's proposed speech. *Connick*, 461 U.S. at 147-48. On balance, this step favors the District Defendants.

Objections to Magistrate Judge's Findings and Recommendations

The Recommendation stated "verbal forms of aggression" can vary from speaker to speaker and "invites the District to engage in viewpoint discrimination." (ECF No. 70 at 38.) Constitutional vagueness derives from the Due Process Clause of the Fifth and Fourteenth Amendments, requiring statutes provide adequate notice of what behavior the statute proscribes. *United States v. Williams*, 553 U.S. 285, 304 (2008). The statute must "provide a person of ordinary intelligence fair notice of what is prohibited," and must not "authorize[] or encourage[] seriously discriminatory enforcement" through subjective standards. *Id.* Even when regulations restrict expressive activity protected by the First Amendment, vagueness standards do not apply so strictly that the challenged provision must provide "perfect clarity and precise guidance." *Id.*; *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1984). A plaintiff cannot succeed on a facial vagueness challenge if it is clear what the challenged statute proscribes "in the vast majority of its intended applications." *Hill v. Colorado*, 530 U.S. 703, 733 (2000). Furthermore, courts grant public employers more leeway in regulating public employee speech such that restrictions of speech in another context that may be impermissibly vague could otherwise be a constitutional restriction on public employee speech. *Waters v. Churchill*, 511 U.S. 661, 673 (1994) (noting policies governing public employee speech may be framed in language that might be deemed impermissibly vague if applied to the public at large); *Hernandez*, 43 F.4th at 982-83 (same).

In situations where "legitimate uncertainty" exists, the statute's chilling effect on legitimate speech must chill "a *substantial* amount of legitimate speech," not merely "*some* amount of legitimate speech." *Cal. Teachers Ass'n v. Bd. Of Educ.*, 271 F.3d 1141, 1152 (9th Cir. 2001) (emphasis in original). In evaluating whether the chilling effect is substantial, courts will evaluate the plain language of the statute and the context in which the statute operates. *Id.* at 1151, 1154. When a statute combines allegedly ambiguous terms, courts will evaluate whether the meanings of the individual terms are "easily discerned through recourse to a common dictionary" and whether the meaning is clear in the context of the surrounding terms. *Edge v. City of Everett*, 929 F.3d 657, 665 (9th Cir. 2019) (holding the use of "compound terms" does not leave the public "to guess at the meaning of the [compound] term.").

Here, BP 3050 does not have a substantially chilling effect on protected speech, and the

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

term "verbal forms of aggression" is a readily discernable compound term in the context here. First, BP 3050 covers unprotected or minimally protected speech, such as true threats (*see Fogel v. Collins*, 531 F.3d 824, 830 (9th Cir. 2008)), fighting words (*see Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)), and matters of private concern (s*ee Hernandez*, 43 F.4th at 977).  BP 3050 is a conduct policy and Code of Ethics, designed to guide District employees as to what constitutes professional and collegial conduct.  To the extent BP 3050 implicates protected speech at all, it is minimal, not substantial.  *Cal. Teachers Ass'n*, 271 F.3d at 1152.

Furthermore, "verbal forms of aggression" must be read in the appropriate context.  The use of "verbal" is immediately preceded by the use of "physical" which informs ordinary readers that the word "verbal" modifies "aggression, threats, ridicule, and intimidation" in the same way that the word "physical" modifies those words.  Additionally, each modified term has a readily discernable dictionary definition.[18]  The terms also convey objective standards that evaluate whether a reasonable person would interpret physical or verbal conduct as aggressive, threatening, ridiculing, or intimidating based on the factual context, surrounding events, and reaction of listeners.  *Cf. Fogel*, 531 F.3d at 831 (noting an objective, reasonable person standard frames First Amendment true threat analysis).  These facts together convey to the District's employees that verbal conduct similar in kind to physical conduct that displays aggression, threats, ridicule, and intimidation is within the scope of BP 3050.  Even if these terms may be "otherwise imprecise," BP 3050 avoids unconstitutional vagueness by combining these terms to provide "sufficient clarity" to a person of ordinary intelligence.  *Edge*, 929 F.3d at 665.[19]  Indeed,

---

[18] *See e.g.,* Cambridge English Dictionary, https://dictionary.cambridge.org/us/dictionary/english/ (last retrieved Nov. 20, 2023) (defining "aggression" as "spoken or physical behavior that is threatening or involves harm to someone or something" (https://dictionary.cambridge.org/us/dictionary/english/aggression (last retrieved Nov. 20, 2023)); "threat" as "a suggestion that something unpleasant or violent will happen, especially if a particular action or order is not followed" (https://dictionary.cambridge.org/us/dictionary/english/threat (last retrieved November 20, 2023)); "ridicule" as "unkind words or actions that make someone or something look stupid" (https://dictionary.cambridge.org/us/dictionary/english/ridicule (last retrieved on November 20, 2023)); and "intimidation" as "the action of frightening or threatening someone, usually in order to persuade them to do something that you want them to do" (https://dictionary.cambridge.org/us/dictionary/english/intimidation (last retrieved on Nov. 20, 2023)).

