INSTITUTE FOR FREE SPEECH
Alan Gura, SBN 178221
    agura@ifs.org
Courtney Corbello, admitted pro hac vice
    ccorbello@ifs.org
Del Kolde, admitted pro hac vice
    dkolde@ifs.org
1150 Connecticut Avenue, N.W., Suite 801
Washington, DC 20036
Phone: 202.967.0007
Fax:   202.301.3399

Attorneys for Plaintiff Daymon Johnson

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYMON JOHNSON,<br><br>*Plaintiff*,<br><br>v.<br><br>STEVE WATKIN, et al.,<br><br>*Defendants*. | Case No. 1:23-cv-00848-ADA-CDB<br><br>Date:         N/A<br>Time:        N/A<br>Dept:         N/A<br>Judge:       Hon. Ana de Alba<br>Trial Date:  Not Scheduled<br>Action filed: June 1, 2023 |

OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS

The Magistrate Judge recommends that Defendants' motions to dismiss, Docs. 46, 65, be denied, and that Plaintiff's motion for a preliminary injunction, Doc. 26, be granted in part. Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 304(b), Plaintiff Daymon Johnson respectfully objects to the Magistrate Judge's Findings and Recommendations excluding Johnson's participation on faculty hiring screening committees and on the Equal Opportunity & Diversity Advisory Committee ("EODAC") from the scope of the injunction's protection, and apparently declining to enjoin the challenged regulations and "Competencies and Criteria" on their face.

BACKGROUND

The Kern Community College District ("KCCD"), which operates Bakersfield College, has a history of retaliating against faculty based on their political speech, deeming disfavored views as grounds for discipline and termination under Cal. Educ. Codes §§ 87732 and 87735 and KCCD Board Policy 3050. Moreover, California Community Colleges, the state agency overseeing local

community college districts including KCCD, has adopted regulations requiring faculty to practice and advocate an official political ideology of "diversity, equity, inclusion, and accessibility" ("DEIA") and "anti-racism." Cal. Code of Regs., tit. 5, §§ 51200, 51201, 53425, 53601, 53602, and 53605. Faculty "must have or establish proficiency in DEIA-related [diversity, equity, inclusion, accessibility] performance to teach, work, or lead within California community colleges." Cal. Code of Regs. tit. 5, § 53602(b). Per these regulations, Chancellor Sonya Christian has issued a pervasive set of "Competencies and Criteria" to guide the scheme's implementation.

Bakersfield College Professor Daymon Johnson seeks a preliminary injunction barring KCCD officials from enforcing Cal. Educ. Codes §§ 87732 and 87735 and KCCD Board Policy 3050 against him on the basis of the content and viewpoint of his speech on political and social issues. Johnson also seeks to enjoin these defendants, as well as Chancellor Christian, from enforcing the DEIA regulations and the "Competencies and Criteria," for viewpoint discrimination and for compelled speech.

In recommending that a preliminary injunction be granted, the Magistrate Judge found that the First Amendment protects most of Johnson's speech, either because it is speech undertaken in his personal capacity or speech involving scholarship and teaching, and that with respect to both types of speech, Defendants failed to meet their burden under *Pickering v. Bd of Educ.*, 391 U.S. 563, 568 (1968). However, the Magistrate Judge found that Johnson's speech made "in the course of his work on screening committees and the EODAC" would not "qualify as teaching and academic writing." Doc. 70 at 31. Accordingly, per the Magistrate Judge, that speech would be unprotected under *Garcetti v. Ceballos*, 547 U.S. 410 (2006). The scope of the recommended injunction was correspondingly narrowed.

The Magistrate Judge also recommended that the DEIA regulations and the Competencies and Criteria be preliminarily enjoined, but without explanation, limited the scope of that proposed injunction to Plaintiff Johnson.

ARGUMENT

I. THE FIRST AMENDMENT PROTECTS JOHNSON'S COMMITTEE SPEECH, BECAUSE HIS COMMITTEE SPEECH IS RELATED TO SCHOLARSHIP AND TEACHING.

