1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10

DAYMON JOHNSON,

No.  1:23-cv-00848-KES-CDB

11

Plaintiff,

12

v.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR A PRELIMINARY
INJUNCTION AND DENYING
DEFENDANTS' MOTION TO DISMISS

13

JERRY FLIGER, et al.,

14

Defendants.

Docs. 26, 46

15
16
17

Plaintiff Daymon Johnson, a professor of history at Bakersfield College, brings this pre-

18

enforcement challenge seeking injunctive and declaratory relief to preclude officials of

19

Bakersfield College and the Kern Community College District ("KCCD") from enforcing, as to

20

his intended speech, two provisions of the California Code of Regulations.[1]  These provisions

21

would require Johnson to employ "teaching, learning, and professional" practices reflecting

22

diversity, equity, inclusion, and accessibility ("DEIA") and anti-racist principles, require Johnson

23

to "establish proficiency in DEIA-related performance to teach, work, or lead within California

24

25

[1] This action proceeds on Johnson's remaining claims in his first amended complaint ("FAC")
against defendants Jerry Fliger, Richard McCrow, Steven Bloomberg, Romeo Agbalog, John S.
Corkins, Kay S. Meek, Kyle Carter, Christina Scrivner, Nan Gomez-Heitzeberg, and Yovani
Jimenez in their official capacities.  Defendants Fliger and McCrow are the President and Dean of
Instruction, respectively, at Bakersfield College.  Defendant Bloomberg is the KCCD Chancellor.
Defendants Agbalog, Corkins, Meek, Carter, Scriver, Gomez-Heitzeberg, and Jimenez are with
the KCCD Board of Trustees.

26

27

28

1

community colleges," and require defendants to evaluate Johnson based in part on his proficiency in such DEIA principles.  Cal. Code of Regs., tit. 5, §§ 53602(b), 53605(a) (collectively, "DEIA regulations").  Johnson also challenges a California Education Code provision, Cal. Educ. Code § 87732(f), to the extent it incorporates the regulations.  Defendants oppose the motion for preliminary injunction and, separately, move to dismiss the FAC.

Johnson's post-appeal briefing focuses on his as-applied challenge.  *See* Docs. 110, 114.  Johnson alleges that the DEIA regulations compel his speech and discriminate against his viewpoint in violation of the First Amendment.  He alleges that he fears either being compelled to express a viewpoint with which he disagrees or being punished if he continues to refuse to express defendants' desired viewpoint or if he expresses his contrary views.  Johnson has credibly identified specific speech that he reasonably fears would be proscribed by the DEIA regulations.  And as the Ninth Circuit has found, he "has established a 'concrete plan to violate the law' based on his allegations regarding his desired speech and his refusal to express support for [DEIA] principles."  *Johnson v. Fliger*, No. 24-6008, 2025 WL 2427606, at *2 (9th Cir. Aug. 22, 2025) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)).

Johnson has established that his intended speech, which reflects his opposition to the DEIA regulations and to the state's DEIA policies, concerns a matter of public concern.  To the extent the DEIA regulations proscribe and chill Johnson's intended speech in his teaching or scholarship as a professor, in his work with a "dissident faculty" group on campus that opposes the DEIA regulations, or in his capacity as a private citizen or public academic engaging in extracurricular speech, Johnson has a First Amendment interest in such intended speech.  *See Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014); *Reges v. Cauce*, 162 F.4th 979, 997–99 (9th Cir. 2025).  Defendants have failed to demonstrate "a legitimate administrative interest in suppressing the speech that outweigh[s] the plaintiff's First Amendment rights."  *Reges*, 162 F.4th at 1000.  And defendants agree that Johnson "is free to express his views in his scholarship and teaching" as well as "outside of his employment with his 'off-duty' speech."  Doc. 111 at 9.

Johnson has failed to establish a likelihood of success on his challenge to Bakersfield

College's requirement that he complete mandatory DEIA training as a requirement to participate on faculty screening committees, as the government may express its views through such employee training, and Johnson fails to show that the training requires him to personally endorse the government's views as his own.  Nor does Johnson establish that his official capacity speech as a member of Bakersfield College's Equal Opportunity & Diversity Advisory Committee ("EODAC") is protected speech, as it is government speech and he has not established that it is sufficiently connected to scholarship or teaching.  *See Sullivan v. Univ. of Washington*, 60 F.4th 574, 582 n.6 (9th Cir. 2023) (rejecting argument that faculty members serving on state university's animal care and use committee were entitled to First Amendment protection, because they were "not thereby engaged in 'teaching and academic writing'") (quoting *Demers*, 746 F.3d at 412).  Johnson also fails to establish a likelihood of success on his facial challenge to the DEIA regulations, as the DEIA regulations apply to a range of non-speech conduct and Johnson fails to show that they prohibit a substantial amount of protected speech relative to their plainly legitimate sweep.  *United States v. Williams*, 553 U.S. 285, 292 (2008).

For the reasons further addressed below, defendants' motion to dismiss is denied, and Johnson's motion for a preliminary injunction is granted in part.

**I.     Background**

**A.  Procedural History**

In his FAC, Johnson initially challenged a broader range of regulations and provisions against the defendants and the Chancellor of the California Community Colleges.  Doc. 8.  The earlier procedural history of this case is set forth in the court's order dismissing the case for lack of standing.  Doc. 89.  On appeal, the Ninth Circuit reversed in part, finding that Johnson had standing to sue the remaining defendants as to Cal. Code Regs. tit. 5, §§ 53602(b) and 53605(a), and as to Cal. Educ. Code § 87732(f) to the extent it incorporates those regulations.  *Johnson*, 2025 WL 2427606, at *2.  The Ninth Circuit affirmed the dismissal for lack of standing of Johnson's claims against the State Chancellor and of Johnson's claims as to other statutory and regulatory provisions, a KCCD board policy, and State guidance provisions.  *Id.*

The Ninth Circuit remanded the case for this court to consider Johnson's motion for a

1   preliminary injunction against the remaining defendants as to Cal. Code Regs. tit. 5, §§ 53602(b)

2   and 53605(a), and Cal. Educ. Code § 87732(f).  *Id.*  Following the remand, the parties filed

3   supplemental briefing addressing the remaining issues on Johnson's motion for preliminary

4   injunction and on defendants' motion to dismiss.  Docs. 109–114.  The Court held oral argument

5   on the motions.  Doc. 119.

6           **B. Factual Background**

7                   1.  Johnson's Role at Bakersfield College

8           Johnson is a full-time professor of history at Bakersfield College, a KCCD campus.  FAC

9   ¶ 15.  KCCD is a district of the California Community College system.  *Id.* ¶ 32.  Johnson has

10  been employed at Bakersfield College since 1993.  *Id.* ¶ 59.  His primary duties involve teaching

11  various history classes to community college students and participating in shared governance on

12  campus.  *Id.*

13          Johnson is the faculty lead of the Renegade Institute for Liberty ("RIFL"), which he

14  describes as a sanctioned organization within Bakersfield College comprised of faculty members

15  "dedicated to the pursuit of free speech, open inquiry and critical thinking."  *Id.* ¶ 60.  RIFL "aims

16  to promote and preserve freedom of thought and intellectual literacy through the open discourse

17  of diverse political ideas with an emphasis on American ideals and western historical values."  *Id.*

18  Johnson asserts RIFL "represents a minority position on campus," "stand[ing] in general

19  opposition to [the outlook and ideals] espoused by many faculty members and members of the

20  school administration."  *Id.* ¶ 61.