[19] The Recommendation relies on two out-of-circuit opinions, *Marshall v. Amuso,* 571 F. Supp. 3d 412 (E.D. Penn. 2021), and *Doe v. Univ. of Michigan*, 721 F. Supp. 852 (E.D. Mich. 1989).  Both cases are distinguishable as they involve vagueness in the context of the public at large rather than the narrower

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

Objections to Magistrate Judge's Findings and Recommendations

the Ninth Circuit has recently found that fairly broad language in a social media policy survived a facial vagueness challenge. *See Hernandez,* 43 F.4th at 981–83 (rejecting vagueness challenges to policy prohibiting speech "detrimental to the mission and functions of the Department").

### 3.   The Challenges to the DEIA Regulations Lack Merit

*The District Defendants object to the Recommendation's conclusion that the District Defendants' interest in imposing the DEIA regulations do not outweigh Johnson's First Amendment rights. (ECF No. 70 at p. 37:6-9.)*

The Recommendation erred in concluding the DEIA Regulations restrict and compel Johnson's speech. First, the Regulations amount to government speech, as Defendant Christian argues. (ECF No. 42, p. 18:12-16; ECF No. 69, p.6-7.) "When the government wishes to state an opinion, to speak for the community, to formulate policies, or to implement programs, it naturally chooses what to say and what not to say." *Shurtleff v. City of Bos.,* 142 S. Ct. 1583, 1589 (2022). "The Constitution therefore relies first and foremost on the ballot box, not on rules against viewpoint discrimination, to check the government when it speaks." *Id.* The Regulations express the Board of Governors' "commitment to diversity and equity in fulfilling the [community college] system's educational mission." Cal. Code Regs. tit. 5, § 51200. They embody the California Community Colleges' opinion, speak for the California Community Colleges community, and help formulate policies ensuring equal educational opportunity for students. The Regulations do not reach Johnson's speech in his personal capacity nor do they restrict Johnson's ability to express his personal views in that capacity through media appearances, editorials, or social media posts. Nor can Johnson rely on non-binding guidance documents, such as the Chancellor's "Diversity, Equity and Inclusion Competencies and Criteria" (ECF No. 26-4), to support his claim that *the DEIA Regulations themselves* somehow compel him to "advocate particular messages." (ECF No. 8, ¶¶ 120-147, pp. 27-30.)

The furthest the DEIA Regulations reach Johnson's speech is potentially in his "teaching and scholarship," but here too Johnson overstates what the Regulations require. The Regulations

---

context of public employee speech under *Pickering. Marshall* concerned the scope of comments the public could make during school board meetings. *Marshall,* 571 F. Supp. 3d at 418-19. *Doe* concerned a university's anti-harassment policy that limited student speech on sexual harassment. *Doe,* 721 F. Supp. at 865-66. These cases do not address the more expansive ability of public employers to restrict public employee speech and should not apply here. *Waters,* 511 U.S. at 673; *Hernandez,* 43 F.4th at 982-83.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

26

12247468.8 KE020-114

simply require faculty members, like Johnson, be evaluated on "demonstrated, or progress toward, proficiency in the locally-developed DEIA competencies."  Cal. Code Regs. tit. 5, § 52510(l).  "Proficiency" is not speech.[20]  Learning is not speech.  Knowledge is not speech.  Johnson can achieve proficiency for purposes of his evaluation without uttering a single word through the quality of his future criticisms and opposition to DEIA ideals and concepts in the classroom.  Indeed, Johnson's proposed teaching and scholarship involves presenting ideas that purport to criticize DEIA ideologies.  (ECF No. 26-2 at ¶¶ 100-105.)  To the extent the DEIA Regulations may require Johnson to modify his classroom practices, they are focused on "respect for, and acknowledgement of the diverse backgrounds of students and colleagues," and do not force any particular pedagogy or viewpoint.  Cal. Ed. Code § 53605(a).  The District's evaluation of the quality of Johnson's criticisms in the classroom fall within the established and permissible bounds for educational institutions to make content-based judgments in faculty evaluations. *Demers*, 746 F.3d at 413 ("[T]he evaluation of a professor's writing for purposes of tenure or promotion involves a judgment by the employing university about the quality of what he or she has written[, and] . . . is both necessary and appropriate.").

Dated:  November 28, 2023                         Respectfully submitted,

                                                  LIEBERT CASSIDY WHITMORE


                                          By:     */s/ David A. Urban*
                                                  Jesse J. Maddox
                                                  David A. Urban
                                                  Olga Y. Bryan
                                                  Morgan J. Johnson
                                                  Attorneys for Defendants STEVE
                                                  WATKIN; et al.

Liebert Cassidy Whitmore
A Professional Law Corporation
5250 North Palm Ave, Suite 310
Fresno, California 93704

---

[20] *See* Cambridge English Dictionary, "Proficiency" https://dictionary.cambridge.org/us/dictionary/english/proficiency?q=Proficiency (last retrieved Nov. 21, 2023) (defining "proficiency" as "the fact of having the skill and experience for doing something.").

Objections to Magistrate Judge's Findings and Recommendations

12247468.8 KE020-114