Respectfully, the Magistrate Judge erred in excluding Professor Johnson's participation on faculty screening committees and the EODAC from the scope of the proposed preliminary injunction. Although participation on these committees may not constitute, directly, "teaching" or "scholarship," *Garcetti*'s protection of academic freedom is not so narrowly cabined. In holding that government employees' on-duty speech lacks First Amendment protection, the Supreme Court excluded "speech *related to* scholarship or teaching" from that decision's scope, to assuage Justice Souter's concern for academic freedom, and his "argument that expression *related to* academic scholarship or classroom instruction implicates additional constitutional interests." *Garcetti*, 547 U.S. at 425 (emphasis added). There is a difference between speech that constitutes academic scholarship or classroom instruction, and speech "related to" those activities. The Supreme Court chooses its words carefully, and its repeated use of the broader term "related to" was doubtless no accident. And the Ninth Circuit adopted the "related to" modifier as part of its holding in *Demers v. Austin*, 746 F.3d 402, 406 (9th Cir. 2014), acknowledging *Garcetti*'s necessary accommodation of employee speech to honor the First Amendment's protection of academic freedom.

Indeed, *Demers* demonstrates that *Garcetti*'s academic freedom exception is not strictly and narrowly limited to actual teaching or scholarship, but extends to so-called "intramural speech," described as "faculty speech that does not involve disciplinary expertise but is instead about the action, policy, or personnel of a faculty member's home institution." Keith E. Whittington, *What Can Professors Say on Campus? Intramural Speech and the First Amendment*, J. Free Speech L. (forthcoming), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4551168 (August 2, 2023) (citation omitted). In *Demers*, a professor claimed he had suffered retaliation for distributing a pamphlet advocating a plan for restructuring the school. The pamphlet did not appear to be itself a scholarly work, nor did its distribution constitute teaching. But the Ninth Circuit "conclude[d] that the short pamphlet was *related to* scholarship or teaching," and thus covered by *Pickering* test. *Demers*, 746 F.3d at 406 (emphasis added).

Explaining its decision, the Ninth Circuit offered that the plan was not merely addressed to peripheral issues. "Instead, it was a proposal to implement a change at the Murrow School that, if implemented, would have substantially altered the nature of what was taught at the school, as well as the composition of the faculty that would teach it." *Demers*, 746 F.3d at 415.

This perfectly describes Johnson's committee speech. First, Johnson's speech in service on faculty screening committees is plainly aimed at "substantially alter[ing] . . . the composition of the faculty." *Id.* The same is true of Johnson's speech in service on the EODAC committee, whose charge extends to addressing "staff, faculty, and administrator recruitment, retention, and promotion," "assist[ing]" the school in reaching its "hiring goal," training and informing "employee screening committee members," "[h]elping edit job announcements for new positions," and "[r]ecommending recruitment and retention strategies." Equal Opportunity & Diversity Advisory Committee, https://perma.cc/BWR6-2U79 (last visited Nov. 27, 2023). "For many years" through which Johnson served on the EODAC, its members "were appointed to each and every hiring committee." Johnson Decl., Doc. 26-2, ¶ 38.

The relationship between faculty composition and selection, and scholarship and teaching, is self-evident. There is no better way to "cast a pall of orthodoxy over the classroom," *Demers*, 746 F.3d at 411 (quoting *Keyishian v. Bd. of Regents,* 385 U.S. 589, 603 (1967)), than to ensure that everyone engaged in hiring faculty is a committed pro-government ideologue who will only approve of like-minded conformists. And the selection of faculty not only determines which perspectives are taught, but also bears on professors' opportunities for research, collaboration, and not least of all, debate. Those who seek to impose ideological conformity understand this well. That is why Defendants mandate DEIA compliance to serve on hiring committees; that is why the challenged "Competencies and Criteria" provide that faculty satisfy the "employee interactions" theme by "introduc[ing] new employees to the institution and system's focus on DEI and anti-racism and the expectations for their contribution," Exh. A at 5; and that is why Professor Johnson refuses to perform that task, Johnson Decl., ¶ 61. Notably, there is a tension between paragraph 2 of the Magistrate Judge's recommendation, to exclude Johnson's faculty screening committee service from the injunction's protection, and paragraph 3 of that same recommendation, to enjoin the

competencies and criteria's application, which reach faculty screening committee speech, against Johnson.