21          In the past, Johnson served on Bakersfield College's EODAC.  Doc. 26-2 ¶ 4.  The

22  "primary purpose" of the EODAC is to "actively assist/facilitate the school's cultural and

23  institutional policies and practices that demonstrate a commitment to greater diversity and

24  inclusion."  Doc. 26-1 at 4.  When he served on the committee, Johnson's duties included

25  attending committee meetings, voting on EODAC proposals, and contributing to an updated

26  definition of EODAC's purpose.  Doc. 26-2 ¶ 4.  Johnson asserts that the EODAC "pushes a

27  hidden affirmative-action agenda, engages in reverse racism, and weaponizes students in order to

28  push their DEI agenda."  *Id.* ¶ 58.  Johnson is no longer serving on the EODAC as he fears

4

1    retribution for his views.  *Id.*

2      Johnson also previously served on numerous faculty screening committees.  *Id.* ¶ 61.

3    Johnson alleges he is no longer able to serve on these committees, as Bakersfield College

4    instituted a requirement that all members must complete the College's DEIA training, which

5    Johnson refuses to do as he does not agree with the ideology taught in the training and he does not

6    wish to affirm its ideals.  *Id.* ¶¶ 13, 61.

7          2.  DEIA Regulations

8      Johnson challenges sections 53602(b) and 53605(a) of the California Code of Regulations,

9    and section 88732(f) of the California Education Code.

10      Section 53602(b) provides:

11    
12       The evaluation of district employees must include consideration of
      an employee's demonstrated, or progress toward, proficiency in
      diversity, equity, inclusion, and accessibility DEIA-related
      competencies that enable work with diverse communities, as
13    required by section 53425.  District employees must have or
      establish proficiency in DEIA-related performance to teach, work,
14    or lead within California community colleges.

15    Cal. Code of Regs., tit. 5, § 53602(b).

16      Section 53605(a) provides:

17       Faculty members shall employ teaching, learning, and professional
      practices that reflect DEIA and anti-racist principles, and in
18    particular, respect for, and acknowledgement of the diverse
      backgrounds of students and colleagues to improve equitable
19    student outcomes and course completion.

20    *Id.* § 53605(a).

21      Section 87732 of the California Education Code provides, in relevant part:

22       No regular employee or academic employee shall be dismissed
      except for one or more of the following causes: . . .
23    

24       (f) Persistent violation of, or refusal to obey, the school laws of the
      state or reasonable regulations prescribed for the government of
      the community colleges by the board of governors or by the
25    governing board of the community college district employing him
      or her.

26    

27    Cal. Educ. Code § 87732(f).

28

### 3. Johnson's Intended Speech

Johnson has not faced any sanction or action by defendants under the DEIA regulations or the statute.  Defendants evaluate Johnson's performance every three years.  Johnson was last evaluated in 2023, and he will next be evaluated in 2026.  Doc. 111 at 17.  Johnson fears that his evaluation will be negatively impacted by his refusal to support DEIA principles as mandated by the DEIA regulations.  *See* Doc. 26-2 ¶ 29.  He also identifies statements and actions he has refrained from engaging in for fear that he would be accused of violating the DEIA regulations.  *See* FAC.

For example, to avoid a negative evaluation and potentially termination, Johnson states that he:

- "refrains from expressing his political views and from freely participating in the intellectual life of the college;"
- "has refrained from finalizing agreements with [] speakers" for RIFL events, because they would present viewpoints that defendants oppose;
- has "refrained from making [social media] posts or expressing opinions" critical of the Bakersfield College administration and/or "cultural Marxism";
- "refrain[s] from expressing viewpoints . . . that students are being weaponized by the EODAC to push DEI ideology agendas;"
- has stopped attending EODAC meetings to "avoid[] expressing . . . concerns" regarding "'reverse' racism and deceptive ways the [EODAC] was pushing affirmative action;" and
- has "refrain[ed] from offering other viewpoints that he believes would not be well-received by Defendants," such as "protesting the participation of biological males in female sports competitions and the holding of 'drag queen story hours' at Bakersfield College's daycare facility."

*See* FAC ¶¶ 9, 61, 97, 100–03, 107–11.

Johnson also alleges that in his history classes he intends to assign, among other readings, academic texts that are inconsistent with a "DEIA narrative."  *See id.* at ¶¶ 148–53.  He states that

1    the "material [he] will use, his pedagogy, and the views he will teach are utterly contrary to the

2    DEIA dictates of the California Code of Regulations." *Id.* at ¶ 153. He also notes that he "cannot

3    successfully complete the DEIA training because [he does] not agree with the ideology mandated

4    by that training," and that his refusal to take the mandatory DEIA training means he is no longer

5    permitted to serve on faculty screening committees. *Id.* at ¶ 112.[2]

6    **II.    Legal Standards**

7       **A. Motion to Dismiss**

8       A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *N.*

9    *Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on

10   the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

11   legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff

12   is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

13   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

14   pleads factual content that allows the court to draw the reasonable inference that the defendant is

15   liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint

16   must contain facts that "nudge [the plaintiff's] claims across the line from conceivable to

17   plausible." *Twombly*, 550 U.S. at 570. In determining whether a complaint states a claim on

18   which relief may be granted, the Court accepts as true the factual allegations in the complaint and

19   construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*,

20   467 U.S. 69, 73 (1984). The Court need not assume the truth of legal conclusions cast in the form

21   of factual allegations. *Iqbal*, 556 U.S. at 680.

22      **B. Motion for a Preliminary Injunction**

23      "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*

24   *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–

25   90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to

26

27   _____

     [2] The FAC also alleged that Johnson has been "chill[ed] . . . from filing any internal complaints
     about school administrators, staff, or fellow faculty members." FAC ¶ 104. At the hearing on
28   this motion, Johnson confirmed that this intended action pertained to a now-dismissed claim.

1  succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

2  relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

3  *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S.

4  531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)).  "Likelihood of

5  success on the merits is a threshold inquiry and is the most important factor."  *Simon v. City &*

6  *Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v.*

7  *Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).  "[I]f a plaintiff can only show that there are serious

8  questions going to the merits—a lesser showing than likelihood of success on the merits—then a

9  preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's

10  favor, and the other two *Winter* factors are satisfied."  *Friends of the Wild Swan v. Weber*, 767

11  F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).  When the

12  government is the nonmoving party, "the last two *Winter* factors merge."  *Baird v. Bonta*, 81

13  F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).

14  **III.    Discussion**

15      Johnson brings as-applied and facial challenges to California Code of Regulations

16  §§ 53602(b) and 53605(a), and an as-applied challenge to California Education Code § 87732(f)

17  to the extent it incorporates those regulations.  Johnson claims that these provisions discriminate

18  against his viewpoint and compel his speech in violation of the First Amendment, and he moves

19  for a preliminary injunction enjoining defendants from enforcing them.