Moreover, the EODAC plainly impacts "the nature of what [is] taught at the school." *Demers*, 746 F.3d at 415. For example, it collects data about "equity in achievement for all student groups," works "to develop effective strategies to promote student retention, progression, completion and transfer," and "[p]romot[es] attitudinal and institutional changes regarding diversity, equity and inclusion by consistently employing multiple perspectives to lead to a better education and knowledge of the world for BC students." Equal Opportunity & Diversity Advisory Committee, https://perma.cc/BWR6-2U79 (last visited Nov. 27, 2023). If the EODAC did not impact the college's educational product—"a better education and knowledge of the world for BC students"—what purpose could it serve?

Johnson's committee speech is no less related to scholarship and teaching than was Demers's pamphlet. The Magistrate Judge's reliance on *Sullivan v. Univ. of Wash.*, 60 F.4th 574 (9th Cir. 2023), to reach a different conclusion, is misplaced. *Sullivan*'s core holding is that university employees do not have a First Amendment right to serve anonymously on an official government committee, an issue not presented in this case. *Id.* at 580-81. Conversely, *Sullivan* does not support the proposition that public universities may instruct faculty-hiring committees to hire only ideologically reliable faculty.

*Sullivan* held that appointees to a university committee whose "purpose is to ensure that the [school's] research facility is in compliance with the [federal Animal Welfare Act]," *id.* at 574, did not enjoy a First Amendment right of associational privacy in their work. The Ninth Circuit analogized the committee members' status in associating with the school's committee to that of government employees who engage in on-duty speech. In a footnote, the Court held *Demers* inapplicable because "in performing the official work of the Committee, the members are not thereby engaged in 'teaching and academic writing.'" *Id.* at 582 n.6 (quoting *Demers*, 746 F.3d at 412). Perhaps the Ninth Circuit should have more precisely written that the committee members' work was not *related to* teaching and academic writing, but either way, *Sullivan* is inapposite. Ensuring that a research facility complies with federal animal regulations is related to the facility's

production of scholarship or teaching only in the same attenuated way that the facility's building code compliance inspector might be related to scholarship and teaching. In contrast, as noted *supra*, the committees at issue here are staffed by faculty, and their functions in impacting what is taught and who teaches it are precisely those that *Demers* deemed protected by the First Amendment.

The pre-*Demers* case upon which the Magistrate Judge relied, *Hong v. Grant*, 516 F. Supp. 2d 1158 (C.D. Cal. 2007), *aff'd on other grounds*, 403 F. App'x 236 (9th Cir. 2010), is likewise inapposite. *Hong* held that a professor's critical reviews of colleagues and the use of lecturers were unprotected under *Garcetti* as they constituted on-duty speech. The district court did not apparently consider *Garcetti*'s exception of speech related to scholarship and teaching, and the Ninth Circuit affirmed on Eleventh Amendment grounds, declining to reach the First Amendment issues.

The injunction should protect Johnson's committee speech.

II. THE COURT SHOULD ENJOIN THE DEIA REGULATIONS AND COMPETENCIES AND CRITERIA ON THEIR FACE, AS DEFENDANTS FAILED TO SHOW THAT THESE PROVISIONS ADVANCE ANY VALID STATE INTERESTS, AND THE CIRCUMSTANCES CALL FOR FACIAL RELIEF.

Professor Johnson seeks both as applied and facial relief from enforcement of the DEIA regulations and the competencies and criteria. Complaint, Doc. 8 at 40, Prayer for Relief ¶ B; *id.* at 37, 38 (facial challenges to DEIA regulations and competencies and criteria). Johnson's preliminary injunction motion does not limit the requested injunction's scope with respect to these provisions, which apply to all faculty. Doc. 26. As the Magistrate Judge found, "the [DEIA] regulations *require* faculty members *like* Plaintiff to express a particular message." Doc. 70 at 34 (emphasis added and in the original). "[T]he plain language of the DEIA regulations impose minimum qualifications on *all* employees." *Id*. at 22 (emphasis added).