20      Defendants argue that the DEIA regulations address non-speech "teaching and learning

21  practices" and "do not prohibit any speech."  *See* Doc. 111 at 8.  They represent that,

22  "[i]mportantly, Johnson remains free to express his views outside of his employment with his

23  'off-duty' speech and also remains free to express his views in his scholarship and teaching."  *Id.*

24  at 9.  Somewhat inconsistently, defendants argue that to the extent the DEIA regulations are

25  found to implicate such speech by Johnson, the State's "legitimate administrative interests

26  outweigh Johnson's interest in his proposed speech" under *Pickering v. Bd. of Educ.*, 391 U.S.

27  563 (1968).  *Id.* at 12–14.  Defendants also argue that Johnson does not have a First Amendment

28  right to serve on a faculty hiring committee without having taken the mandatory DEIA training,

1  and that his work on such committees or on the EODAC would be pursuant to his official duties

2  and does not constitute "teaching or scholarship" subject to First Amendment protection under

3  *Demers*. *Id.* at 14 (citing *Sullivan*, 60 F.4th at 582 n.6).

4      Defendants argue that Johnson fails to establish a likelihood of success on his facial

5  challenge because he fails to show the DEIA regulations prohibit a substantial amount of

6  protected speech relative to their plainly legitimate sweep. *See Williams*, 553 U.S. at 292.

7          **A.  Motion to Dismiss**

8      Defendants move to dismiss the FAC.  They argue they cannot be held liable because

9  Johnson challenges state regulations, which defendants are required by law to enforce, rather than

10  a KCCD or Bakersfield College policy.  Doc. 109.  They also assert that this action lacks a

11  necessary party: the Board of Governors of the California Community Colleges ("Board of

12  Governors"), which promulgated the DEIA regulations.  *Id.*  Defendants argue that they cannot

13  adequately represent the Board of Governors' interests in defending the DEIA regulations.  *Id.* at

14  17.

15      In response, Johnson argues:  (1) the Ninth Circuit's mandate and/or the law of the case

16  bar defendants' motion to dismiss; (2) defendants may be held responsible for Johnson's injuries

17  as they are the state officials charged with enforcing the DEIA regulations, and, even if they were

18  not considered to be state officials, they are liable as the "moving force" behind the

19  implementation of the regulations; and (3) the Board of Governors is not a necessary party.  *See*

20  Doc. 112.  Johnson's arguments are persuasive.

21          1.  The Rule of Mandate and the Law of the Case

22      Johnson argues defendants' motion to dismiss must be denied as their arguments conflict

23  with the Ninth Circuit's mandate.  The rule of mandate doctrine provides that when a case has

24  been decided by the Court of Appeal and remanded to the district court, "whatever was before

25  [the circuit court], and disposed of by its decree is considered as finally settled." *United States v.*

26  *Thrasher*, 483 F.3d 977, 981 (9th Cir. 2007) (citation omitted).  "According to the rule of

27  mandate, although lower courts are obliged to execute the terms of a mandate, they are free as to

28  'anything not foreclosed by the mandate.'" *United States v. Kellington*, 217 F.3d 1084, 1092 (9th

9

1    Cir. 2000) (quoting *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993)).

2          Under the law of the case doctrine, "the decision of an appellate court on a legal issue

3    must be followed in all subsequent proceedings in the same case." *Thrasher*, 483 F.3d at 981

4    (citation omitted). "For the doctrine to apply, the issue in question must have been decided

5    explicitly or by necessary implication in the previous disposition." *Id.* (quoting *Herrington*, 12

6    F.3d at 904); *see also United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012).

7          The Ninth Circuit remanded for this court "to consider Johnson's motion for a preliminary

8    injunction in the first instance." *Johnson*, 2025 WL 2427606, at *3. It found that Johnson had

9    alleged sufficient facts to establish standing to sue defendants as to Cal. Code Regs. tit 5,

10   §§ 53602(b), 53605(a), and, to the extent it incorporates those regulations, Cal. Educ. Code

11   § 87732(f). *Id.* at *1–2. The mandate arguably does not foreclose consideration of defendants'

12   motion to dismiss in connection with Johnson's motion for a preliminary injunction, as the Ninth

13   Circuit's decision did not address the issues defendants' motion raises, that (i) defendants cannot

14   be liable for enforcing a state-mandated regulation, and (ii) the Board of Governors is a necessary

15   party. *See id.*

16         But defendants' arguments are barred by the law of the case as they are essentially

17   contentions that Johnson's claims are not redressable against the defendants, which conflicts with

18   the Ninth Circuit's decision that Johnson has standing to sue them. The finding of standing

19   means that Johnson has established, at a minimum, "a likelihood that a favorable decision"

20   against the defendants "will address [his] alleged injury." *Lopez v. Candaele*, 630 F.3d 775, 785

21   (9th Cir. 2010). "The question of whether there is the requisite 'connection' between the sued

22   official and the challenged law implicates an analysis that is 'closely related—indeed

23   overlapping'—with the traceability and redressability inquiry [of standing]." *Mecinas v. Hobbs*,

24   30 F.4th 890, 903 (9th Cir. 2022) (quoting *Culinary Workers Union, Loc. 266 v. Del Papa*, 200

25   F.3d 614, 619 (9th Cir. 1999)). Defendants' argument that they are not the proper defendants in

26   this action is barred, as it would preclude a finding that Johnson's claims are redressable against

27   them and is inconsistent with the Ninth Circuit's determination that Johnson has standing to sue

28   them. Even if the Ninth Circuit's decision did not foreclose the defendants' arguments, those

10

1    arguments are unpersuasive, as addressed below.

2                    2.    This Action is Properly Brought against Defendants

3          Johnson seeks prospective injunctive relief against defendants in their official capacities.

4    The parties agree that KCCD and Bakersfield College are state entities.[3]  And state officers may

5    be sued in their official capacities for prospective declaratory or injunctive relief for alleged

6    violations of federal law.  *See Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134

7    (9th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)).  Defendants argue that,

8    despite the *Ex parte Young* exception to their immunity under the Eleventh Amendment, they

9    cannot be liable in this action specifically, because KCCD and Bakersfield College did not

10   promulgate the DEIA regulations and defendants are simply enforcing state regulations and a

11   state statute that they have no discretion to disregard.  *See generally* Doc. 109.  Defendants'

12   argument is unpersuasive.

13         While it is true that the Board of Governors promulgated the DEIA regulations,

14   defendants are the ones charged with enforcing them as to Johnson, not the Board of Governors.

15   The Ninth Circuit affirmed the dismissal of the State Chancellor on the ground that she lacked the

16   authority to enforce the statute and regulations as to Johnson and had disavowed enforcement.