Nonetheless, the Magistrate Judge recommended that Defendants, including Defendant Christian—the chancellor of the state-wide system charged with maintaining competencies and criteria that bind all faculty—be "enjoined . . . from enforcing Cal. Code of Regs. tit. 5, §§ 51200, 51201, 53425, 53601, 53602, and 53605, and the customs, policies, and criteria in evaluating faculty performance *against Plaintiff*." Doc. 70 at 44 (emphasis added).[1]

---

[1] The challenged provisions could injure Professor Johnson outside the performance evaluation

Limiting the relief to Professor Johnson would be erroneous. "Normally, a plaintiff bringing a facial challenge must "establish 'that no set of circumstances exists under which [the law] would be valid,'" *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)), "or show that the law lacks 'a plainly legitimate sweep.'" *Id.* (quoting *Washington State Grange v. Washington State Republican Party*, 552 U. S. 442, 449 (2008)). "In the First Amendment context, however, we have recognized 'a second type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)).

The DEIA regulations and the "Competencies and Criteria" fail each of these facial invalidation tests. There does not exist a single valid application of these provisions, let alone a plainly legitimate "sweep" in their enforcement. The findings and recommendations admit of no circumstances under which it would be acceptable for Defendants to mandate that *any* professor parrot the official state ideology, incorporate it into his or her expression or activity of any kind, or hold back viewpoints on account of their incompatibility with the state's official ideology.

Johnson argued separately that the challenged provisions discriminated against his speech on the basis of viewpoint (Doc. 8, Count IV, at 36-38) and unlawfully compelled his speech (Doc. 8, Count V at 38-39); *see, e.g.,* Preliminary Injunction Br., Doc. 26-1, at 13. The Magistrate Judge's analysis addressed the claims interchangeably and agreed with Johnson as to both. *See, e.g.,* Doc. 70 at 34; *id.* (finding that "the regulations *require* faculty members like Plaintiff to express a particular message"); *id.* at 35 (Plaintiff is "required to advocate and promote these concepts in his classroom" and is not free "to criticize and oppose DEIA concepts within the classroom"). In recommending that the challenged provisions be enjoined, the Magistrate Judge reasoned that the provisions are content-based and thus subject to strict scrutiny. Doc. 70 at 35-36 (applying *Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015)). The Magistrate Judge then found that the state's asserted

---

context, as the KCCD Defendants could terminate him for simply not following a state regulation, under Cal. Educ. Code § 87732(f). However, the recommended injunction barring KCCD Defendants from punishing Johnson for the content or viewpoint of his speech addresses that risk.

interest in "promoting diversity, equity, inclusion, and accessibility in public universities does not give it the authority to invalidate protected expressions of speech." *Id.* at 36-37 (citations omitted).

The Magistrate Judge also found that Johnson "is likely to prevail in satisfying the second step of the *Pickering* test," *id.* at 37, with respect to the DEIA regulations and Competencies and Criteria. This language might have been superfluous in the context of Johnson's challenges to these provisions. *Pickering* is better suited to an individualized targeting of a professor for engaging in speech, the scenario anticipated and addressed more directly in Johnson's challenge to the KCCD Defendants' application of the Education Code, than to his broader, facial challenge to state regulations and guidelines. "[T]he *Pickering* framework was developed for use in a very different context—in cases that involve 'one employee's speech and its impact on that employee's public responsibilities,'" not cases "involv[ing] a blanket requirement." *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2472 (2018) (quoting *United States v. Treasury Employees*, 513 U.S. 454, 467 (1995)). "[I]n considering general rules that affect broad categories of employees, we have acknowledged that the standard *Pickering* analysis requires modification." *Id.* (citing *Treasury Employees*, 513 U.S. at 466-68). "A speech-restrictive law with 'widespread impact,' we have said, 'gives rise to far more serious concerns than could any single supervisory decision.'" *Id.* (citing *Treasury* Employees, 513 U.S. at 468).