17   *Johnson*, 2025 WL 2427606, at *3.  Defendants, not the Board of Governors, would be the ones

18   to evaluate Johnson based on his "demonstrated, or progress toward, proficiency in diversity,

19   equity, inclusion, and accessibility DEIA-related competencies," Cal. Code Reg., tit. 5,

20   § 53602(b), and his ability to "employ teaching, learning, and professional practices that reflect

21   DEIA and anti-racist principles," *id.* § 53605(a).  *See generally* Doc. 109.  And "[a]n official-

22   capacity suit for injunctive relief is properly brought against persons who 'would be responsible

23   for implementing any injunctive relief.'"  *R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1223 (9th

24   _____

25   [3] Defendants do not dispute that, following *Kohn v. State Bar of California*, 87 F.4th 1021 (9th
     Cir. 2023), California state colleges remain state entities as the Ninth Circuit found under the
26   previously applicable test.  *See Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201–02 (9th Cir.
     1988) (finding, under previous test, that L.A. Community College District was state entity entitled
27   to 11th Amendment immunity).  The Court noted in *Kohn* that its decision would not
     "substantially destabilize past decisions granting sovereign immunity to state entities within the
28   Ninth Circuit."  *Kohn*, 87 F.4th at 1032.

1   Cir. 2023) (quoting *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012)); *see also Ex parte*
2   *Young*, 209 U.S. at 157.

3          To the extent defendants argue that, although they are generally state entities, they should
4   not be treated as an arm of the state in the specific context of this challenge to the DEIA
5   regulations, such a case-dependent approach is foreclosed.  "[A]n entity either is or is not an arm
6   of the state: The status of an entity does not change from one case to the next based on the nature
7   of the suit, the state's financial responsibility in one case as compared to another, or other
8   variable factors."  *Kohn*, 87 F.4th at 1031.  The FAC is properly brought against defendants, as
9   they are charged with enforcing the DEIA regulations and would be responsible for implementing
10  the requested injunctive relief.  *See Columbia Basin Coll.*, 77 F.4th at 1227 (college president
11  properly named as defendant in *Ex parte Young* First Amendment action as he "initiated and
12  conducted the student conduct investigation that resulted in sanctions").

13         Defendants also argue that section 1983 liability turns on the amount of discretion
14  available to a defendant in enforcing state law, and that they cannot be liable as they are merely
15  enforcing a nondiscretionary state mandate.  Doc. 109 at 9–13.  But defendants rely on cases
16  involving municipal entities, not arms of the state like KCCD and Bakersfield College.  *See*
17  *Sandoval v. County of Sonoma*, 912 F.3d 509, 517 (9th Cir. 2018); *Aliser v. SEIU Cal.*, 419 F.
18  Supp. 3d 1161, 1165 (N.D. Cal. 2019); *Mohamed Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44
19  F.4th 867, 883 (9th Cir. 2022).  The issue in those cases was whether the plaintiffs had properly
20  stated claims under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1976), and
21  whether they were challenging policies promulgated by the municipal entities.  In contrast, here
22  defendants *are* state officials and municipal entity liability under *Monell* is not at issue.  *See*
23  *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th
24  Cir. 2010) (noting that "the Supreme Court has expressly declined to extend *Monell*'s theory of
25  municipal liability under § 1983 to state entities.").

26                        3.   The Board of Governors

27         Defendants also argue that, following the dismissal of Johnson's claims against the State
28  Chancellor, this action lacks a necessary party, namely the Board of Governors.  This argument is

1    not persuasive.

2         In determining whether a party is "necessary" under Rule 19(a), a court must consider

3    (1) "whether 'complete relief' can be accorded among the existing parties," and (2) "whether the

4    absent party has a 'legally protected interest' in the subject of the suit." *Shermoen v. United*

5    *States*, 982 F.2d 1312, 1317 (9th Cir. 1992) (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555,

6    558 (9th Cir. 1990)). "An absent party with an interest in the action is not a necessary party under

7    Rule 19(a) 'if the absent party is adequately represented in the suit.'" *Salt River Project Agr.*

8    *Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012) (quoting *Shermoen*, 982 F.2d at

9    1318).

10         The first element is not in dispute, as defendants concede that granting Johnson an

11    injunction in this action would accord him complete relief. Doc. 113 at 14. Defendants focus on

12    the second element, contending that the Board of Governors has an interest in the constitutionality

13    of the regulations and that, because defendants did not promulgate the regulations, they cannot

14    adequately represent the Board of Governors' interest in their enforcement. *Id.* at 15. But

15    defendants fail to establish that the state entity that enacted a law or regulation—rather than the

16    state officials charged with its enforcement—is a necessary party under Rule 19. State laws are

17    frequently challenged through actions in which the promulgating entity is not itself named as a

18    defendant. *See, e.g.*, *Progressive Democrats for Social Justice v. Bonta*, 73 F.4th 1118 (9th Cir.

19    2023) (bringing First Amendment case against state attorney general to preclude his enforcement

20    of statute enacted by state legislature). Johnson's suit for prospective injunctive relief is properly

21    brought against defendants, who are the officials charged with enforcing the challenged

22    regulations and statute as to Johnson.[4]

23    _____

24    [4] Even if defendants were not agents of the state, "no precedent supports [the] view" that a state's
    "interest in defending the validity of its own laws . . . makes the State a necessary party under

25    Rule 19." *American Trucking Association Inc. v. New York State Thruway Authority*, 795 F.3d
    351, 359 (2d Cir. 2015). Instead, Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403(b)

26    provide "notice mechanism[s] and relaxed intervention rules for an absent sovereign in cases
    challenging the validity of its laws." *Id.* If "a state is a necessary party in *any* lawsuit in which a

27    state statute is challenged as unconstitutional, there would be no need for these procedures." *Id.*;
    *see also Tennessee v. Garner*, 471 U.S. 1, 22 (1985) (when a state intervenes to defend a statute,

28    it is "a party only by virtue of 28 U.S.C. § 2403(b) and is not subject to liability.").

1    Defendants also argue that the mandatory nature of the regulations presents a potential

2 conflict of interest with the Board of Governors, because defendants "cannot concede or agree to

3 not enforce those sections against Johnson without compromising [their] competing interest in

4 avoiding enforcement action by the Board of Governors."  Doc. 113 at 15.  But defendants fail to

5 identify any meaningful conflict between them and the Board of Governors, and defendants have

6 already asserted that the DEIA regulations do not apply to Johnson's intended speech.  *See*

7 Doc. 111 at 8 ("The DEIA Regulations do not prohibit *any* speech by the plain text of sections

8 53602(b) and 53605(a), either in or out of the classroom." (emphasis in original)).[5]  There is no

9 basis to believe the Board of Governors would take enforcement action against defendants based

10 on defendants' stated interpretation of the DEIA regulations.  And while defendants argue that

11 only a statewide authority could adequately defend the DEIA regulations and the statute, here not

12 only did the California Attorney General's Office and the State Chancellor have actual notice of

13 this case, the State Chancellor *was* a party and successfully moved for her dismissal for lack of

14 standing on the ground that she lacked authority to enforce the regulations or statute as to

15 Johnson.  Docs. 33, 65; *Johnson*, 2025 WL 2427606, at *3.

16    Johnson may bring this action against defendants, and the Board of Governors is not a

17 necessary party.  Accordingly, defendants' motion to dismiss is denied.