Accordingly, "the Government's burden is greater with respect to [a] statutory restriction on expression than with respect to an isolated disciplinary action." *Treasury Employees*, 513 U.S. at 468. "The Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *Id.* at 468 (citing *Pickering*, 391 U.S. at 371). In *Janus*, "the end product of those adjustments . . . resemble[d] exacting scrutiny." 138 S. Ct. at 2473. Moreover, Johnson maintains that because the challenged provisions discriminate not merely based on content, but on viewpoint, they are simply forbidden. "[R]estrictions based on content must satisfy strict scrutiny, and those based on viewpoints are prohibited." *Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018) (citation omitted).

The bottom line, however, remains the same regardless of the analytical framework. The Magistrate Judge correctly determined that Defendants lack a valid interest justifying the regulation. Under any test measuring the proper scope of an injunction, applying any form of First Amendment scrutiny (strict, intermediate, *Pickering*, etc.), the findings call for facial relief against the DEIA regulations and the Competencies and Criteria.

Alternatively, the scope of the injunction could be broadened to enjoin application against any academic who dissents from the prevailing "antiracist" ideology—that is, to a subset of applications of the challenged regulations. *See Bucklew v. Precythe,* 139 S. Ct. 1112, 1127-28 (2019); *Citizens United v. FEC,* 558 U.S. 310, 331 (2010) (quoting Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1327-28 (2000) at: "[O]nce a case is brought, no general categorical line bars a court from making broader pronouncements of invalidity in properly 'as-applied' cases"); *see also* Fallon, 113 Harv. L. Rev. at 1324 ("[T]here is no single distinctive category of facial, as opposed to as-applied litigation").

Ultimately, "[c]rafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assist. Project*, 582 U.S. 571, 579 (2017) (per curiam). And while an injunction that purports to protect only Professor Johnson would offer substantial relief, it may also prove somewhat impractical or difficult to enforce.

In one sense, Professor Johnson teaches at a "community college." But for First Amendment purposes, the relevant communities are not merely Bakersfield or Kern County, but the academic community, on his campus and beyond. "The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Keyishian*, 385 U.S. at 603 (quoting *Shelton v. Tucker*, 364 U.S. 479, 487 (1960)). "The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth out of a multitude of tongues, [rather] than through any kind of authoritative selection." *Id.* (internal quotation marks omitted).

Speech and scholarship are interactive endeavors. Other community college employees, in particular other professors, may not feel fully free collaborating with Johnson, attending his

lectures, debating him, or otherwise engaging with a one-man island of intellectual freedom while they remain under the watchful eye of DEIA and anti-racism enforcers. And in time, if the broader ideologically dogmatic hiring and retention practices are allowed to persist, few faculty will remain who are interested in or capable of offering a measure of intellectual diversity. The case calls for not only affording Professor Johnson a measure of protection against compulsion and censorship, but a free academic community with which to interact, to everyone's benefit.

## CONCLUSION

This Court should adopt the Magistrate Judge's Finding and Recommendations, but modify the proposed injunction so as to include Professor Johnson's service on screening committees and the EODAC within its protection, and provide that Defendants are enjoined from enforcing Cal. Code of Regs. tit. 5, §§ 51200, 51201, 53425, 53601, 53602, and 53605, and the customs, policies, and practices adopted on their bases, on their face and against Professor Johnson.

Dated: November 28, 2023            Respectfully submitted.

By:     /s/ Alan Gura
        Alan Gura, SBN 178221
            agura@ifs.org
        Courtney Corbello, admitted pro hac vice
        Del Kolde, admitted pro hac vice
        1150 Connecticut Avenue, N.W., Suite 801
        Washington, DC 20036
        Phone: 202.967.0007 / Fax:  202.301.3399


        Attorney for Plaintiff Daymon Johnson

CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2023, I electronically filed the foregoing with the Clerk using the Court's CM/ECF system, and that all participants in this case are registered CM/ECF users who have thereby been electronically served.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 28, 2023.


      /s/ Alan Gura
      Alan Gura