### B.  Motion for a Preliminary Injunction

#### 1.  Likelihood of Success on the Merits

20    Johnson brings First Amendment viewpoint discrimination and compelled speech

21 challenges as to the DEIA regulations, and as to Cal. Educ. Code § 87732(f) to the extent it

22 incorporates the regulations.  Johnson argues that these provisions compel him to endorse

23 defendants' desired viewpoint regarding DEIA matters or face potential termination or other

24 discipline for refusing to do so.

25 ///

---

[5] Defendants' reliance on *Shermoen*, 982 F.2d at 1318, is misplaced.  The conflict of interest at issue in *Shermoen* was between the United States and an absent Indian tribe, and the United States could not adequately represent the absent tribe's interests without compromising the trust obligations it owed to the plaintiff tribes.  *Id.*

i.     The *Pickering/NTEU* framework

In considering speech by government employees, courts balance the interests of the government "in promoting the efficiency of the public services it performs through its employees" and the employee's interest "in commenting upon matters of public concern." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).  In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court established an exception to *Pickering*, holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.  The Court noted that "expression related to academic scholarship or classroom instruction" could implicate additional constitutional interests, but it did not decide whether the *Garcetti* exception would apply "in the same manner to a case involving speech related to scholarship or teaching." *Id.* at 425.

The Ninth Circuit addressed that open question in *Demers*, concluding that "*Garcetti* does not—indeed, consistent with the First Amendment, cannot—apply to teaching and academic writing that are performed 'pursuant to the official duties' of a teacher and professor." *Demers*, 746 F.3d at 412.  Rather, "speech 'related to scholarship or teaching' is covered by the *Pickering* doctrine even if it was made pursuant to a public employee's official duties." *Jensen v. Brown*, 131 F.4th 677, 688 (9th Cir. 2025) (quoting *Demers*, 746 F.3d at 412).

The Ninth Circuit has held that, "[a]lthough the *Pickering* framework is most often applied in the retaliation context, a similar analysis is used when assessing prospective restrictions on government employee speech." *Moonin v. Tice*, 868 F.3d 853, 861 (9th Cir. 2017) (citing *United States v. Nat'l Treasury Emps. Union (NTEU)*, 513 U.S. 454, 465–68 (1995)).  "'Unlike an adverse action taken in response to actual speech,' a prospective restriction 'chills potential speech before it happens.'" *Id.* (quoting *NTEU*, 513 U.S. at 468).

Johnson challenges the DEIA regulations both as prospectively compelling his speech and as ex ante restrictions on his speech based on viewpoint discrimination.  And "[t]he government . . . must shoulder a heavier burden when it seeks to justify an ex ante speech restriction as opposed to an 'isolated disciplinary action.'" *Id.*; *see also Damiano v. Grants Pass*

1     *Sch. Dist. No. 7*, 140 F.4th 1117, 1152 (9th Cir. 2025) (noting *Pickering/NTEU* test is proper in

2     prior restraint case brought by public employees); *Hernandez v. City of Phoenix*, 43 F.4th 966,

3     980 (9th Cir. 2022) (applying *Pickering/NTEU* test where plaintiff "targets a prospective

4     restriction on a broad category of expression, rather than punishment imposed after-the-fact for a

5     specific instance of speech").[6]

6         Defendants argue that this heavier burden should not apply here because the DEIA

7     regulations are not restrictions on speech as contemplated in *Moonin* but instead regulate conduct.

8     *See, e.g.*, Doc. 111 at 8 ("The DEIA regulations do not prohibit *any* speech by the plain text of

9     sections 53602(b) and 53605(a), either in [or] out of the classroom.") (emphasis in original). But

10    that argument is foreclosed by the Ninth Circuit's decision, which found that the DEIA

11    regulations arguably proscribe Johnson's intended speech and that Johnson has alleged a credible

12    threat of enforcement under them. *Johnson*, 2025 WL 2427606, at *1–2. "The law of the case

13    doctrine generally prohibits a court from considering an issue that has already been decided by

14    that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir.

15    2016) (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)).

16         Defendants' argument is also inconsistent with the plain text of the regulations, which on

17    their face apply to both speech and non-speech conduct. Section 53605(a) provides that

18    "[f]aculty members shall employ teaching, learning, and professional practices that reflect DEIA

19    and anti-racist principles." Cal. Code of Regs., tit. 5, § 53605(a). While defendants reasonably

20    note that faculty practices *can* include a wide range of non-speech conduct, the regulation does

21    not *exclude* Johnson's intended speech. For example, it is hard to envision how any reasonable

22

23    [6] Johnson agrees that the *Pickering/NTEU* test applies to his viewpoint discrimination claim, but

24    he argues that strict scrutiny applies to his compelled speech claim. *See* Doc. 110 at 10–11 (citing *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 585 U.S. 878, 908 (2018)). Except

25    as to the requirement to take Bakersfield College's DEIA training to participate on a faculty screening committee (and official speech as a faculty screening committee member), or as to his

26    government speech as an official member of the EODAC, Johnson has otherwise established that

27    he is likely to succeed on the merits of his compelled speech claim under the *Pickering/NTEU* test. He would therefore also prevail on his compelled speech claim under more rigorous strict

28    scrutiny review, and it is not necessary to further address his argument regarding the applicable standard.

1    interpretation of Johnson's "teaching [and] learning . . . practices" would exclude his course

2    lectures and classroom discussions.  And if defendants determine that Johnson's speech does not

3    sufficiently "reflect DEIA . . . principles," he risks being found to be failing in "DEIA-related

4    performance," which he is required to "have or establish . . . to teach, work, or lead within

5    California community colleges"—in other words, his job would be on the line.  *See id.*

6    §§ 53602(b), 53605(a).[7]

7                              ii.    Context of Johnson's Intended Speech

8          Defendants generally do not dispute that Johnson's intended speech either relates to

9    scholarship and teaching, and would be in his academic capacity, or is "off-duty" speech in his

10   capacity as a private citizen (including as a public academic).  "Statements are made in the

11   speaker's capacity as [a private] citizen if the speaker had no official duty to make the questioned

12   statements, or if the speech was not the product of performing the tasks the employee was paid to

13   perform."  *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) (internal citations omitted).

14   Defendants concede that, "[i]mportantly, Johnson remains free to express his views outside of his

15   employment with his 'off-duty' speech and also remains free to express his views in his

16   scholarship and teaching."  Doc. 111 at 9.  But defendants argue that Johnson does not have a

17   First Amendment right to serve as a member of a Bakersfield College faculty hiring committee

18   without having completed the College's mandatory DEIA training.  Defendants also argue that

19   Johnson's speech as an official member of a faculty hiring committee or the EODAC would be

20   government speech that does not fall within the *Demers* exception for speech related to

21   scholarship or teaching.

22         Johnson fails to establish a basis to enjoin defendants from requiring that he complete

23   Bakersfield College's DEIA training to be eligible to serve on a faculty screening committee.

24   Johnson states that he "cannot successfully complete the DEIA training because [he] do[es] not

25   agree with the ideology mandated by that training," Doc. 26-2 at ¶ 61.  He has therefore

26   "refrain[ed] from applying to serve on a committee or doing the required DEI training."  *Id.*  But

27   _____

[7] And the Ninth Circuit found that "the District Defendants have not disavowed enforcement."
28   *Johnson*, 2025 WL 2427606, at *2.

1  the requirement that Johnson complete DEIA training to be eligible to serve on a committee does

2  not implicate his First Amendment rights, as the government may express its views through such

3  employee training, and Johnson does not show that he is required to personally endorse the views

4  expressed in the training.  Johnson attaches a notice from Bakersfield College informing him that

5  he must complete such training as an eligibility requirement to serve on the screening committees,

6  *see* Doc. 26-7, but there is no evidence in the record that the DEIA training would require

7  Johnson's agreement with, or endorsement of, any viewpoint or perspective.

8       In the absence of any such compelled endorsement or viewpoint discrimination, there is

9  no basis to enjoin defendants from requiring such training before Johnson may serve on a

10  committee.  *See Norgren v. Minn. Dep't of Hum. Servs.*, 96 F.4th 1048, 1057–58 (8th Cir. 2024)

11  (dismissing public employee's compelled speech claim where trainings did not require

12  affirmative agreement with their content); *Kilborn v. Amiridis*, 131 F.4th 550, 563 (7th Cir. 2025)

13  (finding it "questionable whether [professor had] done enough to make out a compelled speech

14  claim" where there were no allegations that training "compelled him to endorse any particular

15  message . . . as a condition of completing the course.").  But defendants may not compel Johnson

16  to speak in support of DEIA principles as part of the training, or sanction Johnson for refusing to

17  endorse a specific viewpoint on DEIA principles.

18       Johnson also seeks to enjoin defendants from requiring him to use DEIA criteria, as a

19  faculty screening committee member, in evaluating faculty performance.  FAC at p.40 (prayer for

20  relief).  But as Johnson adamantly maintains that he will not take the DEIA training that is a

21  prerequisite for service on a faculty screening committee, he fails to show a likelihood that he

22  would serve on such a committee.[8]

23  _____

24  [8] If Johnson were to serve on a faculty screening committee, it is unclear from the record to what
   extent this would constitute government speech on an administrative matter in an official capacity

25  for Bakersfield College, as opposed to teaching or scholarship in his capacity as a professor.  "In
   assessing what constitutes government speech, courts conduct a holistic inquiry designed to

26  determine whether the government intends to speak for itself or to regulate private expression."
   *Reges*, 162 F.4th at 996 (internal quotation marks and citation omitted); *see also Sullivan*, 60

27  F.4th at 582 n.6 (rejecting argument that faculty members serving on state university's animal
   care and use committee were entitled to First Amendment protection, because they were "not

28  thereby engaged in 'teaching and academic writing'") (quoting *Demers*, 746 F.3d at 412).  While

1    While Johnson no longer serves on the Bakersfield College EODAC, he seeks to enjoin

2    defendants from enforcing the DEIA regulations with respect to his speech as an official member

3    of the EODAC if he were to rejoin it.  But with respect to his official work on this College

4    committee, *Demers* is inapplicable.  *See Sullivan*, 60 F.4th at 582 n.6 (finding *Demers*

5    inapplicable to faculty members' official speech as members of university's animal care and use

6    committee).  The EODAC is an official Bakersfield College committee charged with addressing

7    "staff, faculty, and administrator recruitment, retention, and promotion," assisting the school in

8    reaching its hiring goals, training and informing "employee screening committee members,"

9    "[h]elping edit job announcements for new positions," and "[r]ecommending recruitment and

10   retention strategies."  Doc. 26-2 ¶ 36, Equal Opportunity & Diversity Advisory Committee,

11   https://perma.cc/BWR6-2U79.[9]  Johnson is free to criticize the EODAC's work in his personal

12   capacity, or as a member of RIFL, and defendants may not enforce the DEIA regulations against

13   him with respect to such public criticisms.  But his speech in an official capacity as a member of

14   the EODAC, if he were to rejoin that committee, would constitute government speech under

15   *Garcetti* and would not be so protected.  *See Sullivan*, 60 F.4th at 582 n.6.

16   With respect to Johnson's intended speech on behalf of RIFL, at the hearing on this

17   motion defendants argued that Johnson's role as faculty lead of RIFL was part of his official

18   duties and that his speech would therefore be "government speech" under *Garcetti*.  This

19   argument was not addressed in defendants' briefs, and, in any event, is unpersuasive.  RIFL is an

20   extracurricular organization in which certain faculty members participate.  While it may be

21   recognized by Bakersfield College like other campus extracurricular organizations, there is no

22

the work of a faculty screening committee may be more closely related to scholarship and

23   teaching than the work of the committee at issue in *Sullivan*, the present record is not sufficiently

developed as to the workings of Bakersfield College's faculty screening committees to resolve the

24   issue on this motion.  And, as noted above, Johnson has failed to establish that he is likely to

serve on such a faculty screening committee, given his refusal to take the required DEIA training.

25

26   [9] The Court takes judicial notice of this public statement of the EODAC's responsibilities, which

defendants do not dispute.  *See* Fed. R. Evid. 201(b); *Coto Settlement v. Eisenberg*, 593 F.3d

27   1031, 1038 (9th Cir. 2010) (court may incorporate by reference documents "where the complaint

necessarily relies upon a document . . . the document's authenticity is not in question and there

28   are no disputed issues as to the document's relevance.").

1  evidence that RIFL speaks *as* the College or KCCD administration.  Indeed, the FAC alleges:

2  "RIFL represents a minority position on campus.  Its members' outlook and ideals stand in

3  general opposition to those espoused by many faculty members and members of the school

4  administration . . . ."  FAC ¶ 61.  And faculty members' "dissenting speech on a matter of public

5  concern is not government speech under *Garcetti*."  *Reges*, 162 F.4th at 996.

6         Except as to the DEIA training requirement (and related service on a faculty screening

7  committee) or as to official speech as a member of the EODAC, Johnson has shown that his

8  intended speech would be in his capacity as a professor and would concern matters related to

9  scholarship or teaching, or that it would be in his off duty" capacity as a private citizen (including

10  as a public academic).  It is therefore subject to *Pickering/NTEU* balancing.

11                            iii.    Applying *Pickering/NTEU*

12         To prevail under the *Pickering/NTEU* test, Johnson must first show that he intends to

13  speak on matters of public concern.  *Reges*, 162 F.4th at 997; *Demers*, 746 F.3d at 412.  If so, the

14  court must assess whether Johnson's interest in commenting on matters of public concern

15  outweighs the defendants' interest "in promoting the efficiency of the public services it performs

16  through [their] employees."  *Reges*, 162 F.4th at 997–98; *see also Demers*, 746 F.3d at 412.

17                              a.   Matter of Public Concern

18         "Speech involves matters of public concern when it can be fairly considered as relating to

19  any matter of political, social, or other concern to the community, or when it is a subject of

20  legitimate news interest; that is, a subject of general interest and of value and concern to the

21  public." *Lane v. Franks*, 573 U.S. 228, 241 (2014).  Whether speech addresses a matter of public

22  concern "turns on the 'content, form, and context' of the speech." *Id.* (quoting *Connick v. Myers*,

23  461 U.S. 138, 147–48 (1983)).  Speech addressing matters of public concern is defined broadly,

24  and "[g]overnment employee speech touches on a matter of public concern even if only a

25  relatively small segment of the general public might have been interested in the speech." *Reges*,

26  162 F.4th at 998.  Most speech falling outside the "purely private realm," will "warrant at least

27  some First Amendment protection and thus will qualify as speech on a matter of public concern

28  for purposes of the *Pickering* balancing test." *Hernandez*, 43 F.4th at 977.  And "what constitutes

1   a matter of public concern and what raises academic freedom concerns is of essentially the same

2   character." *Reges*, 162 F.4th at 999 (internal quotation marks and citation omitted).

3       Defendants do not dispute that Johnson's intended speech involves matters of public

4   concern. Johnson intends to speak against DEIA principles, including, for example: teaching

5   classroom material relevant to his history classes but that he argues would conflict with DEIA

6   narratives, hosting events and speakers as part of RIFL that promote anti-DEIA principles, and

7   speaking out against or protesting the Colleges DEIA-related practices and DEIA policies. As

8   defendants concede, his intended speech involves issues of political and social debate that

9   constitute matters of public concern.

10                  b.  Bakersfield College and KCCD's Interests

11      The court next considers whether defendants have shown "a legitimate administrative

12  interest in suppressing the speech that outweighs the plaintiff's First Amendment rights." *Reges*,

13  162 F.4th at 1000. Defendants must also show that the DEIA regulations would alleviate "real,

14  not merely conjectural," harms in a "direct and material way." *Moonin*, 868 F.3d at 865.

15      Defendants do not address how Johnson's desired speech would cause specific harm to

16  Bakersfield College, nor how the DEIA regulations would alleviate that harm. Rather, they assert

17  merely a generalized interest in advancing the State's "legitimate and substantial interest in

18  efficiently carrying out its educational mission, ensuring teaching excellence, and in securing

19  equal education opportunity for students." Doc. 111 at 12 (citing Cal. Ed. Code § 66010.2).

20  Defendants also assert a general interest in being able to "review the content of faculty

21  scholarship and teaching," "favor particular scholarship interests and approaches," and establish

22  "academic standards for the quality and method of delivering instruction to students." *Id.* at 13.

23      A public university has a legitimate interest in exercising certain control over its

24  curriculum and in ensuring faculty members' compliance with academic and teaching standards.[10]

---

[10] *See Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957) (Frankfurter & Harlan, JJ., concurring) ("It is the business of a university to provide that atmosphere which is most conducive to speculation, experiment and creation. It is an atmosphere in which there prevail the four essential freedoms of a university—to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study."); *Demers*, 746 F.3d at 413 ("Ordinarily, such [] content-based judgment[s] [are] anathema to the First

1  But while the First Amendment would not protect a faculty member who fails to satisfy a

2  minimum level of academic competence, or, for example, who insists on lecturing a captive

3  student audience at length on his personal political views rather than teaching his assigned math

4  course, defendants do not point to any intended speech by Johnson that would fail to meet such

5  academic competence or course requirements.  Nor do defendants allege that regulation of

6  Johnson's speech is required to prevent discrimination or harassment,[11] or that Johnson intends to

7  engage in derogatory speech entitled to lesser First Amendment protection under the *Pickering*

8  test.  *See Thompson v. Central Valley Sch. Dist. No. 365*, 163 F.4th 654, 666 (9th Cir. 2025)

9  (finding that speech involving slurs and violent language was entitled to "little weight" under

10  *Pickering* Step Two).

11      Johnson does not challenge Bakersfield College's authority to set academic competence or

12  curriculum requirements generally.  Rather, he seeks to preclude defendants from compelling him

13  to endorse their views regarding DEIA and from sanctioning him for refusing to do so or for

14  stating his contrary views.  "[W]hen a university wants its professors to communicate a message

15  on a matter of public concern and a professor does not want to communicate that message to his

16  students, that is not a matter of classroom management but one of academic speech."  *Reges*, 162

17  F.4th at 997 (internal quotations and citation omitted).  And defendants appear to agree that they

18  may not sanction Johnson under the DEIA regulations for his intended speech, as they maintain

19  that "[t]he DEIA regulations do not prohibit *any* speech by the plain text of sections 53602(b) and

20

21  Amendment. But in the academic world, such a judgment is both necessary and appropriate.");
    *Kilborn v. Amiridis*, 135 F.4th 1100 (7th Cir. 2025) (Easterbrook, J., statement concerning

22  petition for rehearing en banc) (when "a professor and a university are at loggerheads about what
    constitutes effective teaching and scholarship, the university has to win."); *Heim v. Daniel*, 81

23  F.4th 212, 215 (2d Cir. 2023) ("[A] public university's interest in deciding for itself what skills,
    expertise, and academic perspectives it wishes to prioritize in its hiring and staffing decisions

24  outweighs [the professor's] asserted interest in competing for academic positions unencumbered
    by university decision-makers' assessment of the approach or methodology underlying his

25  academic speech.").

26  [11] *See Bonnell v. Lorenzo*, 241 F.3d 800, 824 (6th Cir. 2001) ("Speech that rises to the level of

27  harassment—whether based on sex, race, ethnicity, or other invidious premise—and which
    creates a hostile learning environment that ultimately thwarts the academic process, is speech that

28  a learning institution has a strong interest in preventing.").

53605(a), either in and out of the classroom."  Doc. 111 at 8 (emphasis in original).

Defendants have articulated only a general interest in enforcing the State's DEIA regulations, without identifying any specific concerns with Johnson's intended speech.  That general interest does not outweigh Johnson's First Amendment right not to be sanctioned for having a contrary viewpoint on DEIA matters or his right not to be compelled to speak in support of the State's views on DEIA matters.  *See Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967) (characterizing academic freedom as "a special concern of the First Amendment" which "does not tolerate laws that cast a pall of orthodoxy over the classroom."); *Heim*, 81 F.4th at 231, 234 (distinguishing university's freedom to "make its own rules concerning academic standards," its "prerogative to determine for itself on academic grounds who may teach," and its "right to set its own criteria for promotion and then to evaluate a candidate's fitness for promotion under them," from impermissible restrictions based on "influence from political entities in the state or other governmental or university officials outside the relevant discipline.").[12]

Accordingly, Johnson is likely to succeed on the merits of his as-applied viewpoint discrimination and compelled speech claims challenging the DEIA regulations as to his intended speech, except with respect to the DEIA training requirement or official speech as a member of the EODAC.

iv.    Facial Challenge

Johnson fails to establish a likelihood of success on his facial challenge to the DEIA regulations, as he fails to show the DEIA regulations prohibit a substantial amount of protected speech relative to their plainly legitimate sweep.  *See Williams*, 553 U.S. at 292.  "In the First Amendment context, . . . a law may be invalidated as overbroad if a substantial number of its

---

[12] To the extent Johnson's speech would cause other faculty or students to feel upset or angry, "avoiding the disruption on college campuses that 'necessarily accompanies controversial speech,' cannot justify the suppression of the very diversity of views that is central to the mission of higher education."  *Reges*, 162 F.4th at 1001 (internal citation omitted) (quoting *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 782 (9th Cir. 2022)); *Adamian v. Jacobsen*, 523 F.2d 929, 934 (9th Cir. 1975) ("The desire to maintain a sedate academic environment, to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint is not an interest sufficiently compelling . . . to justify limitations on a teacher's freedom to express [themselves]." (internal quotations omitted)).

1    applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."

2    *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal quotations and citation omitted).

3        Neither the text of the DEIA regulations, nor any other evidence in the record, suggests

4    that the regulations primarily regulate speech.  Defendants represent that a range of non-speech

5    practices, such as grading anonymously, using lower-cost course materials to reduce student

6    costs, or creating additional opportunities to discuss feedback with students, would constitute

7    "DEIA-proficient teaching, learning, and professional practices" for purposes of establishing

8    compliance with the regulations.  *See* Doc. 111 at 8.  Defendants have a legitimate goal of

9    promoting a community college environment that is accessible and welcoming to diverse

10   communities.  They have identified a range of non-speech practices that faculty could implement

11   to establish their "proficiency" in DEIA-related performance, and they maintain that the DEIA

12   regulations address non-speech "teaching and learning practices."  *Id.*  Indeed, they claim that the

13   DEIA regulations "do not prohibit any speech."  *Id.*  In contrast, Johnson fails to point to

14   evidence that the DEIA regulations would be applied inordinately to speech, as opposed to non-

15   speech conduct.

16       As facial challenges must examine the regulations' "full set of applications," *Moody v.*

17   *NetChoice, LLC*, 603 U.S. 707, 718 (2024), and the DEIA regulations apply broadly to non-

18   speech practices as well as to Johnson's intended speech, Johnson has not demonstrated that he is

19   likely to succeed on the merits of his facial challenges.  *See id.* at 744 ("Even in the First

20   Amendment context, facial challenges are disfavored, and neither parties nor courts can disregard

21   the requisite inquiry into how a law works in all of its applications.").  Johnson's motion for

22   preliminary injunction is therefore denied as to his facial challenges.

23                    2.  Remaining *Winter* Factors

24       In cases arising under the First Amendment, "showing a likelihood of success on the

25   merits generally results in a finding that the remaining *Winter* factors are satisfied as well."

26   *NetChoice, LLC v. Bonta*, 770 F. Supp. 3d 1164, 1183 (N.D. Cal. 2025) (citing *Am. Beverage*

27   *Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 757–58 (9th Cir. 2019)).  As Johnson faces

28   a credible threat of enforcement and states "a colorable First Amendment claim, [he has]

1  demonstrated that [he] likely will suffer irreparable harm." *Am. Beverage Ass'n*, 916 F.3d at 758;

2  *see also Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th Cir. 2019) (holding that even where

3  intended discipline is "only temporary, the loss or threatened infringement upon free speech

4  rights 'for even minimal periods of time[] unquestionably constitutes irreparable injury.'")

5  (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Tingley v. Ferguson*, 47 F.4th 1055, 1067

6  (9th Cir. 2022) ("[A] chilling of the exercise of First Amendment rights is, itself, a

7  constitutionally sufficient injury.") (quoting *Libertarian Party of Los Angeles Cnty. v. Bowen*,

8  709 F.3d 867, 870 (9th Cir. 2013)).

9      Next, "[t]he fact that [Johnson has] raised serious First Amendment questions compels a

10  finding that the balance of hardships tips sharply in [his] favor." *Am. Beverage Ass'n*, 916 F.3d at

11  758 (quoting *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007)).

12      Finally, the Ninth Circuit has "consistently recognized the significant public interest in

13  upholding First Amendment principles." *Id.* (quoting *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir.

14  2014)). And "it is always in the public interest to prevent the violation of a party's constitutional

15  rights." *Id.* (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Accordingly,

16  Johnson has satisfied the *Winter* factors as to his as-applied viewpoint discrimination and

17  compelled speech claims challenging the DEIA regulations.

18                          3.    Scope of the Injunction

19      Injunctive relief may not exceed what is "broader than necessary to provide complete

20  relief to each plaintiff." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). "[T]he question is not

21  whether an injunction offers complete relief to *everyone* potentially affected by an allegedly

22  unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the*

23  *court*." *Id.* at 852 (emphasis in original).

24      The court grants a preliminary injunction enjoining defendants from enforcing the DEIA

25  regulations, and Cal. Educ. Code § 87732(f) to the extent it incorporates the regulations, as to

26  Johnson's social or political speech as described in his FAC and made (1) in Johnson's

27  scholarship or teaching, (2) in his role as a leader of RIFL, or (3) or as a private citizen (including

28  "off duty" as a public academic) such as in his social media posts, media appearances, authoring

1  of news articles, and participation in protests.

2                   4.   Security

3         A court may grant preliminary injunctive relief "only if the movant gives security in an

4  amount that the court considers proper to pay the costs and damages sustained by any party found

5  to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  However, "Rule 65(c)

6  invests the district court with discretion as to the amount of security required, if any."  *Johnson v.*

7  *Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906,

8  919 (9th Cir. 2003)).  As there is no evidence that defendants will incur monetary injury if a

9  preliminary injunction is issued, the court exercises its discretion to waive the security

10  requirement.

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**IV.    Conclusion and Order**

Accordingly:

**A.** Defendants' motion to dismiss, Doc. 46, is DENIED;

**B.** Johnson's motion for preliminary injunction, Doc. 26, is GRANTED IN PART as to his as-applied viewpoint discrimination and compelled speech challenges, and DENIED as to his facial challenges;

**C.** Defendants and their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction are ENJOINED, pending final judgment, from investigating, disciplining, or terminating Johnson by enforcing Cal. Code of Regs. tit. 5, §§ 53602(b) and 53605(a), and Cal. Educ. Code § 87732(f) to the extent it incorporates these regulations, based on Johnson's proposed social or political speech as described in his FAC, except as to Johnson's official speech as a member of the Bakersfield College EODAC.

**D.** This preliminary injunction does not preclude defendants from requiring that Johnson take Bakersfield College's mandatory DEIA training to be eligible to serve on a faculty screening committee, and it does not apply to official speech as a faculty screening committee member.

IT IS SO ORDERED.

Dated:    February 20, 2026

_____
UNITED STATES DISTRICT JUDGE